1

The Honorable Ricardo S. Martinez

2

3

4　　　　　　　　　　UNITED STATES DISTRICT COURT

5　　　　　　　　　WESTERN DISTRICT OF WASHINGTON

6　　　　　　　　　　　　　AT SEATTLE

7

8　TREVOR KEVIN BAYLIS,　　　　　　| Case No. 2:23-cv-01653-RSM

9　　　　　　　　Plaintiff,　　　　　　| **PLAINTIFF**
　　　　　　　　　　　　　　　　　　　| **TREVOR KEVIN BAYLIS**

10　　　　v.

11　VALVE CORPORATION,　　　　　　| **MOTION FOR SUMMARY**
　　　　　　　　　　　　　　　　　　　| **JUDGMENT**

12　　　　　　　　Defendant.

　　　　　　　　　　　　　　　　　　　| Filed: 7th January 2024

13

14　　　　　　　　　　　　INTRODUCTION

15　Trevor Kevin Baylis as Plaintiff respectfully request that the Court grant Motion for Summary

16　Judgment against Defendants, Valve Corporation.

17

18　This case turns on a single question:

19

20　Do Valve Corporation have permission to distribute Plaintiff's copyrighted works worldwide

21　for their own monetary gain?

22

23　The answer is NO!

24

1

A SUMMARY JUDGMENT IS JUSTIFIED

2

3      A. Defense must show that Valve Corporation has direct written permission from

4 Plaintiff via a valid Chain of Title to distribute Plaintiff's work to prevail at trial.

5

6      B. Plaintiff has shown a valid copyright for his work, which is substantially similar to

7 the work being distributed by Valve Corporation, and that permission has not been granted by

8 Plaintiff for adaptations of Plaintiff's copyrighted work to be made or distributed by anyone.

9

10      FACTUAL BACKGROUND

11 The work at issue is a film called Iron Sky and the animation work contained therein, as well

12 as the stand alone 3D models (Maya files) and animated scenes from the film which were

13 created as part of a new ethos in film making, 'collaborative film making'. In his AMENDED

14 COMPLAINT against defendant(s) Dkt 15, pages 4 and 5, Plaintiff makes reference to the

15 collaborative film making platform Wreckamovie which was set up by amateur film makers.

16 The BBC news mentioned this new way of making films (Fig.1) and the report even featured

17 Plaintiffs Iron Sky work especially the George W Bush craft and gun reveal scene which

18 Plaintiff created whilst unemployed.

19  https://youtu.be/SrLEDe6ddTU?feature=shared  (acessed 7th Jan 2024)

20

21



22

23                                                                                    Fig. 1

24

Such collaborative film making is in contrast to the usual "Hollywood" way of making films due to the availability of "off the shelf" industry standard 3D animation software, which is available to the public called Autodesk Maya. This software allows even amateurs to create high quality compelling photorealistic, or cartoon, or other visual imagery, for films and other media. Such artists in general, have revolutionised the way modern films are made over the last few decades. Even Hollywood films can be completely made using Maya software as well as an animated pre-visualisation of the whole film before even a director or other crew members are hired for the project. See linked video as an example,

*How Marvel Actually Makes Movies Years Before Filming | Movies Insider*

https://youtu.be/bgvgi3ShcmY?si=y8zA59qEAQq3Vk0C

This video demonstrates how the Marvel Film 'Avengers Endgame' was created as a 3D animation around 3 years before actors were hired to appear on set and before a single frame of live action was captured on camera. It demonstrates that animators can be true "master minds" of modern films, especially a with a small independent, amateur, 'collaborative' film production like Iron Sky where the amount of animators contributing to the work were genuinely few compared to major Hollywood blockbusters.

The *'10 animators of Iron Sky'* so to speak, of which Plaintiff was lead animator have utilized powerful industry standard software, which is available to many independent artists these days, and they have created animations in much the same way as in the early US history of film making, whereby *Disney's 9 Old Men* (https://simple.wikipedia.org/wiki/Disney%27s_ Nine_Old_Men) utilized available artistic technologies and were the "master minds" of Disney films such as Disney's 1937 film *Snow White* or the 1967 film *Jungle Book* and other

1  Disney films. 3D software is now used by Disney artists today.

2

3  Whereas early Disney films were derived from hand drawings by skilled artists, modern 3D

4  animated films are synonymous with Stop Motion Animation associated with such legends of

5  animation as Ray Harryhausen (https://www.imdb.com/name/nm0366063/) and Phil Tippet

6  (https://www.imdb.com/name/nm0864138/) who went on to have successful careers and

7  became major film producers in their own right.

8

9  Plaintiff himself hoped to follow on in the footsteps of these great and legendary film makers

10  himself and saw the opportunity to do so when he joined the Iron Sky project as the oldest,

11  most senior lead animator (Autodesk Maya Artist) on the film. His hopes were that he could

12  apply his considerable creative talent to producing compelling imagery, and visual narratives

13  for the film Iron Sky, and establish himself as a major film making force, at least in the

14  Finnish film industry. His contribution to the Iron Sky animation  team as lead artist was

15  undeniably one of the reasons the team were awarded an AACTA award for best visual effects

16  in a film. The film would not exist in the same way without him or his work that features

17  heavily in the film. Sometimes his work took up the whole screen and is the 'sine qua non'

18  (indispensable ) aspect of Iron Sky. The 3D models and animation that he has jointly created

19  are also valuable as copyrighted equity for future productions such as sequels, games and

20  other media as well as for applying for funding of such productions.

21

22  It is thus undeniable that Plaintiff is the author of Iron Sky and related works in question

23  related to this case as adequately identified in his AMENDED COMPLAINT against

24  defendant(s) Dkt 15, and he has a genuine copyright in those works. Plaintiff is a "natural

human" who is the "mastermind" behind the work he created  (Giles-Burrows v Sarony) and

has shown far more than a "modicum of creativity" (Feist v. Rural) in creating such works.


### VALID COPYRIGHT OWNERSHIP

*"In order to bring a copyright infringement claim, the plaintiff must prove that they hold*

*the copyright interest through creation, assignment, or license. The plaintiff must also plead*

*that the complaint is of an unlawful copy of the original element of the copyrighted work. To*

*constitute an infringement, the derivative work must be based upon the copyrighted work"*

*https://www.law.cornell.edu/wex/infringement_(of_copyright)*


Under the US Copyright Act of 1976, copyright arises to a "natural person" upon the

creation of "original works of authorship fixed in any tangible medium of expression."


Under Berne Convention and EU law the same is true. Whereas, US law is derived from

Congress, copyright in foreign works (non-US works) has it's "source of law" within the

Berne Convention which relies on the concept of "country of origin" which is determined

by the country in which the work is first published. In this, case concerning Plaintiff's work

related to the film Iron Sky the "country of origin" is Germany (Berne Convention article 5

(4)). The Film was published at a red carpet event at the Berlin Film Festival on 11th

February 2012 as shown in Plaintiffs AMENDED COMPLAINT against defendant(s) Dkt 15

page 9.


Therefore, German copyright law applies in terms of first authorship laws. See Itar-Tass

Russian News v. Russian Kurier, 153 F.3d 82

1    There is no need to register foreign works with the US Copyright Office regardless of the fact

2    that plaintiff has actually registered the film Iron Sky at the US Copyright Office.

3    Plaintiff has a valid registration at the US Copyright office in any case. The registration

4    number is, PA0002432422.  (See Appendix 1 (p1,2,3) Copyright registration certificate).

5

6    This was done for practical reasons as the Iron Sky Producers went bankrupt (indirectly due

7    to the fact they had no complete Chain of Title for Iron Sky themselves). This US Copyright

8    Office registration allows potential future producers and filmmakers to be able to contact

9    Plaintiff in order to develop potential future productions 'legally' and be sure of a correct

10   Chain of Title. It has always been Plaintiff's motive to maintain a correct Chain of Title and

11   to license his work through genuine written agreements but such things have been hindered

12   in the past by the Iron Sky Producers unwillingness to do so, and who as mentioned are now

13   bankrupt. Plaintiff has an obligation to his fellow authors to share any future profits derived

14   from such future productions.

15

16   There is also no possibility to foreclose on copyrights under German or Finnish law due

17   to the inalienable nature of such rights (economic rights are also inalienable in Germany).

18   Thus any copyrights that may have been licensed by other joint authors of the film Iron Sky

19   would return to those authors and cannot be claimed by creditors. This is also in line with EU

20   policy to prevent so called "orphan works" and related to the Digital Single Market Copyright

21   Directive (Chapter 3, Article 22 of Directive 2019/790).

22

23   See also Berne Convention Article 6bis

24   *"(1) Independently of the author's economic rights, and even after the transfer of the said*

*rights, the author shall have the right to claim authorship of the work and to object to any distortion, mutilation or other modification of, or other derogatory action in relation to, the said work, which would be prejudicial to his honor or reputation."*

It should be mentioned that unauthorized derivatives of Iron Sky cannot themselves be protected by copyright. That is to say, the game developers who produced Iron Sky Invasion DO NOT have any legal standing themselves to seek "remedies and protections" as they have no valid written exclusive license derived prom Plaintiff in any way that would allow them to seek "remedies and protections". See, Anderson v. Stallone, 11 U.S.P.Q.2d 1161 (C.D. Cal. 1989). The Tolkien Trust v. Demetrious Polychron (2:23-cv-04300) (US 17 § 103(a))

Also see US Copyright Office Circular 14 p.2.

*"In any case where a copyrighted work is used without the permission of the copyright owner, copyright protection will not extend to any part of the work in which such material has been used unlawfully. The unauthorized adaptation of a work may constitute copyright infringement"*

As mentioned, Plaintiff has a valid Registration at the US Copyright Office. The registration number is, PA0002432422.  The US Copyright office has concluded that Plaintiff's work is indeed copyrightable, the Register has issued a certificate of registration, which, among other advantages, allows the claimant to pursue infringement claims in court. US 17 §410(a), 411(a); Unicolors v. H&M Hennes & Mauritz, L.P., 142 S. Ct. 941, 944–45 (2022).

Under US law a valid copyright exists when a work is created and "apart" from registration, Never the less, a certificate of registration confirms that the copyright has existed all along even before actual registration. See Fourth Estate, 139 S. Ct. at 887.

During Plaintiff's registration procedure, Plaintiff was contacted through email correspondence by Saskia Florence, Supervisory Registration Specialist, Performing Arts Division, Motion Picture Team, U.S. Copyright Office.

In these email correspondences Plaintiff clarified questions put to him by Saskia Florence and gave honest and thorough answers to questions raised to the best of his knowledge.

*"Dear Trevor Baylis,*

*Thank you kindly for your response. I have approved your registration, based on your*

*thorough answers. You should receive your certificate within a few weeks.*

*Sincerely,*

*Saskia Florence"* (Email from Saskia Florence, cop-ad@loc.gov (Thu, 28 Sept 2023, 17:52))

In conclusion to this section Plaintiff has shown a valid copyright for his work in his AMENDED COMPLAINT against defendant(s) Dkt 15.

SUBSTANTIAL SIMILARITY

Plaintiff is the author of Iron Sky and related works in question related to this case as adequately identified in his AMENDED COMPLAINT against defendant(s) Dkt 15, and has a genuine copyright in those works. Plaintiff is a "natural human"who is the "mastermind"

1    behind the work he created  (Giles-Burrows v Sarony) and has shown far more than a mere

2    "modicum of creativity" (Feist v. Rural) in creating such works.

3

4    In Plaintiff's AMENDED COMPLAINT against defendant(s) Dkt 15 he has shown from

5    pages 11 through to page 34 that there is substantial similarity between the works being

6    distributed by Valve Corporation and Plaintiff's own copyrighted works. In many cases actual

7    footage of the film Iron Sky is used, and it is known to Plaintiff that Iron Sky Producers

8    supplied the game developers with his work without his permission to do so. This explains

9    why the 3D models themselves are near verbatim copies, as the credits of the game reveal the

10   source of the material came from "Blind Spot Pictures" in some way.

11

12   See page AMENDED COMPLAINT against defendant(s) Dkt 15, page 40 Iron Sky Invasion

13   game play which shows how actual footage from the film Iron Sky is incorporated into the

14   game itself.  GamePlayEvidence https://youtu.be/da5GfIjfuvI?feature=shared

15

16   As mention in Plaintiff's AMENDED COMPLAINT against defendant(s) Dkt 15, page

17   4, Blind Spot Pictures have never had any written agreements to allow any transfer of

18   "adaptation rights" from Plaintiff to make any "adaptations or derivative works" based on his

19   copyrighted works. Certainly Plaintiff has never received remunerations for his work that is

20   used in the game Iron Sky Invasion.

21

22   The reasons why it is impossible for Blind Spot pictures to have a full Chain of Tile

23   themselves related to Plaintiff's work on Iron Sky are explained in Plaintiff's AMENDED

24   COMPLAINT against defendant(s) Dkt 15, from page 35 to page 39. In short Plaintiff wasn't

employed nor had any service agreement for 6 months creating animations from the film. The copyrights have never left him any more than copyrights to his recent work he has created whilst unemployed have moved to anyone. ***It's unconscionable to think copyrighted works can just be taken by Blind Spot Pictures from unemployed people such as Plaintiff at the time and passed over to third party game developers! It's ludicrous!***

Here is a screen grab from the Iron Sky Game play Video that indicates the involvement of Blind Spot Pictures. This is part of the end credits for Iron Sky Invasion. (Fig.2)



Fig. 2

GamePlayEvidence https://youtu.be/da5GfIjfuvI?feature=shared (at time line 03:11)

***Plaintiff is entirely blameless as to how things evolved and have ended up with Valve Corporation unlawfully distributing his works.***

Plaintiff has shown a valid copyright for his work which is substantial similar to the work being distributed by Valve Corporation.

LACK OF CHAIN OF TITLE

Instead of acquiring a legitimate Chain of Title through explicit licensing agreements, Iron Sky producers themselves seemed to have relied on a ***"fallacy of popular opinion"*** which is that, because they are producers, 'then they *must* own all copyrights to the film project'. But this is simply not true, and has never been true. Never the less, to use a phrase coined by Winston Churchill,  *"A lie can travel the world whilst the truth is putting it's shoes on."* Therefore, it is logical that an independent game developer who has approached Blind Spot Pictures to request to make a video game, may not have done adequate due diligence themselves in assessing the Chain of Title, or have simply been duped by Iron Sky Producers.

Iron Sky Producers were amateurs and utilised a loophole in Finnish employment law to obtain free professional contributions from professionals who authored the film Iron Sky without having to pay them. Plaintiff is one such professional who was exploited in this way.

In his AMENDED COMPLAINT against defendant(s) Dkt 15, page 35 - 36, Plaintiff has shown that in Finland it is still a common practice today, in the Games industry, which is similar to Finland's Film Industry, for games companies to exploit professionals to obtain professional level creative work without payment to them.

If one were to follow the links to apply for a job in the Games industry in Finland starting from this link, https://www.saranen.fi/rekrytointikoulutus/gamepro

Then one soon comes to this link (Apply Now) which  leads to a, TE-palvelut application, The TE-Service (TE-palvelut) is the Finnish Government Employment and Economic Affairs Office.

1    Therefore, a situation can easily arise where professionals (especially foreign professionals)

2    can be exploited by nefarious employers to produce professional level work whilst only

3    receiving unemployment benefits! (Fig.3)

4    *"During the training, you can receive unemployment benefit (possibility of increased benefit)*

5    *and tax-free expense reimbursement."*

6    https://koulutukset.te-palvelut.fi/kt/708193



Fig. 3

13   This is essentially what happened to Plaintiff when he joined the Iron Sky Project. The forms

14   are in Finnish and he couldn't read them but was in a situation where he needed employment

15   and a "foot in the door" to embark on his career in Finland to be a high level film maker

16   himself. He had a family to support. A four year old boy and a pregnant wife.

17

18   As shown in Plaintifs AMENDED COMPLAINT against defendant(s) Dkt 15 pages 35-36

19    in the "Adult job training" document (Työelämävalmennus) (Fig. 16 & 17)

20   there is a section 6 which when translated to English says,

21   [Section 6 translation to English]

22   ***"6. The person participating in the internship/work life coaching is not in an employment***

23   ***or other service relationship with the organizer of the internship/work life coaching***

24   ***mentioned in this contract, nor with the labor and business administration."***

Given the above, it cannot be the case that the 3D animation work for Iron Sky created by Plaintiff fits the criteria for "Work for Hire" under US law as Plaintiff was not actually in an employment relationship with the Iron Sky Producers.

***It is therefore a logical impossibility that Valve Corporation have acquired the rights to distribute Plaintiff's copyrighted works worldwide.***

Plaintiff has shown a valid copyright for his work which is substantial similar to the work being distributed by Valve Corporation, and that permission has not been granted from Plaintiff for adaptations of Plaintiff's work to be made or distributed by anyone.

VALVE CORPORATION MONETISATION OF PLAINTIFF'S COPYRIGHTED WORK

On information and belief, Valve Corporation operates as distributor of Video Games. Valve offers an Online Platform 'Steam Platform' to allow games that are published by third parties, such as Iron Sky Invasion and related games, to be sold and distributed world wide to multiple territories widely via the Internet.

On information and belief, Valve typically keeps a 30% portion of the revenue paid by purchasers for sales of these third-party games. Therefore, similar to physical film distributors, Valve Corporation functions as the digital equivalent of a physical distributor.

On information and belief, Valve also takes 15% from all sales on the steam community market. They might also be taking a cut from storefronts in games on steam depending on the individual arrangements they've made with respect to those game developers.

On information and belief Valve also offers social networking features whereby their customers can share screen grabs of games they play or have purchased, and even 'stream videos' to other third party distribution platforms such as Youtube of actual game play from the Steam Platform.

On information and belief, such videos can then be monetised by the "YouTuber" (A common term describing a social media influencer/content creator - https://en.wikipedia.org/wiki/YouTuber) through advertising revenue and the "YouTuber" can enhance their own presence on social media by acquiring subscribers.

Gamers with Steam Gaming Platform accounts can create and develop a social network of friends and subscribers that can have access to content being distributed by Valve Corporation. This includes easy access to Iron Sky Invasion which, as has been claimed, is an authorized adaptation of the film Iron Sky.

Gamers on the Steam Gaming Platform can also see or invite friends through the platform to join them in a game. All of this combined potentially allows further contributor infringement by Valve's own customer base of Plaintiff's copyright work.

It is thus, clear that Plaintiff has lost complete control of his copyrighted works. This should never be allowed to happen as clearly it affects Plaintiff's ability to control his lawfully acquired property.  Thus Valve Corporation have a fundamental lawful duty to prevent such wide spread copyright infringement on their platforms.

In order to calculate the Gross revenue generated by games on the Valve Corporation's Steam Gaming Platform from the distribution of Iron Sky Invasion, and in absence to Valve's own financial statements and accounting, Plaintiff uses the 'Revenue Sales Numbers, Boxleiter Method' (http://greyaliengames.com/blog/how-to-estimate-how-many-sales-a-steam-game-has-made/ ) to calculate gross revues from user reviews submitted by customers paying Valve Corporation for use and access to Iron Sky Invasion games.

Defendant owes at least $1 096 451,50 actual damages based on information and belief to be the amount of gross revenue generated though unauthorized distribution by Valve Corporation of plaintiffs copyrighted works which is likely to go up over time as more revenue is generated by continued infringement.

IN SUMMARY

In bringing this copyright infringement claim, Plaintiff has proven that they hold the copyright interest through his initial authorship of his Iron Sky work, first published in Germany February 11th 2012, and also registered at the US Copyright Office. The registration number is, PA0002432422.  (See Appendix 1 (p1,2,3) Copyright registration certificate)

 His name is in the credits of the film Iron Sky at the top of the list of VFX artists (3D animators) and also within the meta data of numerous original 3D animation files dated in 2011 when the work was first authored by him. See AMENDED COMPLAINT against defendant(s) Dkt 15, pages 18, 19 and 38.

1   Plaintiff has lawfully acquired copyright to his work as the author "natural person" and

2   "master mind" behind the creation of such works. See Burrow-Giles Lithographic Co. v.

3   Sarony, 111 U.S. 53, 58 (1884)

4

5   Plaintiff has shown that the complaint relates to  unlawful copies of the original elements

6   of his copyrighted works and the unlawful distribution thereof of adapted works by Valve

7   Corporation. The derivative work Iron Sky Invasion (video game) and associated works on

8   the Steam Platform are demonstrably based upon the Plaintiff's copyrighted work, Iron Sky,

9   and the animated sequences and 3D models associated with Iron Sky which he created as part

10  of the Iron Sky team *whilst unemployed*.

11

12                                        CONCLUSION

13

14  Do Valve Corporation have permission to distribute Plaintiff's copyrighted works worldwide

15  for their own monetary gain?

16

17  The answer is NO!

18

19                                     PRAYER FOR RELIEF

20  Defendants have not answered the complaint within the time period (14 days, FRCP 15(a)(3))

21  of  Plaintiff's AMENDED COMPLAINT against defendant(s) Dkt 15 filed on 23rd December

22  2023. Thus, there is no genuine dispute as to any material fact and the Plaintiff is entitled to

23  judgment as a matter of law.

24

1   When all the evidence put forward is such that no reasonable person or factfinder could

2   disagree with the moving party, summary judgment is appropriate. Fed. R. Civ. P. 56(c).

3

4   Plaintiff respectfully request that the Court grant his motion for summary judgment as

5   follows.

6   1. Court confirms Plaintiff has a valid copyright in Iron Sky and related works Image

7   sequences, still images and animations including 3D models of space craft mentioned in

8   AMENDED COMPLAINT against defendant(s) Dkt 15.

9   2. Court confirms Plaintiff has shown substantial similarity between his copyrighted works

10  and the infringing works distributed by Defendants mentioned in AMENDED COMPLAINT

11  against defendant(s) Dkt 15.

12  3. Court confirms Plaintiff has shown a lack of "Chain of Title" that would allow the

13  authorization of derivative works to be distributed by Defendants on their Steam Platform or

14  in any other way.

15  4. Court confirms that Defendant have a lawful duty to prevent infringement of Plaintiff's

16  copyrights by preventing distribution on Defendants Online platforms (Steam Platform).

17  5. Court confirms that Defendants have benefited from monetisation of Plaintiff's works via

18  distribution of his works via Defendants Online platforms ((Steam Platform).

19  6. Court confirms that Defendants Valve Corporation do not qualify for so called "safe

20  harbour" privileges under the Digital Millennial Copyright Act US 17 512 (c) (1) (b) & (c).

21  7. Court confirms Defendants Valve Corporation have also acted unlawfully with regard to

22  secondary infringement of Plaintiff's work by allowing their customers to engage in further

23  infringement of Plaintiff's work by distribution via social media platforms such as FaceBook

24  Youtube and any other social media platform.

8. Court orders defendants Valve Corporation to cease any and all of their infringing activities with regards to Plaintiff's copyrighted works.

9. Court grants $1 096 451,50 actual damages based on information and belief to be the amount of gross revenue generated though unauthorized distribution by Valve Corporation of plaintiffs copyrighted works.

10. Plaintiff asks for any other Declaratory Relief, including but not limited to a declaration and judgment that Valve Corporation's conduct alleged in the complaint violates laws alleged in their complaint, and such other, and further relief as the court deems proper and just.

Dated: 7th January 2024

Trevor Kevin Baylis

Please note: Plaintiff is dyslexic. Thus written documents such as this may have minor accidental spelling and or grammatical errors. Such things should not be seen as cause to prejudice the author of this document.

APPENDIX 1 (p1)

## Certificate of Registration

This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director

Registration Number
**PA 2-432-422**
Effective Date of Registration:
August 11, 2023
Registration Decision Date:
September 28, 2023

### Title

| | |
|---|---|
| **Title of Work:** | Iron Sky |
| **Previous or Alternate Title:** | Iron Sky Director's cut |

### Completion/Publication

| | |
|---|---|
| **Year of Completion:** | 2012 |
| **Date of 1st Publication:** | February 11, 2012 |
| **Nation of 1st Publication:** | Germany |
| **International Standard Number:** | ISAN ISAN 0000-0003-434B-0000-9-000 |

### Author

| | |
|---|---|
| **Author:** | Trevor Kevin Baylis |
| **Author Created:** | entire motion picture |
| **Work made for hire:** | No |
| **Citizen of:** | United Kingdom |
| **Domiciled in:** | Finland |
| **Year Born:** | 1967 |

| | |
|---|---|
| **Author:** | Luke Whitehorn |
| **Author Created:** | entire motion picture |
| **Work made for hire:** | No |
| **Citizen of:** | United Kingdom |
| **Domiciled in:** | United Kingdom |

| | |
|---|---|
| **Author:** | Lee Stringer |
| **Author Created:** | entire motion picture |
| **Work made for hire:** | No |
| **Citizen of:** | United States |
| **Domiciled in:** | Singapore |

| | |
|---|---|
| **Author:** | Mika Orasmaa |
| **Author Created:** | entire motion picture |
| **Work made for hire:** | No |

Page 1 of 3

APPENDIX 1 (p2)

Citizen of:  Finland
Domiciled in:  Finland

- **Author:**  Timo Vuorensola
  **Author Created:**  direction, Live action only no 3D animation or VFX
  **Work made for hire:**  Yes
  **Citizen of:**  Finland
  **Domiciled in:**  Finland

- **Author:**  Kelly Myers
  **Author Created:**  entire motion picture
  **Work made for hire:**  No
  **Citizen of:**  United States
  **Domiciled in:**  United States

- **Author:**  Johanna Sinisalo
  **Author Created:**  script/screenplay
  **Work made for hire:**  No
  **Citizen of:**  Finland
  **Domiciled in:**  Finland
  **Year Born:**  1958

- **Author:**  Risto Puukko
  **Author Created:**  entire motion picture
  **Work made for hire:**  No
  **Citizen of:**  Finland
  **Domiciled in:**  United Kingdom

- **Author:**  Sebastian Barquin
  **Author Created:**  entire motion picture
  **Work made for hire:**  No
  **Citizen of:**  United Kingdom
  **Domiciled in:**  United Kingdom

- **Author:**  Pyry Parkola
  **Author Created:**  entire motion picture
  **Work made for hire:**  No
  **Citizen of:**  Finland
  **Domiciled in:**  Finland

- **Author:**  Janne Suhonnen
  **Author Created:**  entire motion picture
  **Work made for hire:**  No
  **Citizen of:**  Finland
  **Domiciled in:**  Finland

- **Author:**  Erkko Huhtamäki
  **Author Created:**  entire motion picture
  **Work made for hire:**  No
  **Citizen of:**  Finland
  **Domiciled in:**  Finland

Page 2 of 3

APPENDIX 1 (p3)

**Copyright Claimant**

Copyright Claimant:  Trevor Kevin Baylis
Jankanraitti 10 A 4, Tampere, 33560, Finland

**Limitation of copyright claim**

Material excluded from this claim:  script/screenplay
Previous registration and year:  PAu003472052, 2008

**Rights and Permissions**

Name:  Trevor Kevin Baylis
Email:  trevor.baylis@gmail.com
Address:  Jankanraitti
Tampere 33560 Finland

**Certification**

Name:  Trevor Kevin Baylis
Date:  August 11, 2023

Correspondence:  Yes

Page 3 of 3

1

2                              CERTIFICATE OF SERVICE FORM

3                                FOR ELECTRONIC FILINGS

4        I hereby certify that on 7th January I electronically filed the foregoing document

5                            with the United States District Court

6                        Western District of Washington at Seattle by using the

7                        CM/ECF system. I certify that the following parties or their counsel of

8                        record are registered as ECF Filers and that they will be served by the

9                                      CM/ECF system:

10                        Jeremy E Roller: jroller@aretelaw.com,

11                             jfischer@aretelaw.com,

12                           kgreenberg@aretelaw.com

13

14                      Jonah O. Harrison: jharrison@aretelaw.com,

15                             jfischer@aretelaw.com,

16                           kgreenberg@aretelaw.com

17

18                          Dated: 7th January 2024

19

20

21                          Trevor Kevin Baylis

22                             Jankanraitti

23                        Tampere 33560, FINLAND

24