The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

TREVOR KEVIN BAYLIS,

                Plaintiff, *(pro se)*.

    v.

VALVE CORPORATION,

              Defendant.

Case No. 2:23-cv-01653-RSM

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Date filed 5th March 2024

**TABLE OF CONTENTS**

1. INTRODUCTION ..................................................................................................... 1

2. FACTUAL BACKGROUND ................................................................................... 2

3. LEGAL STANDARD .............................................................................................. 3

4. ARGUMENT ........................................................................................................... 3

      A.      Baylis has pled facts sufficient to state a cause of action for

"Material Misrepresentation" under 17 U.S.C. § 512(f) (Count 3).      3

              1.      Baylis has adequately claimed he is a joint author of Iron Sky and

owns a copyright under U.S.C 17 §106.      4

              2.      Baylis has adequately claimed that Valve have made

misrepresentations under 17 U.S.C. § 512(f).      5

              3.      Baylis has not made misrepresentations about his

lawfully acquired copyrights to Iron Sky.      7

      B.      Baylis has pled facts sufficient to state a cause of action for

"Willful Blindness" under U. S. C. 17 §512 and U. S. C. 17 §106 (Count 4).      8

              1.      Allegations of Willful Blindness have been sufficient to defeat a

motion to dismiss in civil cases involving intellectual property rights.      8

              2.      The claim of willful blindness has a cognizable legal theory.      9

              3.      The claims of relief are appropriately sought, and sufficiently pled      11

      C.      Baylis should be granted leave to amend if required.      12

5. CONCLUSION ..................................................................................................... 12

1    **1. INTRODUCTION**

2         Plaintiff's "Baylis" Second Amended Complaint Dkt. #25 alleges with sufficient

3    specificity how Defendants, "Valve"directly and vicarious infringe on Baylis' copyrighted

4    works as well as claimed sufficiently how Valve has "materially misrepresented" themselves

5    and also sufficiently claimed Valve's "willful blindness" as a cause of action itself.

6         Valve are seeking to profit from Baylis' infringed work in this case whilst claiming

7    DMCA Safe-harbour immunity. Valve are willfully blind to the fact they don't even qualify for

8    DMCA Safe-harbour immunity in this case, and are ignoring numerous laws, facts and red flags

9    on purpose. Valve's objective is simple: to avoid liability for their infringement and profiteering

10   of Baylis' copyrighted works as well as avoid liability for abusing the DMCA Safe harbour

11   provisions whilst acquiring valuable Iron Sky film copyrights by a kind of expropriation.

12        In their Motion to Dismiss Dkt. #29 Valve's objections to Baylis' claims "Count 3"

13   and "Count 4" Dkt. #25 are unavailing. Valve's opposition to Baylis' Digital Millennium

14   Copyright Act (DMCA) Count 3 claim is without merit because Valve more or less prove

15   Baylis' point when Valve deliberately "misrepresents" the plain language of the statute

16   17 U.S.C. § 512(f) as if only ISPs such as Valve can claim "damages, including costs and

17   attorneys' fees". This is false because Valve ignores the fact that the "copyright holder" is

18   also mentioned in the plain language of the statute 17 U.S.C. § 512(f). Valve are pretending

19   that they are eligible for  DMCA Safe harbour provisions in this case when in fact they are

20   have non-qualifying status in this case under 17 U.S.C. §§ 512(c)(1)(B) because they obtain

21   financial benefits from the infringing activities and can control such things.

22        Valve's argument that Baylis' Count 4 claim is a, "claim that does not exist," is also

23   unavailing because "willful blindness claims" have been used before in civil cases involving

24   intellectual property which have survived a motion to dismiss. Baylis' allegations provide

sufficient notice of the basis on which Valve is sued, and is all that Rule 8(a) requires.

Baylis' Second Amended Complaint Dkt. #25 sets forth facts sufficient to satisfy *Twombly*. Finally, Valve's attempt to dismiss Baylis' allegations should be denied as merit-less. If the Court finds that any of Baylis' claims are insufficient, amendment would not be futile, and leave to amend should be granted.

## 2. FACTUAL BACKGROUND

Plaintiff "Baylis" is a joint author and lawful copyright owner of the amateur film production Iron Sky which was first published in Germany 2012. (¶¶ 3-4, 33-35, 89-91.)[1] Baylis was receiving just unemployment benefits for a large part of the of the production (¶¶ 82-83,) and maintains copyright ownership to his work. (¶¶ 41-42, 85.) After Iron Sky was released in 2012 the Iron Sky production company formed a new company "Troll VFX". Additionally, Baylis found out that his Iron Sky work had been sent to a games company "Topware Interactive" without his permission for use in a video game called Iron Sky Invasion. Dkt. #25 at Pages. 11-33. Baylis had previously attempted to resolve the issue with Iron Sky Producers under the premise of a "salary review" but was sacked instead, and this lead to Baylis v Troll VFX in Finland. (¶ 102.) Whereby, Baylis proved his authorship of Iron Sky and competence as an animator to Judge Oskar Kulmala. (¶ 129.)

Valve control an Online platform called Steam and have been selling the game Iron Sky Invasion developed by Topware Interactive, who are a Valve subscriber "Partner", and this is infringement of Baylis' exclusive rights under USC 17 §106. Dkt. #25 at Pages11-33. Baylis asked Valve to cease sale his copyrighted works due to the fact no permission has ever been granted by for any adaptations of his work. (¶¶ 99-107.) Valve have declined to cease sale and

---

[1] "¶ " citations are to the Complaint, (Dkt. #25) unless otherwise indicated.

1    distribution of his copyrighted works (¶ 105.) Therefore, leaving no choice but for Baylis to

2    take legal action. On February 6, Baylis filed his 48-page Second Amended Complaint. Dkt.

3    #25. On February 20, Valve moved to dismiss Baylis' Third Cause of Action and Fourth Cause

4    of Action (Count 3 and Count 4) pursuant to Fed. R. Civ. P. 12(b)(6).

5    **3. LEGAL STANDARD**

6          Rule 8(a) requires only a "short and plain statement" of facts supporting a claim.

7    Fed. R. Civ. P. 8(a). Thus, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does

8    not need detailed factual allegations[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

9    (2007). The court must assume the truth of the complaint's factual allegations and credit

10   all reasonable inferences arising from those allegations. Sanders v. Brown, 504 F.3d 903,

11   910 (9th Cir. 2007). Additionally, "A claim crosses from conceivable to plausible when it

12   contains factual allegations that, if proved, would "allow[ ] the court to draw the reasonable

13   inference that the defendant is liable for the misconduct alleged."" Banneker Ventures, LLC v.

14   Graham, 798 F.3d 1119, 1129 (D.C. Cir. 2015). Furthermore, "A complaint survives a motion

15   to dismiss even "[i]f there are two alternative explanations, one advanced by [the] defendant

16   and the other advanced by [the] plaintiff, both of which are plausible." Starr v. Baca, 652

17   F.3d 1202, 1216 (9th Cir.2011)." Banneker Ventures, LLC v. Graham, 798 F.3d 1119, 1129

18   (D.C. Cir. 2015). A legal theory is "cognizable" if it is "[c]apable of being judicially tried or

19   examined before a" court. Cognizable, Black's Law Dictionary (11th ed. 2019).

20   **4. ARGUMENT**

21          **A.    Baylis has pled facts sufficient to state a cause of action for**

22          **"Material Misrepresentation" under 17 U.S.C. § 512(f) (Count 3).**

23          Valve claim that 17 U.S.C. § 512(f) relates to safe harbor provisions for Online service

24   providers (OSP/ISP) *only*, and is not a cause of action available to copyright holders who

assert infringement. However, Valve are just wrong because Valve ignores the fact that the "copyright holder" is also mentioned in the plain language of the statute 17 U.S.C. § 512(f) as also being able to claim "damages, including costs and attorneys' fees" from any party who materially misrepresents under 17 U.S.C. § 512(f) (Valve in this case). This just proves Baylis' point about Valve making misrepresentations to him because they've done it again in their Motion To Dismiss Dkt. #29.

The DMCA provides that to be eligible for safe harbor protection, a service provider must not "receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity." 17 U.S. Code §§ 512 (c) (1) (b). In this case Valve are the type of service provider "ISP" that is not eligible for DMCA safe harbour provisions because they can benefit financially from the infringing activities in this case due to the fact they are selling and distributing Baylis' copyrighted work without a license from him, and have right and ability to control such activity, including through a review process which all Partners games must be subjected to once they have subscribed to Valve's platform. (¶ 32.) Valve are abusing the DMCA safe harbour provisions, and so to use Valve's own reference from Online Pol'y Grp. v. Diebold, Inc., 337 F. Supp. 2d 1195 (N.D. Cal. 2004) **"[i]n section 512(f), Congress provides an express remedy for misuse of the DMCA's safe harbor provisions,"** [Emphasis added]

### 1.    Baylis has adequately claimed he is a joint author of Iron Sky and owns a copyright under U.S.C 17 §106.

Baylis has adequately claimed he is a copyright owner to his work related to Iron Sky due to him being an actual joint author and his name being on the work. (¶¶ 82-92.) Whilst there is no need to register a foreign work at the United Sates Copyright Office, Baylis has done so. (¶ 4.) This also confirms his authorship status due to the fact no "work for hire"

1  contracts exist that would automatically convey copyrights to anyone else. (¶¶ 82-85.)

2  U.S.C 17 §101 defines motion pictures as, "audiovisual works consisting of a series

3  of related images which, when shown in succession, impart an impression of motion..."

4  An animator such as Baylis on a film like Iron Sky where the visual aspects of the film are

5  important, requires him to do just that. In Aalmuhammed v. Lee, 202 F.3d 1227, 1232 (9th

6  Cir. 2000) Judges accepted the plausibility of an animator as a joint author of a film, "Where

7  the visual aspect of the movie is especially important, the chief cinematographer might be

8  regarded as the author. And for, say, a Disney animated movie like "The Jungle Book," it

9  might perhaps be the animators..." Aalmuhammed v. Lee, 202 F.3d 1227, 1232 (9th Cir. 2000).

10  **2.      Baylis has adequately claimed that Valve have made**

11  **misrepresentations under 17 U.S.C. § 512(f).**

12  17 U.S.C. § 512(f) relates to Misrepresentation made by "Any person" and related

13  remedies. Valve claiming that misrepresentation under 17 U.S.C. §512(f) is, "not a cause of

14  action available to alleged copyright holders who assert infringement," (MTD at 3.)[2] However,

15  Valve are just wrong because the plain text of 17 U.S.C. § 512(f) makes it objectively clear

16  that it *is* a cause of action available to copyright holders. The statute provides:

17  ((f) Misrepresentations.—**Any person** who knowingly materially misrepresents under
this section—

18  (1) that material or activity is infringing, or
(2) that material or activity was removed or disabled by mistake or misidentification,

19  **shall be liable for any damages, including costs and attorneys' fees,** incurred by
the alleged infringer, **by any copyright owner** or copyright owner's authorized

20  licensee, or by a service provider, **who is injured by such misrepresentation**, as the
result **of the service provider relying upon such misrepresentation** in removing

21  or disabling access to the material or activity claimed to be infringing, **or in replacing
the removed material or ceasing to disable access to it.**

22  17 U.S.C. § 512(f) [Emphasis Added].

23  _____

24  [2] "MTD at__ " citations are to Valve's Motion To Dismiss, (Dkt. #29) unless otherwise indicated.

Baylis has stated facts in his claim which enable him to state a claim under 17 U.S.C. § 512(f) because it is genuinely Valve who are a party who, by making misrepresentations themselves under 17 U.S.C. § 512(f) *are relying upon their own misrepresentations,* "in replacing the removed material or ceasing to disable access to it" (17 U.S.C. § 512(f) (2)).

In this case Valve *is* the alleged infringer *and* Valve are the ones making misrepresentations because they are ineligible for DMCA Safe harbour provisions in this case due to their ineligible status under 17 U.S. Code §§ 512 (c) (1) (b) and this is made clear in,

> **United States Copyright Office: section 512 of title 17: a report of the register of copyrights**
> "to qualify for the section 512(c) and (d) safe harbors, an OSP must not "receive a financial benefit directly attributable to the infringing activity, in a case in which the OSP has the right and ability to control such activity."" (p.26)
> https://www.copyright.gov/policy/section512/section-512-full-report.pdf

Valve even admit that the statutory language is sufficiently clear on its face in U.S.C. § 512(f) because they make reference to it in their own Motion To Dismiss Dkt. #29 by citation. "The court further noted that "the statutory language [of § 512(f)] is sufficiently clear on its face and does not require importation of standards from other legal contexts."" Online Pol'y Grp. v. Diebold, Inc., 337 F. Supp. 2d 1195 (N.D. Cal. 2004) at 1204. (MTD at 4.)

Valve, continue to avail themselves of financial gain from the sale and distribution of the infringing content as they have not removed the infringing content at this time of writing, and they are misrepresenting to Baylis, "that they have fulfilled their role in this case under DMCA Safe harbour provisions." (¶¶ 105-107.) This is not true it's a misrepresentation by Valve and is objectively a misuse of the DMCA Safe harbour provision by Valve which, Congress provides an express remedy for under 17 U.S.C. § 512(f).

Furthermore, Valve appears to be wanting to claim protection from Baylis under 17 U.S.C. § 512(f) by saying, "he is the very type of party that 17 U.S.C. § 512(f) protects online service providers against." (MTD at 1.) This is just victim blaming by Valve because Baylis

is the actual victim of Valve's misrepresentation, and of the harm caused by Valve due to their

misrepresentation, willful blindness and infringement of his lawfully acquired copyright.

Valve is purposefully misusing the DMCA Safe harbour provision to claim protection against

liability for Valve's own infringing activities, which they receive a financial benefit directly

attributable to, and Valve is deceptively utilizing an irrelevant counter-notice from their

Partner (¶ 120,) to invoke DMCA Safe harbour provisions despite Valve's non-qualifying

status under 17 U.S.C. §§ 512(c)(1)(B) in this case. Therefore, Baylis is the copyright owner

and can claim damages, including costs and attorneys' fees incurred under U.S.C. 17 §512(f)

for Valves misrepresentations and Valve's abuse of the DMCA under 17 U.S.C. § 512(f).

### 3.   Baylis has not made misrepresentations about his lawfully acquired copyrights to Iron Sky.

Valve are making a claim that Baylis is somehow misrepresenting that he holds a valid

copyright for his own work for which he is the author of (MTD at 4.) This is false because

Baylis is definitely the author of his work on Iron Sky and has the original files with his

name embedded within the metadata of many of the files (¶¶ 86-92.). Baylis is a forty year

veteran professional of the creative industry and has been working at high level creative firms

since 1983 before computers were common place in the industry, and has been the author

of innumerable copyrightable works over that time (¶¶ 33-35.) Baylis has already shown

considerable evidence of authorship and proximity to his Iron Sky work substantially and

variously throughout his Second Amended Complaint Dkt. #25, Pages 9-11, 13-38.

Iron Sky producers have never acquired any adaptations rights from Baylis and no

valid written agreement exists with the word "adaptation rights" in it, let alone the words

"Iron sky Invasion" or "video games" or even the word "Valve" (¶ ¶ 33-35, 44, 58.) Iron Sky

Producers have relied on a fallacy of popular opinion to get away with raising funding for

1    a franchise including video games based on Iron Sky copyrights as equity rather than any

2    valid Chain of title documentation. The Producers have never fully "owned" copyrights from

3    Iron Sky. This has been demonstrated on its own by Baylis' documentation at the time under

4    which *he created significant parts of the production whilst being unemployed* (¶¶ 82-85,) and

5    during litigation in Finland which ultimately resulted in the Iron Sky Producers bankruptcy

6    when their distribution deals for a franchise were canceled (¶ 130.) Valve have no proof of

7    copyright acquisition from Baylis via Chain of Title documentation and no of proof of any

8    written and signed exclusive rights agreement from Baylis' to Valve.

9         **B.      Baylis has pled facts sufficient to state a cause of action for**

10        **"Willful Blindness" under U. S. C. 17 §512 and U. S. C. 17 §106 (Count 4).**

11            Valve's argument in referring to his count 4 claim (Dkt. #25) is that Baylis "makes up

12   a claim that does not exist." (MTD at 1.) However, Valve then contradict their own claim by

13   admitting that willful blindness is a claim related to Digital Millennium Copyright Act under

14   U.S.C 17 § 512(f) in citing, Lenz v. Universal Music Corp., 815 F.3d 1145, 1155 (9th Cir. 2016)

15   which, also deals with misrepresentations under U.S.C 17 § 512(f). Therefore, Valve are again

16   proving Baylis' point for him because they admit that willful blindness is a valid claim. There is a

17   long history of willful blindness being accepted as a claim by the Federal judiciary as indicated in

18   the foregoing.

19        **1.      Allegations of Willful Blindness have been sufficient to defeat a**

20        **motion to dismiss in civil cases involving intellectual property rights.**

21            In, Motiva Patents, LLC v. Sony Corp., 408 F. Supp. 3d 819, 829 (E.D. Tex.

22   2019) ("The Supreme Court explained that "[t]he traditional rationale" for treating willful

23   blindness as a form of knowledge "is that defendants who behave in this manner are just as

24   culpable as those who have actual knowledge." Global-Tech , 563 U.S. at 766, 131 S.Ct.

2060. Additionally, the doctrine of willful blindness recognizes that "persons who know enough to blind themselves to direct proof of critical facts in effect have actual knowledge of those facts." Id. After reviewing "the long history of willful blindness and its wide acceptance in the Federal Judiciary," the Court explained that willful blindness, in the context of induced infringement, has two elements: "(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." Id. at 768, 131 S.Ct. 2060. Accordingly, conduct that qualifies as willfully blind to the existence and potential infringement of the asserted patents is sufficient to satisfy the knowledge requirement for induced infringement. See id.") (Note: Full citation is from Motiva Patents, LLC v. Sony Corp., 408 F. Supp. 3d 819, 829 (E.D. Tex.))

In this particular case, rather than just being an element of a claim willful blindness it is in fact the catalyst for the main claim because Valve are by design attempting to expropriate valuable copyright from Baylis by being willful blind to the fact he is the author of the works and has valid lawfully acquired copyrights to the work under U.S.C. 17 §106.

### 2.    The claim of willful blindness has a cognizable legal theory.

"Willful blindness" relates to this case as part of a nefarious strategy which creates an "*argument from ignorance*" (such as assuming a film producer automatically "owns copyrights" to a film when evidence of their "copyright ownership" is actually lacking) with the intent to illegally expropriate copyrights (17 U.S. Code § 201(e))[3] from the film's authors instead of legal acquisition via written, signed contractual conveyance as required under U.S.C 17 §204, and then to use the expropriated copyright from authors to fraudulently obtain financial benefits in various ways relying on that *argument from ignorance* to ultimately

---

[3] (see, Dkt. #25. 4. QUESTIONS PRESENTED (¶ 14.) Expropriation of copyright))

defraud investors and other third parties who are credulous enough to believe such things.

Baylis is aware of this because it is the exact same way that Iron Sky producers were able to utilise Baylis' copyrighted works previously for a franchise because, as there were no adaptation rights agreements offered to the Producers, they instead attempted to expropriate such rights from Baylis. (¶¶ 82-85.)  Such nefarious willful blindness by Iron Sky producers in the past was also part catalyst for Baylis v Troll VFX in Finland whereby, instead of negotiating with Baylis for a license, the producers attempted to expropriate rights from Baylis by falsely claiming that Baylis had not even worked on Iron Sky (*yes, they really did that!*) even though his name is top of the credits or VFX artists and in computer file metadata ((¶¶ 34, 89-91) and at Page 18 Dkt. #25). Baylis was then sacked from Troll VFX which resulted in court case Baylis v. Troll VFX, Case L 15/32468 (21st October 2016. Tampere Finland) (¶ 129.) This then led to Baylis having to prove himself, and the authorship of his work to Judge Oskar Kulmala for a number of hours and subsequent confirmation that Baylis is the author of his Iron Sky work. (¶¶ 88, 129.)

Valve have been made aware of these things through email exchanges with Baylis. (¶¶ 99 - 105.) Valve has not removed the infringing content in this case at time of writing, and can continue to obtain a financial benefit from it. Valve are deliberately ignoring salient facts and "red flags" (¶¶ 124 - 135.) which would otherwise indicate to any reasonable person that there are problems with the Iron Sky Chain of Title, and therefore Valve continues to benefit from the infringement of Baylis' works at the expense of Baylis causing harm (¶¶ 124 - 135.)

Therefore, willful blindness by Valve is not just an element of infringement, it is a deliberate intentional strategy by Valve and the main cause for Baylis to take action in this court from which relief may be sought, and there exists a reasonable expectation that discovery will reveal evidence in support of Baylis' claims because the Chain of Title for Iron Sky will

1   show that no adaptation rights have been granted to anyone by Baylis for his work (¶¶ 82-85).

2   Baylis' allegations plausibly suggest that additional discovery will reveal evidence

3   in support of Baylis' claim countering any *arguments from ignorance* and this is confirmed

4   in, Motiva Patents, LLC v. Sony Corp., 408 F. Supp. 3d 819, 827 (E.D. Tex. 2019) ("the

5   plausibility standard is met when the complaint pleads "enough fact to raise a reasonable

6   expectation that discovery will reveal evidence" in support of the alleged claims. Twombly

7   , 550 U.S. at 556, 127 S.Ct. 1955 ; accord id. at 559, 127 S.Ct. 1955 (explaining that claims

8   should only be dismissed at the pleading stage when there is "no 'reasonably founded hope

9   that the [discovery] process will reveal relevant evidence' " (quoting Dura Pharm., Inc. v.

10  Broudo , 544 U.S. 336, 347, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005) )); In re Bill of Lading

11  Transmission & Processing Sys. Patent Litig. , 681 F.3d 1323, 1341 (Fed. Cir. 2012) ("As

12  the Supreme Court has explained, the plausibility requirement is not akin to a 'probability

13  requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable

14  expectation that discovery will reveal' that the defendant is liable for the misconduct alleged."

15  (quoting Twombly , 550 U.S. at 556, 127 S.Ct. 1955 )).")

16          **3.      The claims of relief are appropriately sought, and sufficiently pled**

17          Valve must subjectively believe that there is a high probability that Baylis is author

18  to his work on Iron Sky because Valve is the type of company that hires animators like

19  Baylis to create 3D animations for their own games. That is to say, Valve's own artists create

20  intellectual property for Valve to exploit, register at the Copyright Office, and protect from

21  infringement such as in, Valve Corp. v. Sierra Entertainment Inc., 431 F. Supp. 2d 1091, 1094

22  (W.D. Wash. 2004), "Valve alleges that Sierra/Vivendi distributed Valve games to cyber-cafés

23  in the United States and abroad. First Am. Compl., docket no. 40, pg. 3, ¶ 11. Cyber-cafés are

24  "for-profit multi-player facilities" that provide the general public with access to computers

1   and video games for a fee. Id." Valve Corp. v. Sierra Entertainment Inc., 431 F. Supp. 2d

2   1091, 1094 (W.D. Wash. 2004).  Therefore, Valve must understand that appropriate licenses

3   must be granted for the legal exploitation of copyrighted works such as Iron Sky works, and

4   that a clear Chain of Title is required for legal funding and distribution of works such as Iron

5   Sky Invasion because Iron Sky Invasion contains in principle similar types of 3D models and

6   animations that Valve's own employees create for Valve's own games which are copyrightable

7   but Valve are failing to do due diligence checks on the Iron Sky Chain of Title and ignoring red-

8   flag awareness of various facts that indicate infringement of Baylis' copyrights. (¶¶ 124-135.)

9          **C.      Baylis should be granted leave to amend if required.**

10         Courts in this district freely grant leave to amend where the claim could be cured by

11   additional allegations. Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995). This policy is

12   "applied with extreme liberality." Morongo Band of Mission Indians v. Rose, 893 F.2d 1074,

13   1079 (9th Cir. 1990); see also Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000). But courts

14   "should be especially reluctant to dismiss on the basis of the pleadings when the asserted

15   theory of liability is novel . . . since it is important that new legal theories be explored and

16   assayed in the light of actual facts." Elec. Constr. & Maint. Co. v. Maeda Pac. Corp.,

17   764 F.2d 619, 623 (9th Cir. 1985).

18   **5. CONCLUSION**

19         Valve is continuing to profit from Baylis' infringed work whilst knowingly

20   misrepresenting that they have DMCA safe harbour immunity when they do not in this case,

21   and are being willful blind in order to, in principle, expropriate copyrighted works from Baylis

22   for their own gain. Valve's motion to dismiss should be denied. Should the Court determine

23   that dismissal of any claims should be granted, the Court should do so without prejudice and

24   with leave to amend.

I certify that this memorandum contains 4047 words, in compliance with the Local Civil Rules.

5th March 2024

Trevor Kevin Baylis

Jankanraitti

Tampere 33560, FINLAND

Please note: Plaintiff is dyslexic. Thus written documents such as this may have minor accidental spelling and or grammatical errors. Such things should not be seen as cause to prejudice the author of this document.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
No. 2:23-cv-01653-RSM

1

2                               CERTIFICATE OF SERVICE

3          I hereby certify that on 5th March 2024 I caused true and correct copies of the foregoing

4     document to be served upon the following, at the email addresses stated below, via "email" as

5                                        method of service.

6

7                      Jeremy E Roller: jroller@aretelaw.com,

8                             jfischer@aretelaw.com,

9                           kgreenberg@aretelaw.com

10

11                    Jonah O. Harrison: jharrison@aretelaw.com,

12                            jfischer@aretelaw.com,

13                          kgreenberg@aretelaw.com

14

15                         Dated: 5th March 2024

16

17

18                         Trevor Kevin Baylis

19                             Jankanraitti

20                       Tampere 33560, FINLAND

21

22

23

24