# EXHIBIT H

# Kluwer Copyright Blog (https://copyrightblog.kluweriplaw.com/)

**Wolters Kluwer** (http://www.wolterskluwer.com)

**f** (https://www.facebook.com/wolterskluwer)   **X** (https://x.com/wolters_kluwer)

**in** (https://www.linkedin.com/company/wolters-kluwer)

**▶** (https://www.youtube.com/user/WoltersKluwerComms)   🔍

CASE LAW (HTTPS://COPYRIGHTBLOG.KLUWERIPLAW.COM/CATEGORY/CASE-LAW/),
FINLAND (HTTPS://COPYRIGHTBLOG.KLUWERIPLAW.COM/CATEGORY/JURISDICTION-2/FINLAND/),
ORIGINALITY (HTTPS://COPYRIGHTBLOG.KLUWERIPLAW.COM/CATEGORY/ORIGINALITY/),
OWNERSHIP (HTTPS://COPYRIGHTBLOG.KLUWERIPLAW.COM/CATEGORY/OWNERSHIP/)

## Finnish court rules on copyright in the film 'Iron Sky' (https://copyrightblog.kluweriplaw.com/2019/03 /01/finnish-court-rules-on-copyright-in-the-film-iron-sky/)

Petteri Gunther (https://copyrightblog.kluweriplaw.com/author/petteri-gunther/) (Legal Counsel, Elisa (https://www.elisa.com/)) / March 1, 2019 (https://copyrightblog.kluweriplaw.com/2019/03/01/finnish-court-rules-on-copyright-in-the-film-iron-sky/) / 6 Comments (https://copyrightblog.kluweriplaw.com/2019/03/01/finnish-court-rules-on-copyright-in-the-film-iron-sky/#comments)



(https://copyrightblog.kluweriplaw.com/2019/03/01/finnish-court-rules-on-copyright-in-the-film-iron-sky/earth-11014_1920/)The Finnish market court (Markkinaoikeus) has sided with the producers of the sci-fi feature film '*Iron Sky* (https://www.imdb.com/title/tt1034314/) in a copyright case (MAO:302/18   (https://www.finlex.fi/fi/oikeus/mao/2018 /20180302#idp447767056)) concerning rights in that movie. The market court dismissed the claims by animators and visual effects (VFX) technicians who asserted that the producers of the feature film had used the claimants' copyright-protected works for sequels to the *Iron Sky* movie without their permission. The claimants argued that they had only agreed to the use of material created by them in connection with the original *Iron Sky* movie, and that any other use of that material infringed their copyright. The court ultimately held that the claimants did not own copyright in either the film *Iron Sky* or certain spaceships depicted in that movie. The judgment has since become final.

During the proceedings, the claimants asserted that the spaceships and computer-generated graphics they had created played such a significant role in the film that they should be considered to be joint copyright holders of the film. They also contended that three-dimensional modelling requires independent and creative choices and that certain spaceships had been designed by them, and those models constituted original 'works'. Their claims were essentially based on the view that they had created details relating to numerous scenes in *Iron Sky* as well as the actual visual

Case 2:23-cv-01053-RSM   Document 44-8   Filed 04/03/24   Page 3 of 14

content of those scenes that were computer-generated.

The producers countered those claims by arguing that the role of the animators and visual effects technicians in the production of the film was insufficient to qualify them as joint copyright holders of *Iron Sky*. The producers' view was that the claimants were implementing creative choices made by others instead of making independent and creative choices in connection with their work relating to the film.

The market court evaluated the parties' submissions in order to develop an understanding of the creative process relating to the subject matter of the dispute: the film *Iron Sky*, as well as certain spaceships depicted in the movie. The market court appeared to deem this determination central for the purposes of establishing who in fact had made independent creative choices during that creative process. The outcome of this case was to a large extent based upon that understanding.

This case can be viewed in light of the CJEU's prior case law: the court for instance in its landmark decision *Infopaq* (Case C-5/08   (http://curia.europa.eu/juris/document /document.jsf;jsessionid=87E7C71AEBD8B5BA5B579390528415E7?text=&docid=72482&pageIndex=0&doclang=EN& mode=lst&dir=&occ=first&part=1&cid=873874)) established that copyright extends to subject-matter which is original, meaning that it is the "author's own intellectual creation" (paras 30-51). Further, the court concluded in *Painer* (Case C-145/10   (http://curia.europa.eu/juris/document/document.jsf?docid=115785&doclang=EN)) that an intellectual creation is the author's own "if it reflects the author's personality" (para 88), that is: "if the author was able to express his creative abilities in the production of the work by making free and creative choices" (para 89).

*The market court held that the claimants did not hold copyright in the film*

The market court held that the animators and visual effects technicians did not hold copyright in the film. The decisive factor in this determination was the possibility of making independent creative choices: the animators and visual effects technicians had assisted in the creation of visual effects but not in a way that could be considered comparable to that of the actual film creators.

While execution may indeed require skill, it will not alone result in authorship absent independent creative choices. Therefore, the market court held that the claimants did not hold copyright in the film.

*The market court held that the claimants did not hold copyright in the spaceships*

In the market court's view, 'originality' was the starting point: for the purposes of determining who holds copyright in a certain spaceship design, the level of technical skill required or the amount of time necessary were not decisive factors. Instead, it was necessary to establish who had made independent creative choices in the creation of those spaceships.

The animators and visual effects technicians had undoubtedly contributed to the creation of those contested spaceship designs. However, the market court held that, with the exception of the Japanese spaceship, the claimants' role had been to assist in implementing creative choices made by others. The court considered that the producers had failed to show that anyone other than one of the claimants had contributed to the creative process relating to the Japanese spaceship. So, the court found that one of the claimants thus held copyright in that spaceship. However, it also found that the copyright had been transferred to the producers. According to the market court, the claimants did not qualify as *authors* of those works (except for the Japanese spaceship), and therefore they did not hold copyright in the spaceships either.

*Conclusions*

Originality and determining who has the possibility to make independent creative choices can be said to be at the heart of this case. Based on the evidence submitted by the parties, the market court assessed who had had the possibility of making those independent choices in connection with the creative process relating to the film. The court thus acknowledged that copyright protects the expression of an idea, and assisting in implementing creative choices made by others does not alone suffice to be considered an 'author' for the purposes of copyright. The outcome appears to be in line with the CJEU's case law e.g. in the *Painer* case   (http://curia.europa.eu/juris/document /document.jsf?text=&docid=115785&pageIndex=0&doclang=en&mode=lst&dir=&occ=first&part=1&cid=19015) where the court emphasized the primacy of the "author's own intellectual creation" standard for copyright works.

Similar issues were also recently discussed in connection with animations. The Finnish Copyright Council

(Tekijänoikeusneuvosto) held, in connection with its statement (Statement 2018:12 (https://minedu.fi/documents /1410845/8017448/Lausunto+2018-12+3D-animaatioiden+ja+animaatiohahmon+tekij%C3%A4noikeudellinen+suoja)) on 3D animations and copyright in animation characters, that original drawings, i.e. expressions (fixation) of those characters, may be protected as 'works'; however, characters (abstract concepts) as such do not qualify as copyright works.

Finally, the outcome of the *Iron Sky* case serves as a reminder of the idea–expression dichotomy, that copyright does not protect an idea as such; instead, it protects an expression, i.e. a fixation, of an idea — and that expression needs to be the "author's own intellectual creation" to merit copyright protection.

_____

*To make sure you do not miss out on regular updates from the Kluwer Copyright Blog, please subscribe* **here** *(https://copyrightblog.kluweriplaw.com/newsletter).*

## Kluwer IP Law

The **2022 Future Ready Lawyer survey** showed that 79% of lawyers think that the importance of legal technology will increase for next year. With Kluwer IP Law you can navigate the increasingly global practice of IP law with specialized, local and cross-border information and tools from every preferred location. Are you, as an IP professional, ready for the future?

**Learn how Kluwer IP Law can support you.** (https://www.wolterskluwer.com/en/solutions /kluweriplaw?utm_source=copyrightblog&utm_medium=banner&utm_campaign=article-bottom-cta_2022-frlr_0223)



79% of the lawyers think that the importance of legal technology will increase for next year.

Drive change with Kluwer IP Law.
The master resource for Intellectual Property rights and registration.

 Wolters Kluwer

2022 SURVEY REPORT
The Wolters Kluwer Future Ready Lawyer
Leading change

(https://www.wolterskluwer.com/en/solutions/kluweriplaw?utm_source=copyrightblog&utm_medium=banner& utm_campaign=article-bottom_2022-frlr_0223)

(https://copyrightblog.kluweriplaw.com/2019/03/01/finnish-court-rules-on-copyright-in-the-film-iron-sky/?output=pdf)

LIKE? SHARE WITH YOUR FRIENDS.

✉

(MAILTO:?SUBJECT=FINNISH

COURT

X    RULES

(HTTPS://X.COM

/INTENT (HTTPS://WWW.LINKEDIN.COM

/TWEET?URL=HTTPS?MINI=TRUE&

● %3A%2URL=HTTPS

(HTTP%2F%2FCOPYRIGBLOGOCC.KLUWERIPLAW.COM%2F2019%2F03%2F01%2FFINNISH-

/SHARECOPYRIGHT%2FACOTTONRIGHTBLOG.KLUWERIPLAW.COM%2F2019%2F03%2F01%2FFINNIS

%3A%2BLES-OURT-SKY'&BODY=HTTPS://COPYRIGHTBLOG.KLUWERIPLAW.COM

%2FCOPYRIGHTBLOG/2019/03%2F2019%2F03%2F01%2FFINNISH-

COURT-COPYRIGHT/01/FINNISH-

RULES-IN-   COPYRIGHT-COURT-

ON-  THE-  IN-  RULES-

COPYRIGHT-THE-  ON-

IN-  IRON-FILM-COPYRIGHT-

THE-  SKY%2F)ON- IN-

FILM-TEXT=SKY%2FTHE-COURT+RULES+ON+COPYRIGHT+IN+THE+FILM+

IRON-%E2%80T LE-FFINNISH+COURT+RULES+ON+COPYRIGHT+IN+THE+FILM+

SKY%2F581R026-66528#16%3BIRON+SKY

TITLE%FINNISH%3A020)%2F)%20RULES%20ON%20COPYRIGHT%20IN%20THE%20FILM%

---

← PREVIOUS ARTICLE (HTTPS://COPYRIGHTBLOG.KLUWERIPLAW.COM/2019/02
/27/FRENCH-COURT-OF-CASSATION-DEFINES-NOTION-OF-FIXATION-OF-THE-
PERFORMANCE/)

**French Court of Cassation Defines Notion of "fixation" of the performance (https://copyrightblog.kluweriplaw.com/2019/02/27/french-court-of-cassation-defines-notion-of-fixation-of-the-performance/)**

CATHERINE STARY (HTTPS://COPYRIGHTBLOG.KLUWERIPLAW.COM/AUTHOR/CATHERINE-STARY/) (ZSCHUNKE (HTTP://WWW.ZSCHUNKE.COM/EN)) FEBRUARY 27, 2019 (HTTPS://COPYRIGHTBLOG.KLUWERIPLAW.COM/2019/03/01/FINNISH-COURT-RULES-ON-COPYRIGHT-IN-THE-FILM-IRON-SKY/)

NEXT ARTICLE (HTTPS://COPYRIGHTBLOG.KLUWERIPLAW.COM/2019/03/04/DAMAGES-AWARD-PROVES-GOLDEN-FOR-SPANDAU-BALLET/) →

**Damages award proves golden for Spandau Ballet (https://copyrightblog.kluweriplaw.com/2019/03/04/damages-award-proves-golden-for-spandau-ballet/)**

JEREMY BLUM (HTTPS://COPYRIGHTBLOG.KLUWERIPLAW.COM/AUTHOR/JEREMY-BLUM/), SARA SEFTON (HTTPS://COPYRIGHTBLOG.KLUWERIPLAW.COM/AUTHOR/SSEFTON1/) (BRISTOWS LLP (HTTPS://WWW.BRISTOWS.COM/)) MARCH 4, 2019 (HTTPS://COPYRIGHTBLOG.KLUWERIPLAW.COM/2019/03/01/FINNISH-COURT-RULES-ON-COPYRIGHT-IN-THE-FILM-IRON-SKY/)

## 6 comments



### Trevor Baylis

MARCH 1, 2019 AT 7:47 PM (HTTPS://COPYRIGHTBLOG.KLUWERIPLAW.COM/2019/03/01/FINNISH-COURT-RULES-ON-COPYRIGHT-IN-THE-FILM-IRON-SKY/#COMMENT-47441)

I was lead plaintiff in the case.

Petteri Gunther worked at Lexia, who were defendants previous lawyers. He doesn't mention in this blog that the defendants couldn't prove copyright ownership themselves. They made a counter claim and lost. So, who owns the copyright? It seems negated completely.

This is unlawful.

Many people worked on this production without wages or contracts. I worked for 6 months receiving unemployment benefits but created vasts amounts of copyrightable content. The courts negated the copyright seemingly to side step the issues of "lack of contracts".

"if the author was able to express his creative abilities in the production of the work by making free and creative choices"

The courts ignored evidence in this case because it is obvious prima facie that a 3D modeler, VFX artist and animator can obviously "express his creative abilities in the production of the work by making free and creative choices". How do you stop us making creative choices? Electrify our chairs? Hit us with sticks any time we show a modicum of creativity? Don't be so stupid! This is not telephone directories or databases this is 3D animation work for a sci fi film that used crowd sourcing to provide creative content. It was an amateur production.

This court ruling falls way outside of EU law and international treaties as well as the Human rights act article 27. They seem to have made qualitative assessments which are forbidden by EU directives.

So the producers lost their counterclaim to stop the original VFX artists from using the work in the future. Thus the Chain of Title is unclear as the courts negated the copyright, apart from the Jap Ship (?!). So Universal Studios pulled funding from the sequel.

Third party distributors still remain liable for copyright infringement because the ruling only relates to Finland. (Emphasis added)

And now other production companies in Finland, including in the game industry, may consider it unnecessary to acquire copyright transfer agreements from 3D artists and animators!!! The rest of the world won't be so accepting because of Berne Con. Article 5.

None of this falls in line with the EU attempts to provide fairness for authors of works which is being debated at the moment.

This is an inept and shameful ruling by Finnish Courts. Made worse by Finnish lawyers trying to mislead readers of the Kulwer blog by omitting significant factual information about the producers losing the counterclaim.

Now significant amounts of 3D animators works are unable to be protected in Finland which includes the games industry. Such works are created the same way as Iron Sky works. (Emphasis added)

Additionally the (Statement 2018:12) is my own statement to the copyright council concerning my 3D animation work...which is protected by copyright!!! So that seems to contradict the court ruling as well!!

Furthermore I have another statement from the Copyright council TN2015:6 which is specifically about Iron Sky 3D animation works and actually confirms all the work as being protected not just the Jap ship. The courts ignored this as did Petteri Gunther it seems!

Also ...what about the Moral rights of the Jap ship?

Disgraceful!

**REPLY**



### Trevor Baylis

MARCH 4, 2019 AT 3:03 PM (HTTPS://COPYRIGHTBLOG.KLUWERIPLAW.COM/2019/03/01/FINNISH-COURT-RULES-ON-COPYRIGHT-IN-THE-FILM-IRON-SKY/#COMMENT-47559)

Petteri tries to justify the ruling rather than raise questions about it saying that it falls in line with Infopaq and Painer when clearly it does not! [Emphasis Added!]

Petteri and the courts refer to the Painer copyright case but do so falsely or speciously.
For instance in paragraphs 122 and 124 of ECLI:EU:C:2011:239, it is easy to swap 'photographer' with 'VFX artist or animator'. Such as, 'the "VFX artist" utilises available formative freedom and thus gives it originality." (122) and, "VFX artist 'leaves his mark' on a film." (124)

Plus in Painer it mentions that copyright can exist for an author even if the work is commissioned by "others". [Emphasis added]

121. According to the first sentence of Article 6 of Directive 93/98 and of Directive 2006/116, only human creations are therefore protected, which can also include those for which the person employs a technical aid, such as a camera.

122. Furthermore, the photo must be an original creation. (50) In the case of a photo, this means that the photographer utilises available formative freedom and thus gives it originality.

123. Other criteria are expressly irrelevant, as the second sentence of Article 6 of Directive 93/98 and of Directive 2006/116 makes clear. A certain degree of artistic quality or novelty are not therefore required. The purpose of the creation, expenditure and costs are also immaterial.

124. Accordingly, the requirements governing copyright protection of a photo under Article 6 of Directive 93/98 and of Directive 2006/116 are not excessively high. (51) If this criterion is applied, a portrait photo may be protected by copyright under Article 6 of Directive 93/98 and of Directive 2006/116 where the work was produced by the photographer as a result of a commission. Even though the essential object of such a photo is already established in the person of the figure portrayed, a photographer still enjoys sufficient formative freedom. The photographer can determine, among other things, the angle, the position and the facial expression of the

Case 2:23-cv-01055-RSM   Document 44-8   Filed 04/03/24   Page 7 of 14

person portrayed, the background, the sharpness, and the light/lighting. To put it vividly, the crucial factor is that a photographer 'leaves his mark' on a photo.

Now Pettrei concludes with this,

Conclusions

"Originality and determining who has the possibility to make independent creative choices can be said to be at the heart of this case" (Petteri Günther)

So after referring to Painer correctly, the crucial factor is that the 3D animator "leaves his mark" on the work. Certainly our names are even in the metadata of the files.

So going back to his previous premise "The animators and visual effects technicians had undoubtedly contributed to the creation of those contested spaceship designs" (Petteri Günther)

How is it possible that we did not "leave our mark" on the work?
Then there is this,

"The decisive factor in this determination was the possibility of making independent creative choices: the animators and visual effects technicians had assisted in the creation of visual effects but not in a way that could be considered comparable to that of the actual film creators." (Petteri Günther)

This is just "newspeak" isn't it? 2+2=5?

Who are the "actual film creators if not the 3D VFX artists who are actually creating the film?" i.e fixing the work into a tangible medium. We won an AATCA (Australia Oscar) award for best visual effects! How can a film director or producer, or storyboard artist, or musical composer etc... who cannot do 3D animation work be compared to a 3D artist in any case? Why be discriminatory?

Also, it is a qualitative assessment which is strictly forbidden by EU directives! otherwise only work "comparable to film creators" could receive copyright protection. This is clearly specious reasoning by the courts.

Then there is the fact the Producers lost the counterclaim and cannot protect the work themselves. So the work is unprotected by copyright which simply cannot be true!

Think of how all 3D vfx artists in the film and games industry as well as other emerging technologies such as VR are going take to this ruling. It is outrageous!

There is all this fuss about Article 13 when the Finnish courts are doing something far worse to strip rights away from authors. We will become slave workers!

2+2 does not equal to 5. Petteri's blog on Kluwer does not add up!

REPLY



### Trevor Bayliss

MARCH 5, 2019 AT 4:53 PM (HTTPS://COPYRIGHTBLOG.KLUWERIPLAW.COM/2019/03/01/FINNISH-COURT-RULES-ON-COPYRIGHT-IN-THE-FILM-IRON-SKY/#COMMENT-47600)

I would like to complain about the blog post Finnish court rules on copyright in the film 'Iron Sky'.

The writer has misrepresented the facts of the case by stating that the "The Finnish market court (Markkinaoikeus) has sided with the producers of the sci-fi feature film 'Iron Sky'". This is misleading because there was a counterclaim by the producers which was rejected by the The Finnish market court (Markkinaoikeus).

"The producers filed a counterclaim asking MAO to confirm that animators had no copyright in the films or in any material made by them and that the animators had no right to use any material related to them. However, the MAO rejected the counterclaim." https://ipruc.fi/oikeustapaus/mao30218/    (https://ipruc.fi/oikeustapaus/mao30218/)

This blog gives the impression that the producers gained a victory over myself and other animators but in fact the producers were unable to prove that hey had any ownership of the debated copyrights themselves. This is clearly shown in paragraph 108 of the court ruling.

"...the production companies have not argued or made any evidence that would indicate to whom, if anyone, the copyright in the vessel in question had arisen, and whether the copyright in this case had been transferred to production companies, or provided any other justification for the infringement of B and D."

Clearly Petteri Günther has not given a truthful account of the case. This is not acceptable!

REPLY



## Petteri Gunther

MARCH 5, 2019 AT 4:56 PM (HTTPS://COPYRIGHTBLOG.KLUWERIPLAW.COM/2019/03/01/FINNISH-COURT-RULES-ON-COPYRIGHT-IN-THE-FILM-IRON-SKY/#COMMENT-47602)

My aim has been to present the main points of the market court's judgment in the MAO:302/18 case: copyrights in the movie, certain spaceships and other material. The essence of this case, in my opinion, revolved around authorship and thus establishing who had made independent creative choices in the creation of the materials involved. This was also my approach in this blog post.

In their suit the animators and visual effects technicians asserted that the producers of Iron Sky had used the claimants' copyright-protected works for sequels to that movie without permission from the animators and visual effects technicians. It is correct that the producers filed a countersuit in which they e.g. demanded the market court to confirm that the animators and visual effects technicians hold no rights in the produced material. The countersuit was in a way a mainly mirror image of the original suit.

The market court summed up in their conclusions (in paragraph 2) that the case was essentially about copyrights in the movie, certain spaceships and other material. These rights were the subject matter of the claims and counterclaims decided by the market court in MAO:302/18.

The court summed up (in paragraph 110) that the production companies have won the case concerning the original suit – except for the Japanese ship (however, also in this case the copyright to that design was deemed assigned). Their countersuit succeeded only partially: the court only confirmed that the animators and visual effects technicians hold no rights in the Iron Sky film or any material which they had produced for the movie. In their countersuit the production companies had further demanded the court to prohibit the animators and visual effects technicians from using any material they had prepared for the Iron Sky movie. The court held that the demand could not be accepted because it was too broadly formulated and unspecified. Paragraph 108 of the ruling which Mr. Bayliss refers to is related to the infringed claim in the countersuit, and the court rejected the claims stating that the production companies failed to show how the animators and visual effects technicians had infringed their rights.

Naturally the discussion about this case is broader in the judgment than what is briefly summarized in my blog post. It is correct that I have worked in a law firm which has advised the production companies during the production of the film (and that work has also been earlier mentioned as a public reference on the firm's website). I must disagree with Mr. Bayliss concerning his claims that I have not given "a truthful account of the case" as well as that "this is an inept and shameful ruling by Finnish Courts." Based on the judgment, my opinion (which only reflect the author's own views) is that the outcome of the present case is in line with the CJEU's case law.

With respect to Mr. Bayliss's further comments regarding the present case e.g. in relation to Painer, he appears to disagree with how the market court assessed the role of the animators and visual effects technicians in the creation of Iron Sky or any material which they had produced for that movie. While the court considered that the animators and visual effects technicians had assisted in the creation of the film and contributed to the creation of those contested spaceship designs, the market court held that, except for the Japanese spaceship, their role had been to assist in implementing creative choices made by others. Therefore the court did not consider them as 'authors' (except for the Japanese spaceship).

REPLY



## Robert Hosking

APRIL 23, 2020 AT 11:54 PM (HTTPS://COPYRIGHTBLOG.KLUWERIPLAW.COM/2019/03/01/FINNISH-COURT-RULES-ON-COPYRIGHT-IN-THE-FILM-IRON-SKY/#COMMENT-67195)

This is a good case study in copyright law. What I see as the biggest problem here was the lack of clearly-defined contracts being in place before production began. If a person is hired for their skills – be they an actor or an animator – then there needs to be a contract that defines the expectations and requirements of the parties involved. To proceed without these clearly-defined parameters in place ahead of time is asking for trouble down the road.

Contracts are nothing more than an agreement for an exchange – I'll give you this and you'll give me that. Contracts should have mutual value insomuch that the exchange is balanced and no one is taking advantage of the other. The core concept is pretty simple. If nothing else, let this be a lesson to all that it's wise to establish working contract specifics in advance of production.

In general, rights to artwork used in American films is purchased by the production company in its entirety and it can be used in perpetuity. If an artist wants to retain rights to artwork (3D models etc.) then the working contract would define this in a bullet point. If no such contract exists then disputes arise should the production company wish to use the artwork again in future productions (which seems to be the case here). To determine what is fair (an important part of contractual law) one must be able to prove what was expected from the first agreement. Without a contract this is hard to do but not impossible. What is looked at is the benefits to the parties involved.

If a production company hired an VFX animator under the pretense that anything they create would belong exclusively to the production company, then the animator essentially sold the work in its entirety and has no claim. However, in the absence of a contract outlining such details, the issue becomes clouded and the parties should renegotiate to avoid future conflicts. It would go like this; "Look, we want to make a sequel and use some of the assets you created in our last film. We didn't discuss this possibility before, so what do you think is fair?" From this point you can begin discussions that work out for everyone and good faith is shown. This approach also avoids lots of future trouble and costs.

REPLY

 **Kash lomua**

FEBRUARY 23, 2023 AT 2:24 PM (HTTPS://COPYRIGHTBLOG.KLUWERIPLAW.COM/2019/03/01/FINNISH-COURT-RULES-ON-COPYRIGHT-IN-THE-FILM-IRON-SKY/#COMMENT-125295)

So how did the appeal go

REPLY

# Leave a Reply

YOUR EMAIL ADDRESS WILL NOT BE PUBLISHED. REQUIRED FIELDS ARE MARKED *

**COMMENT**

**NAME ***

**EMAIL ***

**WEBSITE**

☐ SAVE MY NAME, EMAIL, AND WEBSITE IN THIS BROWSER FOR THE NEXT TIME I COMMENT.

POST COMMENT

## GET BLOG POSTS IN YOUR INBOX!

Email                                                                                    SUBSCRIBE

## NUMBER 2 IN TOP 50 COPYRIGHT BLOGS!

    (https://blog.feedspot.com/copyright_blogs/)



(https://www.wolterskluwer.com/en/solutions/kluweriplaw?utm_source=copyrightblog&utm_medium=banner&utm_campaign=side-top_upc-case-law-tracker_0923)

CONTRIBUTORS

Christina Angelopoulos (http://www.cipil.law.cam.ac.uk/peoplemembers/dr-christina-angelopoulos)
CIPIL, University of Cambridge (http://www.cipil.law.cam.ac.uk/)



(https://copyr
/author
/christina-
angelopoulos

João Pedro Quintais (https://www.ivir.nl/employee/quintais/)
Institute for Information Law (IViR) (https://www.ivir.nl/)



(https://copyr
/author
/joao-
pedro-
quintais/)

1/16/2024, 3:45 PM

**Brad Spitz (http://www.realex.fr/)**
REALEX (http://www.realex.fr/)

 (https://copyr
/author
/brad-
spitz/)

**Alina Trapova**
University College London (https://www.ucl.ac.uk/laws/people/alina-trapova)

 (https://copyr
/author
/alina-
trapova/)

**Jeremy Blum (http://www.bristows.com/our-people/jeremy_blum)**
Bristows LLP (http://www.bristows.com/)

 (https://copyr
/author
/jeremy-
blum/)

**Gianluca Campus**
University of Milan (http://www.unimi.it/ENG/)

 (https://copyr
/author
/gianlucacam

**Marianna Foerg (https://www.potterclarkson.com/our-people/marianna-foerg/)**
Potter Clarkson LLP and King's College London (https://www.potterclarkson.com/our-people/marianna-foerg/)

 (https://copyr
/author
/mryan1/)

**P. Bernt Hugenholtz (http://www.ivir.nl/medewerkerpagina/hugenholtz)**
Institute for Information Law (IViR) (http://www.ivir.nl/)

 (https://copyr
/author
/bernt-
hugenholtz/)

**Martin Husovec (http://www.tilburguniversity.edu/webwijs/show/m.husovec.htm)**
London School of Economics (https://www.lse.ac.uk/law/people/academic-staff/martin-husovec)

 (https://copyr
/author
/martin-
husovec/)

**Bernd Justin Jütte (http://www.nottingham.ac.uk)**
University College Dublin (https://www.ucd.ie/)

 (https://copyr
/author
/bjutte1/)

**Paul Keller (https://www.uva.nl/en/profile/k/e/p.keller/p.keller.html)**
Institute for Information Law (IViR) (http://www.uva.nl)

 (https://copyr
/author
/paul-
keller/)

**Rita Matulionyte**
Macquarie Law School

 (https://copyr
/author
/rita-
matulionyte/)

**Jan Bernd Nordemann (http://nordemann.de/team/#prof-dr-jan-bernd-nordemann)**
NORDEMANN (http://nordemann.de/)



**Giulia Priora**
NOVA School of Law Lisbon (https://novalaw.unl.pt/en/)

(https://copyr
/author
/jan-
bernd-
nordemann/)



(https://copyr
/author
/giulia-
priora/)

**Felix Reda (https://felixreda.eu/en/)**
GFF (Society for Civil Rights) (https://freiheitsrechte.org/team/)



(https://copyr
/author
/felix-
reda/)

**Rainer Schultes (http://www.geistwert.at)**
Geistwert (http://www.geistwert.at)



(https://copyr
/author
/rainer-
schultes/)

**Tatiana Synodinou (http://www.ucy.ac.cy/~synodint.aspx)**
University of Cyprus



(https://copyr
/author
/tatiana-
synodinou/)

**VIEW POSTS ON:**

AG Opinion (https://copyrightblog.kluweriplaw.com/category/ag-opinion/) Artificial Intelligence (AI) (https://copyrightblog.kluweriplaw.com
/category/ai/) Authorship (https://copyrightblog.kluweriplaw.com/category/authorship/) Case Law
(https://copyrightblog.kluweriplaw.com/category/case-law/) CDSM
Directive (https://copyrightblog.kluweriplaw.com/category/cdsm-directive/) CJEU
(https://copyrightblog.kluweriplaw.com/category/cjeu/) Collective management
(https://copyrightblog.kluweriplaw.com/category/collective-management/) Communication (right of)
(https://copyrightblog.kluweriplaw.com/category/communication-right-of/) Conference
(https://copyrightblog.kluweriplaw.com/category/conference/) Damages (https://copyrightblog.kluweriplaw.com/category/damages/) Database right
(https://copyrightblog.kluweriplaw.com/category/database-right/) Digital Single Market
(https://copyrightblog.kluweriplaw.com/category/digital-single-market/) Distribution (right of)
(https://copyrightblog.kluweriplaw.com/category/distribution-right-of/) Enforcement (https://copyrightblog.kluweriplaw.com
/category/enforcement-2/) Estonia (https://copyrightblog.kluweriplaw.com/category/jurisdiction-2/estonia/) European Union
(https://copyrightblog.kluweriplaw.com/category/jurisdiction-
2/european-union/) Exceptions and Limitations
(https://copyrightblog.kluweriplaw.com/category/limitations/) Exhaustion
(https://copyrightblog.kluweriplaw.com/category/exhaustion/) Fair Use (https://copyrightblog.kluweriplaw.com/category/fair-use/) France
(https://copyrightblog.kluweriplaw.com/category/jurisdiction-2/france/) Germany

(https://copyrightblog.kluweriplaw.com/category/jurisdiction-2/germany/) **Infringement (https://copyrightblog.kluweriplaw.com/category/infringement/)** Italy (https://copyrightblog.kluweriplaw.com/category/jurisdiction-2/italy/) **Jurisdiction (https://copyrightblog.kluweriplaw.com/category/jurisdiction-2/) Legislative process (https://copyrightblog.kluweriplaw.com/category/legislative-process/)** Liability (https://copyrightblog.kluweriplaw.com/category/liability/) Making available (right of) (https://copyrightblog.kluweriplaw.com/category/making-available-right-of/) Moral rights (https://copyrightblog.kluweriplaw.com/category/moral-rights/) Neighbouring rights (https://copyrightblog.kluweriplaw.com/category/neighbouring-rights/) **Netherlands (https://copyrightblog.kluweriplaw.com/category/jurisdiction-2/netherlands/) Originality (https://copyrightblog.kluweriplaw.com/category/originality/)** Ownership (https://copyrightblog.kluweriplaw.com/category/ownership/) Poland (https://copyrightblog.kluweriplaw.com/category/jurisdiction-2/poland/) Press Publishers ' Right (https://copyrightblog.kluweriplaw.com/category/press-publishers-right/) Private copying (https://copyrightblog.kluweriplaw.com/category/private-copying/) **Remedies (https://copyrightblog.kluweriplaw.com/category/remedies/) Remuneration (equitable) (https://copyrightblog.kluweriplaw.com/category/remuneration-equitable/) Reproduction (right of) (https://copyrightblog.kluweriplaw.com/category/reproduction-right-of/)** Software (https://copyrightblog.kluweriplaw.com/category/software/) Spain (https://copyrightblog.kluweriplaw.com/category/jurisdiction-2/spain/) **Subject matter (copyrightable) (https://copyrightblog.kluweriplaw.com/category/subject-matter-copyrightable/)** Sweden (https://copyrightblog.kluweriplaw.com/category/jurisdiction-2/sweden/) Text and Data Mining (TDM) (https://copyrightblog.kluweriplaw.com/category/text-and-data-mining-tdm/) **United Kingdom (https://copyrightblog.kluweriplaw.com/category/jurisdiction-2/united-kingdom/) USA (https://copyrightblog.kluweriplaw.com/category/jurisdiction-2/usa/)**

KLUWER IP LAW NEWS ALERT

Stay informed on IP law.

[SUBSCRIBE]

[LATEST NEWSLETTER]



**Managing Copyright:** Emerging Business Models in the Individual and Collective Management of Rights (https://law-store.wolterskluwer.com/s/product/managing-copyright-emerging-business-models-in-the-individual/01t4R00000PBJzOQAH)

Rudolf Leška

€ 93

BROWSE CATEGORIES

| by Jurisdiction... ▾ | by Category... ▾ | by Contributor... ▾ | by Affiliate... ▾ |
| by Date... ▾ |

RELATED SITES

Kluwer IP Law (http://www.kluweriplaw.com/)
Kluwer Patent Blog (http://www.kluwerpatentblog.com)
Kluwer Trademark Blog (http://kluwertrademarkblog.com/)
Author Portal (https://www.wolterskluwer.com/en/solutions/kluwerlawinternational/authors)

RSS FEEDS

Summary Feed (https://copyrightblog.kluweriplaw.com/feed)

Article Feed (https://copyrightblog.kluweriplaw.com/feed)

## AFFILIATES

Kluwer Copyright Cases (http://www.kluweriplaw.com)
Members



(https://copyr
/affiliate
/?gID=507)

 Wolters Kluwer

## ABOUT US

About Kluwer Copyright Blog (https://copyrightblog.kluweriplaw.com/about/)
Kluwer IP Law (http://www.kluweriplaw.com/)
Kluwer Law International (http://www.kluwerlaw.com)
E-store (http://www.kluwerlaw.com/catalogue/)
Authors (https://www.wolterskluwer.com/en/solutions/kluwerlawinternational/authors)

## LEGAL POLICY

User Agreement and Disclaimer (https://copyrightblog.kluweriplaw.com/user-agreement-and-disclaimer/)
Editorial Policy & Guidelines (https://copyrightblog.kluweriplaw.com/editorial-policy-guidelines/)
Privacy Policy and Use of Cookies (https://www.wolterskluwer.com/en/solutions/kluwerlawinternational/privacy-policy)

## CONTACT

General Information (https://copyrightblog.kluweriplaw.com/contact/)

BACK TO TOP ↑