The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| TREVOR KEVIN BAYLIS,<br><br>               Plaintiff, *(pro se)*.<br><br>   v.<br><br>VALVE CORPORATION,<br><br>               Defendant. | Case No. 2:23-cv-01653-RSM<br><br>**PLAINTIFF'S RESPONSE TO VALVE'S MOTION TO REFER COPYRIGHT REGISTRATION QUESTIONS TO THE REGISTER OF COPYRIGHTS AND FOR STAY OF PROCEEDINGS**<br><br>Date filed 10th April 2024 |

**TABLE OF CONTENTS**

1. INTRODUCTION ................................................................................................... 1

2. FACTUAL BACKGROUND ................................................................................. 2

3. ARGUMENT ........................................................................................................... 3

    1. Baylis is a joint author of Iron Sky and owns a copyright under U.S.C 17 §106.   3

    2. MAO302/18 is specific ONLY to limited economic rights under section 2 of FCA and there was NO DISPUTE regarding Moral Rights (right to claim authorship) under Section 3 of the Finnish copyright Act.   3

    3. Incoherence of MAO302/18 and lack of comity with regards to Finland's own copyright laws as well as International copyright law.   6

    4. Baylis has not made misrepresentations to the US Copyright Office about his lawfully acquired copyrights to Iron Sky.   9

    5. US law is not obligated to recognize foreign rulings.   10

    6. Damage to Baylis' honor and reputation from false media reports, Petri Gunther's incoherent Kluwer blog article regarding MAO302/18   11

2. CONCLUSION   12

1. **INTRODUCTION**

In Valves's "Motion To Refer Copyright Registration Questions To The Register Of Copyrights And For Stay Of Proceedings" ("Referral Motion"), #Dkt. 43 at Page 1, it is claimed that "...in his application for copyright registration, Baylis knowingly provided inaccurate information to the Copyright Office."

However, Valve's Referral Motion is baseless, untrue and defamatory because **the ruling Valve refers to ("MAO302/18") does not "deny" Baylis' authorship rights and nor can it because under Droit d'auteur traditions of copyright (Author's rights) such rights are inalienable** and cannot be denied by the ruling because that **would be a Human Rights violation (Art. 27(2), at 76, Universal Declaration of Human Rights (Dec. 10, 1948) which states, "[e]veryone has the right to the protection of the moral and material interests resulting from any scientific, literary or artistic production of which he is the author." - And/or Judicial Expropriation under U.S.C 17 §201(e) which would be unlawful**. The Finnish Market Court ("MAO") specifically limited the dispute to economic rights under section 2 of the Finnish Copyright Act ("FCA") in ("MAO302/18"). There was **no dispute regarding Moral Rights (Right to claim authorship) under Section 3 of the FCA because defendants in the dispute ("Producers") admitted that the Plaintiffs in MAO302/18 (Baylis included) were responsible for creating the work.**

In other respects MAO302/18 suffers from a "Grave procedural error" in that it doesn't acknowledge German authorship laws under Berne Convention article 5 (4) (a) where the film was "first published" (alluded to in at paragraph 3, Harrison Decl., Ex. D **"The film was released in February 2012"**). Moral rights are inalienable and there are "no foreclosures rules" FCA §42 regarding copyright in Finland

PLAINTIFF'S RESPONSE TO VALVE'S MOTION TO REFER COPYRIGHT
REGISTRATION QUESTIONS TO THE REGISTER OF COPYRIGHTS AND         Page 1
FOR STAY OF PROCEEDINGS
No. 2:23-cv-01653-RSM

> "42. There is no permission to confiscate copyright from the author himself…"
> (Original Finnish: "Tekijänoikeutta ei ole lupa ulosmitata tekijältä itseltään eikä siltä…")
> https://www.finlex.fi/fi/laki/ajantasa/1961/19610404

Therefore, an attempt to clarify the Iron Sky Chain of Title and to prepare for possible disputes with Myriad Pictures (A US film sales agent) is the actual reason for Baylis' US Copyright Registration.

Valve were requested to take down infringing content but refused to do so. There is no need for Baylis to register copyright at the US Copyright Office ("USCO") in this case because foreign works do not need to be registered to instigate legal action in the United States under U.S.C 17 §411(a) which, only mentions "United States work" in the plain language of the statute.  USCO was given correct information and there is no misrepresentation from Baylis. Valve's Referral Motion should be denied but Baylis would gladly assist the USCO further if required to do so in order to provide clarity.

## 2. FACTUAL BACKGROUND

Plaintiff "Baylis" is a joint author and lawful copyright owner of the amateur film production Iron Sky which was first published in Germany 2012. (¶¶ 3-4, 33-35, 89-91.)[1] Baylis was receiving just unemployment benefits for a large part of the of the production (¶¶ 82-83,) and thus maintains copyright ownership to his work. (¶¶ 41-42, 85.)

Baylis had previously attempted to resolve licensing issues with Producers under the premise of a "salary review" but was sacked instead, and this led to Baylis v Troll VFX Case no. L 15/32468  in Finland. (¶ 102.) Whereby, Baylis proved his authorship of Iron Sky and competence as an animator to Judge Oskar Kulmala. (¶ 129.)

---

[1] "¶" citations are to Second Amended Complaint ("SAC") Dkt. #25 unless otherwise indicated.

PLAINTIFF'S RESPONSE TO VALVE'S MOTION TO REFER COPYRIGHT REGISTRATION QUESTIONS TO THE REGISTER OF COPYRIGHTS AND FOR STAY OF PROCEEDINGS
No. 2:23-cv-01653-RSM

Page 2

Valve have infringed Baylis' exclusive rights under USC 17 §106. Dkt. #25 at Pages11-33.

3. **ARGUMENT**

1. **Baylis is a joint author of Iron Sky and owns a copyright under U.S.C 17 §106.**

Baylis has claimed he is a copyright owner to his work related to Iron Sky due to him being an actual joint author and his name being on the work. (¶¶ 82-92.) Whilst there is no need to register a foreign work at USCO, Baylis has done so. (¶ 4.)

U.S.C 17 §101 defines motion pictures as, "audiovisual works consisting of a series of related images which, when shown in succession, impart an impression of motion..." An animator such as Baylis on a film like Iron Sky where the visual aspects of the film are important, requires him to do just that. In Aalmuhammed v. Lee, 202 F.3d 1227, 1232 (9th Cir. 2000) Judges accepted the plausibility of an animator as a joint author of a film, "Where the visual aspect of the movie is especially important, the chief cinematographer might be regarded as the author. And for, say, a Disney animated movie like "The Jungle Book," it might perhaps be the animators..." Aalmuhammed v. Lee, 202 F.3d 1227, 1232 (9th Cir. 2000).

2. **MAO302/18 is specific ONLY to limited economic rights under section 2 of FCA and there was NO DISPUTE regarding Moral Rights (right to claim authorship) under Section 3 of the Finnish copyright Act.**

Valve have supplied a "Translation" of MAO302/18 (Harrison Decl., Ex. D.) and at paragraph 86 of that Translation it clearly states,

"86. According to Section 27(1) of the Copyright Act, copyright may, subject to the restrictions set out in Section 3, be transferred in whole or in part. **No dispute has arisen concerning the so-called moral rights provided for in Article 3 of the Copyright Act**. In view of the nature of the case and the grounds put forward in support of the claim, the **claim must be considered to concern economic rights within the meaning of Article 2 of the Copyright Act**." (Harrison Decl., Ex. D, at Valve_014, ¶86)

Additionally, in Harrison Decl., Ex. D, at Valve _017, "Summary of Judgment", **there is no mention of Section 1 of the FCA which is the whole scope of the FCA.** Neither is there mention of Section 3 (Moral rights), Section 4 (Adaptation rights) or many other Sections of the Copyright Act including section 7 of the copyright act **"The presumption of authorship rule"**

> **Article 7**
> **The person whose name or generally-known pseudonym or signature is stated in the usual manner on the copies of a work, or when the work is made available to the public, shall be deemed to be the author, in the absence of proof to the contrary. (https://wipolex-res.wipo.int/edocs/lexdocs/laws/en/fi/fi001en.pdf)**

This rule is particularly significant as there is no mention of the "presumption of authorship rule" in MAO302/18 (section 7 of the FCA) which is also a rule under Berne Convention Article 15.

> (1) In order that the author of a literary or artistic work protected by this Convention shall, in the absence of proof to the contrary, be regarded as such, and consequently be entitled to institute infringement proceedings in the countries of the Union, it shall be sufficient for his name to appear on the work in the usual manner.

This omission by MAO demonstrates a procedural error in MAO302/18 because the burden of proof was reversed so that the plaintiff's were unnecessarily required to prove their authorship when no such dispute existed. That is to say the Producers who were the defendants in the case, didn't dispute that Baylis and others had created the work so there was no "proof to the contrary" even required. See, Baylis Decl., Ex. A.

> "As the defendants, we argued that while they did work on the film, they were working on a work-for-hire basis, under a signed contract" (Iron Sky Director Timo Vuorensola)

**The burden of proof should have been on the Producers to demonstrate how they had contractually acquired economic rights from Baylis and other plaintiffs.** This indicates a procedural error by MAO because they have "cherry picked" a sentence from the Finnish Code of Judicial Procedure ("FCJP") to justify the reversal of the burden of proof to plaintiffs in MAO302/18 because at, Harrison Decl., Ex. D, at Valve_010, ¶27. MAO states that,

> "27. Under Chapter 17, Section 2 of the Code of Procedure, the staff members have the burden of proving that the vessels and other alleged works identified in Claim 2 are works within the meaning of copyright law and that the staff members are to be regarded as their authors."

Therefore, MAO mischaracterizes chapter 17 of FCJP by omitting the part referring to other laws (sources of law, Berne Convention article 15 and section 7 of FCA)

> "A party has the right to present the evidence that he or she wants to the court investigating the matter and comment on each piece of evidence presented in court **unless otherwise provided by law.**" [Emphasis added] (chapter 17 of FCJP) https://www.finlex.fi/en/laki/kaannokset/1734/en17340004.pdf

This is significant in Finland because there are **other provisions in copyright law** such as the "presumption of authorship rule", otherwise every author in Finland and indeed the Berne Union would need a court or other formality to confirm authorship other than their signature or name on the work (FAC §7 and Berne Con. Article 15) before being able to claim protection of their work. There is a **"no formalities rule"** in Berne Convention Article 5 (2) **"The enjoyment and the exercise of these rights shall not be subject to any formality."** Also, the Producers were not disputing that Baylis and other Plaintiffs created the work. This is a serious error by MAO because there was no genuine Moral rights dispute. For instance, the script writer Johanna Sinisalo has never had to prove in any court that she wrote the script to be regarded as an author of the script which, was apparently adapted by Michael Kalesniko for the final script. Sinisalo had nothing to do with any 3D animations of the film. She is not an animator and cannot claim authorship of such works nor would she do so as she admits that Iron Sky is not a Johanna Sinisalo movie. See Harrison Decl., Ex. B. Email to Baylis from Johanna Sinisalo #Dkt. 44-2 page17 in which she states,

> "I've never been the single author of the script...there never was an intention to create a Johanna Sinisalo movie...and when there is a team working on anything, it also becomes very difficult to name any "original" creator of a certain detail or idea, so it would be pretty futile to discuss who's story Iron Sky "actually was".

Furthermore, even though the same documents as in this case SAC, Dkt. #25 at Pages 34 and 35 were mentioned in MAO302/18, MAO ignored such evidence and the only contract they looked at was that of plaintiff A, see, Harrison Decl., Ex. D, at Valve_014, ¶87, which

PLAINTIFF'S RESPONSE TO VALVE'S MOTION TO REFER COPYRIGHT REGISTRATION QUESTIONS TO THE REGISTER OF COPYRIGHTS AND FOR STAY OF PROCEEDINGS
No. 2:23-cv-01653-RSM

Page 5

was 3D artist Seb Barquin ("Barquin") who is a UK citizen.

> "87. ... if A must be considered as the author of the Japanese agents' vessel Consequently, claim 3 only needs to be assessed in relation to the work mentioned by A."

MAO seemed happy to confirm that the Japanese Ship Barquin created was subject to copyright because he had created it himself "independently" but there was also evidence of Bayils' independence as an author too as well as being the modeling supervisor.

For example See Harrison Decl., Ex. D, at Valve_012, ¶¶55-57.

> "55. E has told the witness that he acted as a "supervisor" when B animated Götterdämmerung and that **B acted as a modeling supervisor**. According to him, Mr. B had a strong vision of how to do the vessel within the schedule, and Mr. B acted independently and did a good job."

> "56... the modeling of the vessel was done in a detailed and imaginative way. There are no image plans or other useful references available. Close-ups of the ship were also shown in the film, which meant that work had to be done to fine-tune the details. According to this documentary evidence, B assembled the rear part of the vessel independently on the basis of his own solutions and did not even discuss the structures in question with JL."

> "57... B and JL had different visions of the vessel, which ended up looking different from the original design... The design was not yet complete and, as the ship would not otherwise have been finished on time,...B took the lead here and told the other modelers what to do".

MAO side stepped issues such as, having to examine document agreements such as those which stated that no Employment or Service agreement existed between Baylis and the Producers for 6 months of the production (SAC, Dkt. #25 at Pages 34 and 35), and that large parts of the Iron Sky 3D animation work could not have legally been transfered to the Producers. In other respects, MAO302/18 suffers from a "Grave procedural error" in that it's authorship analysis is based on Finnish law rather than German law where the film was first published under Berne Convention article 5 (4) (a), SAC, Dkt. #25 at Pages 8 and 9,

    3.    **Incoherence of MAO302/18 and lack of comity with regards to Finland's own copyright laws as well as International copyright law.**

MAO302/18 ruling is incoherent, contains multiple errors and is inconclusive regards

to authorship as it is based on the wrong "country of origin" laws under Berne Convention article 5(4)(a).

> **"(4) The country of origin shall be considered to be**
> **(a) in the case of works first published in a country of the Union, that country"**
> https://www.law.cornell.edu/treaties/berne/5.html

Also, the Director and Producers were in Germany and Australia when Baylis created significant 3D models and scenes for the production in Finland, SAC Dkt. #25 Page 38, and this demonstrates that Baylis has clearly worked independent of the film's Director and Producers for a large part of the production. Unlike United States "work for hire laws" EU laws don't allow Producers to be first authors of works and they must collect rights by contract from the actual creators of film. Whereas, animators are genuinely authors of films as mentioned by Finnish Researcher Marjut Salokannel in her book *Ownership of Rights in Audiovisual Productions: A Comparative Study*

"The persons who participate in the film in a financial or practical manner have no rights in the film that are based directly on the author's rights legislation. These persons may acquire these rights contractually from the authors and other contributors. The most important person belonging to this group is the film producer."
(Ownership of Rights in Audiovisual Productions: A Comparative Study.  Marjut Salokannel. 1997.  P.148-9)
"When judged in light of preparatory documents of Nordic laws, the persons who should be regarded as the joint authors of audiovisual works seem to be basically the same as in other civil law countries. There is a general agreement that the film director and the writers of the screenplay and dialogue are to be considered as its authors. The person who makes the audiovisual adaptation of the underlying literary work also enjoys rights in the audiovisual work as those as a whole. **Today there is also no doubt that the graphic designer is regarded as one of the authors of an animated audiovisual work.** [Emphasis added]
(Ownership of Rights in Audiovisual Productions: A Comparative Study.  Marjut Salokannel. 1997.  P.149)

It is incoherent to have a ruling such as MAO302/18, which is based on the wrong countries authorship laws (Should have been German law), where Moral rights under section 3 of the FCA for Plaintiffs in MAO302/18 were not disputed, and then for MAO to

unlawfully disallow the Plaintiff's economic rights under section 2 FCA without demonstrating any contractual transfer to the Producers (other than for the Japanese ship). To put it another way, there is no way for the Producers to obtain ANY copyrights for the Iron Sky animators work contractually if there were no actual rights in existence to collect.

MAO302/18 is similar to the US case Johannsen v. Brown. In that case the artist, Johannsen was the sole owner of copyright despite being a commissioned artist and being supplied with concepts and ideas from the commissioning party.

"[a] person who merely describes to an author what the commissioned work should . . . look like is not a joint author for purposes of the Copyright Act." Id. at 1087. Kippel's conception of the idea behind "American Relix" is insufficient, as a matter of law, to make him a joint author of the work. See 17 U.S.C. § 102(b) (copyright protection for an original work of authorship does not extend to any idea or concept "regardless of the form in which it is described, explained, illustrated, or embodied in such work").
Johannsen v. Brown, 797 F. Supp. 835, 842 (D. Or. 1992)

Furthermore, Baylis won the Counter Claim (MAO302/18 case number 2017/701 because **the Producers failed to prove any copyright ownerships via contractual agreements themselves** (apart from the Japanese Ship!) Producers have no standing to seek "remedies and protections" under copyright law to protect the animated parts of the film within Iron Sky (nor to sell any of Baylis' copyright to others). This is alluded to in Harrison Decl., Ex. D, at Valve_016, ¶108.

"108... the production companies have not argued or presented any evidence to establish who, if anyone, has acquired the copyright in the vessel and whether the copyright in the vessel has been exclusively transferred to the production companies, or any other arguments as to how the conduct of B and D has infringed their copyright. The Market Court considers that this infringement of copyright has not been proven... Consequently, the conditions for the imposition of the requested prohibition and cessation of the infringement are not met, and claim 4 must be rejected."

It is this failure to demonstrate a valid Chain of Title by the Producers that caused their own downfall because they have no standing to seek "remedies and protections" without valid licenses from Baylis' and others to make adaptations of Iron Sky. See U.S.C 17§103(a),

"(a) ...does not extend to any part of the work in which such material has been used unlawfully."

Also see, Anderson v. Stallone, 11 U.S.P.Q.2d 1161 (C.D. Cal. 1989), The Tolkien Trust v. Demetrious Polychron (2:23-cv-04300) C.D. Cal. These are two cases where unauthorised derivative works could not be protected by copyright under U.S.C 17§103(a).

**4. Baylis has not made misrepresentations to the US Copyright Office about his lawfully acquired copyrights to Iron Sky.**

Valve are claiming that Baylis is misrepresenting that he holds a valid copyright for his own work. This is false because Baylis has original files with his name embedded within the metadata of many of the files (¶¶ 86-92.). Baylis has been an author of many works for Iron Sky (¶¶ 33-35.) Baylis has already shown considerable evidence of authorship and proximity to his Iron Sky work throughout his SAC, Dkt. #25, Pages 9-11, 13-38.

Iron Sky Producers have never acquired any adaptations rights from Baylis and no valid written agreement exists with the word "adaptation rights" in it, let alone the words "Iron sky Invasion" or "video games" or even the word "Valve" (¶ ¶ 33-35, 44, 58.) The Producers have never fully "owned" copyrights from Baylis' Iron Sky work. This has been demonstrated on it's own by Baylis' documentation at the time under which *he created significant parts of the production whilst being unemployed* (¶¶ 82-85.)

During Baylis' USCO Registration process he was contacted via email by Saskia Florence, Supervisory Registration Specialist, Motion Picture Team, U.S. Copyright Office wherein, Ms Florence specifically informed him that **an application should be based filed according to the U.S. Copyright law and that she was well aware of differences of copyright law in other countries.** The main issue addressed was regarding "work for hire contracts" of which, none exist for Producers regarding Baylis' and other Iron Sky 3D artist's

and animators work, which is why they are joint authors of the film as a "unitary whole" under U.S.C 17 §201(a).

> "Usually several people are involved in making a motion picture on videotape or film. These may include the producer, director, writer, camera operator, editor, and others. These individuals may also be the authors of the work. After looking at your application, it appears that you've named about 10 individuals on your application as authors, with the work made for hire answered "yes" or "no". **Please note that an application for copyright registration must be filed according to the U.S. Copyright law. I understand that in other countries, copyright law** and work made for hire **can be quite different**." [Emphasis added] (Baylis Decl., Ex. B at Baylis_1,(Saskia Florence, Supervisory Registration Specialist, Performing Arts Division, Motion Picture Team U.S. Copyright Office)) (Copyright Office <cop-ad@loc.gov> 26 Sept 2023, 22:36)

In regards to "res judicata effect to foreign judgments on the basis of comity", A US court should give credence to Judge Kulmala in Baylis v Troll VFX L 15/32468 as this is where Baylis was confirmed to be author of his Iron Sky works after demonstrating the work to Judge Kulmala, and his name "trev" appears in the Metadata of the files (Baylis Decl., Ex. C. at Baylis_11(Note: Machine Translated for practicality) which fulfills the requirement of the "presumption of authorship rule" under international law and FCA (section 7), German Copyright Act (Section 10) and Berne Convention rules Article 15. Therefore, if Baylis were to provide more information to the USCO it would be that he has had his authorship confirmed by Judge Oskar Kulmala in Baylis v Troll VFX Case L 15/32468 and that MAO302/18 did not contain a dispute about Moral rights under section 3 of FCA because the Producers themselves were in agreement that Baylis created the work but also the Producers were unable to provide proof of copyright ownership themselves to the his 3D animation works.

5. **US law is not obligated to recognize foreign rulings.**

"It is well-established that United States courts are not obligated to recognize judgments rendered by a foreign state, but may choose to give res judicata effect to foreign judgments on the basis of comity." Films by Jove, Inc. v. Berov,250 F. Supp. 2d 156,

1   176 (E.D.N.Y. 2003) (quoting Gordon Breach Sci. Publishers S.A. v. American Inst. of

2   Physics,905 F.Supp. 169, 178-79 (S.D.N.Y. 1995)). Comity "is the recognition which one

3   nation allows within its territory to the legislative, executive, or judicial acts of another

4   nation, having due regard both to international duty and convenience, and to the rights of its

5   own citizens, or other persons who are under the protection of its laws. Hilton v. Guyot,159

6   U.S. 113, 144 (1895).

7   Belize Telecom Ltd. v. Government of Belize, Case No. 05-20470-CIV-UNGARO-

8   BENAGES, 21 (S.D. Fla. Jun. 6, 2005)

**6.     Damage to Baylis' honor and reputation from false media reports, Petri Gunther's incoherent Kluwer blog article regarding MAO302/18**

Berne Convention, Article 6bis

(1) Independently of the author's economic rights, and even after the transfer of the said rights, **the author shall have the right to claim authorship of the work and to object to any distortion, mutilation or other modification of, or other derogatory action in relation to, the said work, which would be prejudicial to his honor or reputation**. [Emphasis added]

Valve have provided a Translation for the courts and this is the first time such an "official translation" has appeared as previously MAO302/18 was only in Finnish, and Baylis has had to rely on consultations with Finnish Lawyers Petri Eskola and Marcus Lampinen from Helsinki law firm Backström & Co, to comprehend the case as he doesn't read or speak Finnish. Recently Baylis emailed Lawyer Petri Eskola just to confirm with him that MAO302/18 was not a dispute about Moral Rights under section 3 of the FCA.

> "Hi Trev,
> indeed, I can confirm that moral rights were not an issue at all in Market Court proceedings, but only economical rights.
> Petri
> (Baylis Decl., Ex. D. at Baylis_2. Email from Petri Eskola <petri.eskola@backstrom.fi> 08 April 2024)

Regarding Valve's Exhibits, G and H attached to their Declaration of Jonah Harrison ("Harrison Decl."), #DKT. 44, these are misleading because they don't mention that in MAO302/18 **Moral rights were not disputed (see "right to claim authorship" Berne Con. 6bis).** For instance in Harrison Decl., Ex. G, the Hollywood Reporter Journalist was given a misleading translation by the Producers who were not truthful about losing their counterclaim and not being able to seek "remedies and protections" for the work. Baylis at the time was unable to respond to MAO302/18 as he doesn't read Finnish.

Equally, Petri Gunther's Kluwer blog article, Harrison Decl., Ex. H, failed to mention such things, and he has a conflict of interest because he belonged to a firm that represented Iron Sky Producers during the film production. Baylis has a right to object to these things under Berne Con. 6bis as they are **"prejudicial to his honor and reputation".**

Valve appear to rely on Exhibits, G and H to present an erroneous legal theory that animators in Finland who create animation works without employment contracts or valid copyright agreements either have their lawfully acquired copyrights expropriated from them or the work immediately enters the public domain due to the "creativity of [unspecified] others" (Petri Gunther Kluwer blog Harrison Decl., Ex. H). **Such a legal theory inferred by Valve is absurd!**

## 2.      CONCLUSION

Valve's Referral Motion #Dkt. 43 should be denied but Baylis would gladly assist USCO further if required to provide clarity in this case and for Iron Sky Chain of Title and potentially false registrations by Myriad Pictures PAU003749092.

I certify that this memorandum contains 4177 words, in compliance with the Local Civil Rules.

10th April 2024

Trevor Kevin Baylis

*[signature: Trvr Bay]*

Jankanraitti

Tampere 33560, FINLAND

Please note: Plaintiff is dyslexic. Thus written documents such as this may have minor accidental spelling and or grammatical errors. Such things should not be seen as cause to prejudice the author of this document.

PLAINTIFF'S RESPONSE TO VALVE'S MOTION TO REFER COPYRIGHT REGISTRATION QUESTIONS TO THE REGISTER OF COPYRIGHTS AND FOR STAY OF PROCEEDINGS
No. 2:23-cv-01653-RSM

CERTIFICATE OF SERVICE FORM

FOR ELECTRONIC FILINGS

I hereby certify that on 10th April 2024 I electronically filed the foregoing document

with the United States District Court

Western District of Washington at Seattle by using the

CM/ECF system. I certify that the following parties or their counsel of

record are registered as ECF Filers and that they will be served by the

CM/ECF system:

Jeremy E Roller: jroller@aretelaw.com,

jfischer@aretelaw.com,

kgreenberg@aretelaw.com


Jonah O. Harrison: jharrison@aretelaw.com,

jfischer@aretelaw.com,

kgreenberg@aretelaw.com


Dated: 10th April 2024

*[signature: Trevor Baylis]*

Trevor Kevin Baylis

Jankanraitti

Tampere 33560, FINLAND

PLAINTIFF'S RESPONSE TO VALVE'S MOTION TO REFER COPYRIGHT
REGISTRATION QUESTIONS TO THE REGISTER OF COPYRIGHTS AND
FOR STAY OF PROCEEDINGS
No. 2:23-cv-01653-RSM