The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| TREVOR KEVIN BAYLIS, | Case No. 2:23-cv-01653-RSM |
| Plaintiff, *(pro se)*. | **MOTION TO STRIKE DEFENDANT VALVE CORPORATION'S AFFIRMATIVE DEFENSES** |
| v. | |
| VALVE CORPORATION, | NOTE ON MOTION CALENDAR: May 3, 2024 |
| Defendant. | |

1. **INTRODUCTION**

**This case turns on a single question: "Do Valve Corporation have permission to distribute Plaintiff's ("Baylis") copyrighted works worldwide for their own monetary gain?" The answer is "NO!"**

Under Fed. R. Civ. P. 12((f) Motion to Strike. This court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Defendants Valve Corporation ("Valve") have asserted in their, Answer to Baylis' SAC #Dkt. 42 ("Answer") seventeen defenses claiming them to be "Affirmative Defenses". This Court should STRIKE Valve's "Defenses" as they are, insufficient, impertinent, redundant, and are unlikely to succeed at trial. Most notably absent from any of these defenses is any claim that Valve has ANY written signed license via ANY Chain of Title from Baylis to display or distribute adaptations of his works in video games such as Iron Sky Invasion. Valve have taken a "Kitchen sink" approach when answering Baylis SAC #Dkt. 25 with defenses that are vague conclusory statements or boilerplate answers, and are devoid of any supporting law or facts.

Baylis has made good faith attempts to confer with Valve and offered to demonstrate original Iron Sky animation files to them (AD_Baylis_Dec., Ex. D. Baylis_2), which have his name in them, and which he has demonstrated to judge Oskar Kulmala in a previous case, Baylis v Troll VFX where such works were pertinent, and where Judge Kulmala was satisfied that Baylis is indeed the author of such works. However, Valve have made it absolutely clear to Baylis verbally in the last meet and confer discussion on 4th April 2024 that they are not interested in such things nor will they provide any adequate answers to Request for Admission Baylis has filed (#Dkts. 27, 28 and 31) which they have also inadequately replied to with more or less boilerplate responses. See, AD_Baylis_Dec., Ex. A, B and C. Baylis has also provided Valve with information as to where they can obtain the Iron Sky Chain of Title (AD_Baylis_Dec., Ex. D.

Baylis_4 and Baylis_5) and see for themselves that no "adaptation rights" have ever been granted by Baylis (or other Iron Sky 3D artists) to make the game Iron Sky Invasion or any other games. As mentioned, this case turns on a single question: "Do Valve Corporation have permission to distribute Plaintiff's ("Baylis") copyrighted works worldwide for their own monetary gain?" Of which the answer is "NO!"

Generally, these types of copyright dispute cases mention written transfer of copyright agreements, for instance see Valve Corp. v. Sierra Entertainment Inc. Which has similar themes to this case regarding the legality of distributing games without alleged adequate permissions.

> "Valve alleges that Sierra/Vivendi distributed Valve games to cyber-cafés in the United States and abroad. First Am. Compl., docket no. 40, pg. 3, ¶ 11. ...Valve contends Sierra/Vivendi exceeded the scope of its license and infringed Valve's copyrights by distributing Valve games to cyber-cafés. First Am. Compl., docket no. 40, pg. 3, ¶ 11."
> Valve Corp. v. Sierra Entertainment Inc., 431 F. Supp. 2d 1091, 1094 (W.D. Wash. 2004)

Therefore, **Valve objectively have no valid defense whatsoever for their infringing conduct and they are wasting the courts time and resources due to their inability to adequately explain how they came to be distributors of Baylis' works without any valid written and signed copyright transfer agreement from him via any Chain of Title.** Valve cannot be authors of Iron Sky and they certainly do not have any valid copyright registration at the US Copyright Office to claim any copyrights themselves as authors of the works. Nor can they have any standing themselves to seek "remedies and protections" for the work. So why are they displaying and distributing Baylis' works without any kind of written signed agreement or conveyance of copyrights from him?

---

[1] "¶" citations are to Second Amended Complaint ("SAC") Dkt. #25 unless otherwise indicated.

MOTION TO STRIKE DEFENDANT VALVE CORPORATION'S AFFIRMATIVE DEFENSES
No. 2:23-cv-01653-RSM

Page 2

## 2. FACTUAL BACKGROUND

Plaintiff "Baylis" is a joint author and lawful copyright owner of the amateur film production Iron Sky which was first published in Germany 2012. (¶¶ 3-4, 33-35, 89-91.)[1] Baylis was receiving just unemployment benefits for a large part of the production (¶¶ 82-83,) and thus maintains copyright ownership to his work. (¶¶ 41-42, 85.)

Baylis had previously attempted to resolve licensing issues with Iron Sky Producers under the premise of a "salary review" but was sacked from his job at the time instead, and this led to Baylis v Troll VFX Case no. L 15/32468 in Finland. (¶ 102.) Whereby, Baylis proved his authorship of Iron Sky and competence as an animator to Judge Oskar Kulmala. (¶ 129.) Valve have infringed Baylis' exclusive rights under USC 17 §106. SAC Dkt. #25 at Pages11-33.  Valve have answered Baylis' SAC Dkt. #25 . Answer to Complaint #Dkt. 42)  ("Answer") on 3rd April 2024 wherein the they provide Seventeen "affirmative and other defenses" from pages 15 - 17 of their Answer, which are listed for convenience below followed by Baylis' replies under FRCP Rule 8(c) whereby a party must affirmatively state any avoidance. These defenses basically fall into one of two categories: (1) boilerplate affirmative defenses, or (2) "negative," i.e., non-affirmative defenses that deny the well pled allegations. These defenses are inadequate and insufficient to succeed at trial.

## 3. ARGUMENT

Valve are fully aware of the requirement as regards to their own employees and freelancers, to obtain copyright from such "natural persons" (authors) by written agreements for Valve's own audio visual productions and games, and to obtain copyright registrations for those works which, often include the names of authors of such work. (Examples below).

MOTION TO STRIKE DEFENDANT VALVE CORPORATION'S AFFIRMATIVE DEFENSES
No. 2:23-cv-01653-RSM

Page 3

**Examples of Valve's own copyright registrations including author's names,**

Registration Number / Date:  VA0002259920 / 2021-06-24
Copyright Claimant:  Valve Corporation, Transfer: By written agreement. Address: 10400 NE 4th Street, Suite 1400, Bellevue, WA, 98004.
Nation of First Publication:  United States
Authorship on Application:  Joe Slucher (author of anonymous contribution); Domicile: United States. Authorship: 2-D artwork

Registration Number / Date:  VAu001328489 / 2018-07-30
Authorship on Application:  Forrest Imel (author of anonymous contribution); Domicile: United States. Authorship: 2-D artwork.

In the United States creative employees often (but not always) sign "work for hire" agreements under U.S.C 17§201(b). Absent such valid "work for hire" agreements then the author of such works would maintain the copyright under U.S.C 17§201(a).

An author under U.S.C 17§201(a) may keep or dispose of any or all copyrights however they want under U.S.C 17§201(d) which may be transferred in whole or in part by any means of conveyance or by operation of law U.S.C 17§201(d)(1) and which any of the exclusive rights specified by section U.S.C 17§106 may be subdivided for separate transfer.

Then the owner of any particular exclusive right legally transfered to them (licensee) under an "exclusive license" (as opposed to non-exclusive licenses) is entitled, to the extent of that right, to all of the protection and remedies afforded to the author. However, an "exclusive license" is NOT a "full assignment of ALL copyrights" and does not afford the licensee "remedies and protections" to further "sub-license" such an exclusive license without express written consent from the copyright owner. See Gardner v. Nike, Inc., 279 F.3d 774, Holding that a sub-licensee of a copyright lacked standing to sue under the 1976 Act on the ground that the pre-1976 law so prohibited. Furthermore, under U.S.C 17§201(e) it states,

> "When an individual author's ownership of a copyright, or of any of the exclusive rights under a copyright, has not previously been transferred voluntarily by that individual author, no action by any governmental body or other official or organization purporting to seize, expropriate, transfer, or exercise rights of ownership

with respect to the copyright, or any of the exclusive rights under a copyright, shall be given effect under this title, except as provided under title 11."

Given the above, Valve must be aware that they have no valid defense to Baylis' claims of infringement of his copyrights since Baylis has never signed full copyrights away to anyone. Not even to Iron Sky film Producers who failed themselves to demonstrate copyright ownership to Iron Sky in previous litigation in Finland due to VFX vendor Samuli Torssonen ("Torssonen") of Energia Productions Oy failing to adequately obtain copyrights from many of the animators who worked on Iron Sky, especially as Torssonen utilised a loophole  in Finnish employment law to obtain professional level artist such as Baylis and others as "trainees." See SAC #Dkt25. Pages 34 and 35, which is actually illegal in Finland as it is arguably a type of human trafficking. For instance, Builders, Berry pickers, Restaurant workers etc. would be considered to be victims of human trafficking under such terms as 'working for free for six months in order to potentially secure future employment' especially if they also had their valuable property expropriated from them!

Valve have the corporate acumen and legal expertise available to them to obtain and review Iron Sky Chain of Title documents to see for themselves that, no written and signed "exclusive adaptation rights" agreements exist from Baylis (or other Iron Sky animation artists) to make the Game Iron Sky Invasion, and that the game/s themselves constitutes a violation of Baylis' exclusive adaptation rights!

Furthermore, there is no excuse from Valve that they may be subject to litigation from the developers of Iron Sky Invasion, Topware Entertainment ("Topware") in some way because Topware can have no standing to seek "remedies and protections" in relation to Iron Sky Invasion in any case as it is an unauthorized derivative work itself due to no permission from Baylis granted to use his works in that or any other similar games, and such games can't be protected by copyright "in any part". See U.S.C 17§103(a),

1  "(a) The subject matter of copyright as specified by section 102 includes
2  compilations and derivative works, does not extend to any part of the work in
   which such material has been used unlawfully."

3  Also see, Anderson v. Stallone, 11 U.S.P.Q.2d 1161 (C.D. Cal. 1989), The Tolkien

4  Trust v. Demetrious Polychron (2:23-cv-04300) C.D. Cal. These are two cases where

5  unauthorised derivative works could not be protected by copyright under U.S.C 17§103(a).

6  Therefore, given the forgoing Valve has no valid excuse or defense to keep on infringing

7  Baylis' work for their own monetary gain.

8  **4.  VALVE'S DEFENSES SHOULD BE STRICKEN**

9  In Wesch v. Yodlee, Inc. Magistrate Judge Sallie Kim granted in full plaintiffs' motion

10 to strike nearly all the defendant's 28 affirmative defenses, holding that several had failed

11 to satisfy the pleading standards set forth in Bell Atlantic Corp. v. Twombly, 550 U.S. 544

12 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), and others not even valid affirmative

13 defenses. As Judge Kim noted, "An affirmative defense, under the meaning of Federal Rule

14 of Civil Procedure 8(c), is a defense that does not negate the elements of the plaintiff's claim,

15 but instead precludes liability even if all of the elements of the plaintiff's claim are proven."

16 Barnes v. AT & T Pension Ben. Plan-Nonbargained Program, 718 F. Supp. 2d 1167, 1173-

17 74 (N.D. Cal. 2010) (citation omitted). Instead, an affirmative defense is one on which the

18 defendant bears the burden of proof. Kanne v. Connecticut General Life Ins. Co., 867 F.2d

19 489, 492 n. 4 (9th Cir.1988). See Order on Motion to Strike Affirmative Defenses (Order),

20 Case No. 3:20-cv-05991-SK, ECF No. 137 (N.D. Cal. Dec. 6, 2021).

21 Valve has failed to allege a plausible factual basis for any of their defenses, relying

22 instead on conclusory boilerplate language that, on its face, fails to meet the pleading

23 standard set forth in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal,

24 556 U.S. 662 (2009). Also See, Hernandez v. Dutch Goose, Inc., No. 13-cv-03537, 2013 WL

1   5781476, at *4 (N.D. Cal. Oct. 25, 2013) (noting the "widespread agreement" in the Northern

2   District of California that Twombly applies to affirmative defenses). Given the foregoing, Valve's

3   defenses should be stricken.

4   **5.    FIRST AND FIFTH DEFENSE**

5   - **"The Second Amended Complaint fails to state a claim upon which relief**

6   **can be granted."**

7   - **"Baylis' claims are barred in whole or in part because he lacks standing and/or**

8   **capacity to bring such claims."**

9   Such Defenses are not actually affirmative defense as mentioned in Hernandez v. Dutch

10  Goose, Inc. "the court STRIKES them WITH PREJUDICE. See Polo, 2013 WL 1797671, at *3

11  ("[L]ack of standing is not a true affirmative defense because [plaintiff] bears the burden of proof on

12  that issue."); Perez, 2012 WL 1029425, at *11 (striking defendant's affirmative defenses of failure

13  to state a claim and lack of standing because they are not affirmative defenses); J & J Sports Prods.,

14  Inc. v. Vizcarra, No. 11-1151 SC, 2011 WL 4501318, at *2 (N.D. Cal. Sept. 27, 2011) ("Because

15  a plaintiff must plead and ultimately prove standing, lack of standing is not an affirmative defense

16  under federal law.") (internal quotation marks and citation omitted); Barnes, 718 F. Supp. 2d at 1174

17  ("Failure to state a claim is not a proper affirmative defense but, rather, asserts a defect in Barnes'

18  prima facie case.") (citations omitted)"

19  Hernandez v. Dutch Goose, Inc., No. C 13-03537 LB, 11 (N.D. Cal. Oct. 25, 2013)

20  **6.    SECOND, THIRD, FOURTH, NINTH, ELEVENTH, TWELFTH,**

21  **THIRTEENTH AND FOURTEENTH DEFENSES**

22  - **"The Second Amended Complaint is subject to dismissal for Baylis'**

23  **failure to join necessary and indispensable parties to this action."**

24  - **"Baylis' claims are barred because Valve has not infringed any of Baylis'**

MOTION TO STRIKE DEFENDANT VALVE CORPORATION'S
AFFIRMATIVE DEFENSES                                           Page 7
No. 2:23-cv-01653-RSM

- **alleged copyrights."**
- **"Baylis' claims may be barred in whole or part because the allegedly infringing material was created independently."**
- **"To the extent Baylis seeks recovery of profits or revenues of Valve arising from its sale or distribution of the video game alleged here, no such profits or revenues were attributable to or can be allocated or apportioned based upon the infringement Baylis alleges."**
- **"Any damage Baylis actually suffered – which Valve denies – was directly and proximately caused and contributed to by acts of parties other than Valve."**
- **"Baylis' claims are barred, in whole or in part, because his alleged copyrights are invalid and/or unenforceable."**
- **"Baylis' claims may be barred, in whole or in part, to the extent the alleged violations of copyright are de minimis or permitted as fair uses."**
- **"Baylis' claims may be barred by the doctrines of res judicata or collateral estoppel."**

These defenses are simply stated in a conclusory manner which fails to satisfy the pleading standards set forth in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Such a discussion about these types of defenses has been dealt with in Hernandez v. Dutch Goose, Inc whereby even if Defendants try to reason that "the fair notice standard is low and does not require a detailed recitation of facts"...."This argument fails under Iqbal and Twombly for reasons explained above. See O'Sullivan, 2012 WL 2912061, at *8 ("Here, AMN asserts that it is not required to allege any specific facts because its affirmative defenses 'readily put Plaintiff on notice of the defenses Defendant might pursue.' That is the not the applicable standard.") (emphasis in original)"

Hernandez v. Dutch Goose, Inc., No. C 13-03537 LB, 10 (N.D. Cal. Oct. 25, 2013)

**7.      SIXTH AND TENTH DEFENSE**

- **"Baylis' claims for damages may be barred in whole or part because he failed to properly register his alleged works."**

- **"Baylis' claims are barred, in whole or in part, by his own fraudulent or inequitable conduct including without limitation in connection with obtaining a United States copyright registration."**

These defenses are irrelevant and false because Baylis' works were first published in Germany on 11th February 2012 which is also the date on Baylis' US Copyright Office registration. The first publication date is important as that sets the clock for the term of copyright. There is no requirement under U.S.C 17 §411 to register foreign works to instigate legal action in the United States against Valve because the statute specifically relates only to United States work wherein it states, "no civil action for infringement of the copyright in any **United States work** shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title" [Emphasis added](U.S.C 17 §411(a)). For Baylis' Iron Sky works there is a "presumption of authorship rule" under Berne Convention Article 15 in such circumstances due to Baylis' name being on the work,

> Berne Con. Article 15(1) "In order that the author of a literary or artistic work protected by this Convention shall, in the absence of proof to the contrary, be regarded as such, and consequently be entitled to institute infringement proceedings in the countries of the Union, it shall be sufficient for his name to appear on the work in the usual manner." (https://www.law.cornell.edu/treaties/berne/15.html)

and in the metadata ("trev" SAC #Dkt. 25 pages 18 and 37) of Iron Sky original animation files that he is the authors of as confirmed by Judge Oskar Kulmala in Baylis v Troll VFX (see #Dkt. 46. Baylis Decl., Ex.C. at Baylis_11). Furthermore, whilst Valve cite some case law in their, Motion To Refer Copyright Registration Questions To The Register Of

1  Copyrights And For Stay Of Proceedings, #Dkt. 43 page 9, That was for United States works
2  as Logan is a US Photographer. Logan v. Meta Platforms, Inc., 636 F. Supp. 3d 1052, 1057,
3  1059-60 (N.D. Cal. 2022) ("Because Logan fails to plead the copyright registration of the
4  photos at issue, the Court dismisses his direct copyright infringement claim.") Therefore, that
5  case citation (Logan v. Meta Platforms) is irrelevant, and thus so is Valve's defense because
6  they rely on that irrelevant case law for their own defense.

7  **8.    SEVENTH AND EIGHT DEFENSES**
8  - **"Baylis' claims for damages may be barred in whole or part to the extent**
9  **Baylis has failed to take reasonable steps to mitigate his alleged damages."**
10 - **"To the extent that any infringement occurred – which Valve denies – any such**
11 **infringement was not intentional or willful."**

12 These defenses are irrelevant and impertinent because Baylis' works are to this day in
13 being displayed and distributed by Valve (e.g. https://store.steampowered.com/app/224900/
14 Iron_Sky_Invasion/(Accessed 15th April 2024)) despite their actual and "red flag" knowledge
15 of infringement due to an absence of "adaptation rights" transfer contracts within Iron Sky
16 Chain of Tile for which they should have performed their own due diligence checks for when
17 reviewing the game Iron Sky Invasion prior to it being displayed and distributed by Valve on
18 their Steam Storefront Platform. Therefore, it is Valve who have failed to mitigate their own
19 damages though their own willful blindness. Valve is not eligible for DMCA Safeharbour
20 provisions under U.S.C 17§512(C) because the DMCA safe harbors shield online service
21 providers from liability only if they do NOT have actual or "red flag" knowledge of
22 infringement, and that they NOT directly benefit from infringement when the provider has
23 control over the infringing activity. See Perfect 10, Inc. v. CCBill LLC, 488 F.3d 1102, 1113
24 (9th Cir. 2007)

1  **9.        FIFTEENTH DEFENSE**

2         ▪ **"Baylis' claims may be barred, in whole or in part, by the applicable**

3         **statute of limitations."**

4    This is just reference to a statue without explanation as to why it may be applicable see in

5  Hernandez v. Dutch, " Without more, the mere citation of some statutory provisions is not enough;

6  there must be some factual allegation showing that those provisions relate to the action. See Miller

7  v. Ghirardelli, No. C12-04936 LB, 2013 WL 3153388, at *4 (N.D. Cal. June 19, 2013)

8  Hernandez v. Dutch Goose, Inc., No. C 13-03537 LB, 9 (N.D. Cal. Oct. 25, 2013)

9  **10.       SIXTEENTH DEFENSE**

10        ▪ **"Baylis' claims may be barred, in whole or in part, by the doctrines of**

11  **laches, waiver, estoppel, ratification, unclean hands and/or other equitable doctrines."**

12        Again in Hernandez v. Dutch  such "boiler plate defenses" are insufficient because there is

13  no notification to Baylis as why or what for, these things being arbitrarily rattled of by Valve, relate

14  to any behaviour by Baylis. "This is not sufficient. See, e.g., CTF Dev. Inc. v. Penta Hospitality,

15  LLC, No. C 09-02429 WHA, 2009 WL 3517617, at *7 (N.D. Cal. Oct. 26, 2009) (striking

16  defendant's affirmative defense of unclean hands because "simply stating that a claim fails

17  due to plaintiff's 'unclean hands' is not sufficient to notify the plaintiff what behavior has

18  allegedly given them 'unclean hands'").

19  Hernandez v. Dutch Goose, Inc., No. C 13-03537 LB, 9 (N.D. Cal. Oct. 25, 2013)

20  **11.       SEVETEENTH DEFENSE**

21        ▪ **"Baylis' claims may be barred, in whole or in part, because the works**

22        **alleged are not copyrightable for lack of originality."**

23  This defense has been address by Baylis in a previous pending Motion To Strike Defendant Valve

24  Corporation's Seventeenth Defense To Plaintiff Trevor Kevin Baylis' Second Amended Complaint

#Dkt 47 and is incorporated by reference here.

**12.    CONCLUSION**

Given the forgoing this court should grant this motion to strike because such defenses from Valve are insufficient, impertinent, redundant and cannot succeed at trial. Valve's First and Fifth defenses should be stricken because they are not affirmative defenses. Valve's Second, Third, Fourth, Ninth, Eleventh, Twelfth, Thirteenth, Fourteenth, Fifteenth and Sixteenth Defenses should be stricken because they are conclusory and fail to satisfy the pleading standards set forth in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Valve's Sixth and Tenth Defense should be stricken because they are irrelevant because Baylis' works are not United States Works and do not require registration to instigate legal action for copyright infringements in the United States. Valve's Seventh and Eighth defenses should be stricken because Valve have not mitigated their own liability and are still infringing on Baylis' work regardless of Baylis trying to resolve licensing issues related to previous cases, and Valve are aware that they don't qualify for DMCA safe-harbour protections in this case under U.S.C 17 §512(C) because they receive a financial benefit from the infringement and can control such things. Valves Seventeenth Defense (#Dkt 47) is incorporated by reference here and should also be stricken as it is insufficient, impertinent, redundant and cannot succeed at trial. This case turns on a single question: "Do Valve Corporation have permission to distribute Baylis' copyrighted works worldwide for their own monetary gain?"
The answer is "NO!"

I certify that this memorandum contains 3670 words, in compliance with the Local Civil Rules.

16th April 2024

Trevor Kevin Baylis

*[signature: Trvr Bay]*

Jankanraitti

Tampere 33560, FINLAND

Please note: Plaintiff is dyslexic. Thus written documents such as this may have minor accidental spelling and or grammatical errors. Such things should not be seen as cause to prejudice the author of this document.

CERTIFICATE OF SERVICE FORM

FOR ELECTRONIC FILINGS

I hereby certify that on 16th April 2024 I electronically filed the foregoing document

with the United States District Court

Western District of Washington at Seattle by using the

CM/ECF system. I certify that the following parties or their counsel of

record are registered as ECF Filers and that they will be served by the

CM/ECF system:

Jeremy E Roller: jroller@aretelaw.com,

jfischer@aretelaw.com,

kgreenberg@aretelaw.com


Jonah O. Harrison: jharrison@aretelaw.com,

jfischer@aretelaw.com,

kgreenberg@aretelaw.com


Dated: 16th April 2024

*Trevor Baylis* (signature)

Trevor Kevin Baylis

Jankanraitti

Tampere 33560, FINLAND

MOTION TO STRIKE DEFENDANT VALVE CORPORATION'S
AFFIRMATIVE DEFENSES
No. 2:23-cv-01653-RSM