The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

TREVOR KEVIN BAYLIS,

                Plaintiff, *(pro se)*.

    v.

VALVE CORPORATION,

              Defendant.

Case No. 2:23-cv-01653-RSM

**MOTION TO STRIKE DEFENDANT VALVE CORPORATION'S AFFIRMATIVE AND OTHER DEFENSES**

NOTE ON MOTION CALENDAR: May 10, 2024

MOTION TO STRIKE DEFENDANT VALVE CORPORATION'S
AFFIRMATIVE AND OTHER DEFENSES
No. 2:23-cv-01653-RSM

1.      **INTRODUCTION**

    **This case turns on a single question: "Do Valve Corporation have permission to distribute Plaintiff's ("Baylis") copyrighted works worldwide for their own monetary gain?" The answer is "NO!"**

    Under Fed. R. Civ. P. 12((f) Motion to Strike. This court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Defendants Valve Corporation ("Valve") have asserted in their, First Amended Answer to Baylis' SAC #Dkt. 54 ("Answer") seventeen defenses some claiming to be "Affirmative Defenses". This Court should STRIKE Valve's "Defenses" as they are, insufficient, impertinent, redundant, and are unlikely to succeed at trial. Most notably absent from any of these defenses is any claim that Valve has ANY written signed license via ANY Chain of Title from Baylis to display or distribute adaptations of his works in video games such as Iron Sky Invasion. Valve have taken a "Kitchen sink" approach when answering Baylis SAC #Dkt. 25 with defenses that are vague conclusory statements or boilerplate answers, and are devoid of any supporting law or genuine facts.

    Baylis has made good faith attempts to confer with Valve and offered to demonstrate original Iron Sky animation files to them (AD_Baylis_Dec., Ex. F. Baylis_2), which have his name in them, and which he has demonstrated to judge Oskar Kulmala in a previous case, Baylis v Troll VFX where such works were pertinent, and where Judge Kulmala was satisfied that Baylis is indeed the author of such works. However, Valve have made it absolutely clear to Baylis verbally in the last meet and confer discussion on 4th April 2024 that they are not interested in such things nor will they provide any adequate answers to Request for Admission Baylis has filed (#Dkts. 27, 28, 31, 37 and 38) which they have also inadequately replied to with more or less boilerplate responses. See, AD_Baylis_Dec., Ex. A, B, C, D and E. Baylis has also provided Valve with information as to where they can obtain the Iron Sky Chain of Title (AD_Baylis_Dec., Ex. F.

1    Baylis_4 and Baylis_5) and see for themselves that no "adaptation rights" have ever been granted

2    by Baylis (or other Iron Sky 3D artists) to make the game Iron Sky Invasion or any other games.

3          It has also become clear from Valve's denials in, AD_Baylis_Dec., Ex. E, whereby

4    Baylis requests admissions from Valve that selected images are the type of works that

5    any reasonable person would consider copyrightable works, that Valve are attempting to

6    engage in the expropriation of Baylis' works for their own monetary gain, and that Valve's

7    defenses are by design based on a foreign nation's (Finland) **unlawful expropriation**

8    **attempts of Baylis' lawfully acquired valuable property (Iron sky Copyrights)** and that

9    Valve's are attempting to coerce a Judge in this case, The Honorable Ricardo S. Martinez,

10   to the effect that he should also be compelled to do the same, so that Valve can continue to

11   monetise Baylis' expropriated property. That is, to judicially expropriate valuable property

12   rights for Valve's own benefit, from a British citizen which is unconstitutional under the

13   United States Fifth Amendment (deprivation of property without due compensation),

14   and also unlawful under U.S.C. 17§201(e) non-expropriation of copyright rules. This

15   unconstitutional and unlawful action by Valve is further exemplified by Valve's attempts

16   to coerce the United States Copyright Office into canceling Baylis' Copyright registration.

17   See #Dkts 43, 44, 44-1 and 52, based on Valve's own misleading interpretation of litigation

18   that occurred in Finland previously, and obfuscation of the fact that Iron Sky was published

19   in Germany **with the consent of all authors (**Baylis SAC #Dkt. 25 pages, 8-9 and 11) under

20   Berne Convention "country of origin" rules see, Berne Convention Article 3 *"(3) The*

21   *expression "published works" means works published with the consent of their authors."*

22   And Article 5(4) *"The country of origin shall be considered to be (a) in the case of works*

23   *first published in a country of the Union, that country"*. No one involved with Iron Sky

24   disputes this salient fact that Germany was the country of "first publication" as we were

MOTION TO STRIKE DEFENDANT VALVE CORPORATION'S
AFFIRMATIVE AND OTHER DEFENSES                                                    Page 2
No. 2:23-cv-01653-RSM

on the stage in Berlin, Germany on February 11th 2012 at the time the film Iron Sky was

first published (Baylis SAC #Dkt. 25 page 11), and **Valve are NOT authors of Iron Sky and**

**have no say whatsoever as to which "origin country" laws apply to authorship rights**

**related to Iron Sky as they cannot give any authorship consent for first publication**

**under Berne Convention rules.**

 Furthermore, in general these types of copyright dispute cases mention written

transfer of copyright agreements, for instance see Valve Corp. v. Sierra Entertainment Inc.

Which has similar themes to this case regarding the legality of distributing games without

alleged adequate permissions.

> "Valve alleges that Sierra/Vivendi distributed Valve games to cyber-cafés in the
> United States and abroad. First Am. Compl., docket no. 40, pg. 3, ¶ 11. ...Valve
> contends Sierra/Vivendi exceeded the scope of its license and infringed Valve's
> copyrights by distributing Valve games to cyber-cafés. First Am. Compl., docket no.
> 40, pg. 3, ¶ 11."
> Valve Corp. v. Sierra Entertainment Inc., 431 F. Supp. 2d 1091, 1094 (W.D. Wash. 2004)

 Therefore, **Valve objectively have no valid defense whatsoever for their infringing**

**conduct and they are wasting the courts time and resources due to their inability to**

**adequately explain how they came to be distributors of Baylis' works without any valid**

**written and signed copyright transfer agreement from him via any Chain of Title.** Valve

cannot be authors of Iron Sky and they certainly do not have any valid copyright registration

at the US Copyright Office to claim any copyrights themselves as authors of the works. Nor

can they have any standing themselves to seek "remedies and protections" for the work. So

why are they displaying and distributing Baylis' works without any kind of written signed

agreement or conveyance of copyrights from him? Why are they engaging in unlawful

---

[1] "¶" citations are to Second Amended Complaint ("SAC") Dkt. #25 unless otherwise indicated.

expropriation of Baylis' valuable property rights? Why are they coercing this Court and the United States Copyright Office to add weight to their unlawful expropriation of Baylis' valuable property rights? The answer to these questions is, because they benefit financially from such expropriation of Baylis' valuable property rights which is their obvious motivation.

## 2.    FACTUAL BACKGROUND

Plaintiff "Baylis" is a joint author and lawful copyright owner of the amateur film production Iron Sky which was first published in Germany 2012. (¶¶ 3-4, 33-35, 89-91.)[1] Baylis was receiving just unemployment benefits for a large part of the production (¶¶ 82-83,) and thus maintains copyright ownership to his work. (¶¶ 41-42, 85.)

Baylis had previously attempted to resolve licensing issues with Iron Sky Producers under the premise of a "salary review" but was sacked from his job at the time instead, and this led to Baylis v Troll VFX Case no. L 15/32468  in Finland. (¶ 102.) Whereby, Baylis proved his authorship of Iron Sky and competence as an animator to Judge Oskar Kulmala. (¶ 129.) Valve have infringed Baylis' exclusive rights under USC 17 §106. SAC Dkt. #25 at Pages11-33.  Valve have answered Baylis' SAC Dkt. #25 with their, First Amended Answer to Complaint #Dkt. 54)  ("Answer") on 24th April 2024 wherein the they provide Seventeen "defenses" from pages 15 - 19 of their Answer. Under FRCP Rule 8(c) a party (Baylis) must affirmatively state any avoidance of such defenses. These defenses are boilerplate defenses and in some cases evidence of Valve's attempts to have Baylis' lawfully acquired property rights unlawfully expropriated from him as they make reference to Valve's attempts to have his Copyright Registration canceled based on Valve's own misleading interpretation of litigation that occurred in Finland previously, and obfuscation of "country of origin" rules under Berne Convention. See #Dkts 43, 44, 44-1 and 52.

1
2
3
4
5
6
7
8

This Case has some similarities to the U.S. Case Films By Jove, Inc. v. Berov which also included an incoherent foreign ruling seeking to obfuscate ownership of copyrights. In that Case Judge Trager found a Higher Russian Court ruling to be "incoherent" (Federal Arbitrazh Court for the District of Moscow) and adopted the previous lower courts ruling instead (Moscow Region Arbitrazh Court). Also, U.S. Courts have provided copyright protection under US law in another case applying United States copyright law to a work that was unprotected in its country of origin, See Hasbro Bradley, Inc. v. Sparkle Toys, Inc., 780 F.2d 189, 192-93 (2d Cir. 1985).

9

**3.**          **ARGUMENT**

10
11
12
13

Valve are fully aware of the requirement as regards to their own employees and freelancers, to obtain copyright from such "natural persons" (authors) by written agreements for Valve's own audio visual productions and games, and to obtain copyright registrations for those works which, often include the names of authors of such work. (Examples below).

14

**Examples of Valve's own copyright registrations including author's names,**

15
16
17

Registration Number / Date:  VA0002259920 / 2021-06-24
Copyright Claimant:  Valve Corporation, Transfer: By written agreement. Address: 10400 NE 4th Street, Suite 1400, Bellevue, WA, 98004.
Nation of First Publication:  United States
Authorship on Application:  Joe Slucher (author of anonymous contribution); Domicile: United States. Authorship: 2-D artwork

18
19
20

Registration Number / Date:  VAu001328489 / 2018-07-30
Authorship on Application:  Forrest Imel (author of anonymous contribution); Domicile: United States. Authorship: 2-D artwork.

21
22
23

In the United States creative employees often (but not always) sign "work for hire" agreements under U.S.C 17§201(b). Absent such valid "work for hire" agreements then the author of such works would maintain the copyright under U.S.C 17§201(a).

24

An author under U.S.C 17§201(a) may keep or dispose of any or all copyrights

1    however they want under U.S.C 17§201(d) which may be transferred in whole or in part by

2    any means of conveyance or by operation of law U.S.C 17§201(d)(1) and which any of the

3    exclusive rights specified by section U.S.C 17§106 may be subdivided for separate transfer.

4        Then the owner of any particular exclusive right legally transfered to them (licensee)

5    under an "exclusive license" (as opposed to non-exclusive licenses) is entitled, to the extent

6    of that right, to all of the protection and remedies afforded to the author. However, an

7    "exclusive license" is NOT a "full assignment of ALL copyrights" and does not afford the

8    licensee "remedies and protections" to further "sub-license" such an exclusive license without

9    express written consent from the copyright owner. See Gardner v. Nike, Inc., 279 F.3d 774,

10   Holding that a sub-licensee of a copyright lacked standing to sue under the 1976 Act on the

11   ground that the pre-1976 law so prohibited. Furthermore, under U.S.C 17§201(e) it states,

12

13       "When an individual author's ownership of a copyright, or of any of the exclusive
         rights under a copyright, has not previously been transferred voluntarily by
14       that individual author, no action by any governmental body or other official or
         organization purporting to seize, expropriate, transfer, or exercise rights of ownership
15       with respect to the copyright, or any of the exclusive rights under a copyright, shall be
16       given effect under this title, except as provided under title 11."

17       Given the above, Valve must be aware that they have no valid defense to Baylis'

18   claims of infringement of his copyrights since Baylis has never signed full copyrights away

19   to anyone. Not even to Iron Sky film Producers who failed themselves to demonstrate

20   copyright ownership to Iron Sky in previous litigation in Finland due to VFX vendor Samuli

21   Torssonen ("Torssonen") of Energia Productions Oy failing to adequately obtain copyrights

22   from many of the animators who worked on Iron Sky, especially as Torssonen utilised a

23   loophole in Finnish employment law to obtain professional level artist such as Baylis and

24   others as "trainees." See SAC #Dkt25. Pages 34 and 35, which is actually illegal in Finland

as it is arguably a type of human trafficking. For instance, Builders, Berry pickers, Restaurant workers etc. would be considered to be victims of human trafficking under such terms as **'working for free for six months in order to potentially secure future employment' especially if they also had their valuable property expropriated from them!**

Valve have the corporate acumen and legal expertise available to them to obtain and review Iron Sky Chain of Title documents to see for themselves that, no written and signed "exclusive adaptation rights" agreements exist from Baylis (or other Iron Sky animation artists) to make the Game Iron Sky Invasion, and that the game/s themselves constitutes a violation of Baylis' exclusive adaptation rights!

Furthermore, there is no excuse from Valve that they may be subject to litigation from the developers of Iron Sky Invasion, Topware Entertainment ("Topware") in some way because Topware can have no standing to seek "remedies and protections" in relation to Iron Sky Invasion in any case as it is an unauthorized derivative work itself due to no permission from Baylis granted to use his works in that or any other similar games, and such games can't be protected by copyright "in any part". See U.S.C 17§103(a),

> "(a) The subject matter of copyright as specified by section 102 includes compilations and derivative works, does not extend to any part of the work in which such material has been used unlawfully."

Also see, Anderson v. Stallone, 11 U.S.P.Q.2d 1161 (C.D. Cal. 1989), The Tolkien Trust v. Demetrious Polychron (2:23-cv-04300) C.D. Cal. These are two cases where unauthorised derivative works could not be protected by copyright under U.S.C 17§103(a). Therefore, given the forgoing Valve has no valid excuse or defense to keep on infringing Baylis' work for their own monetary gain.

## 4.   VALVE'S DEFENSES SHOULD BE STRICKEN

In Wesch v. Yodlee, Inc. Magistrate Judge Sallie Kim granted in full plaintiffs' motion

to strike nearly all the defendant's 28 affirmative defenses, holding that several had failed

to satisfy the pleading standards set forth in Bell Atlantic Corp. v. Twombly, 550 U.S. 544

(2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), and others not even valid affirmative

defenses. As Judge Kim noted, "An affirmative defense, under the meaning of Federal Rule

of Civil Procedure 8(c), is a defense that does not negate the elements of the plaintiff's claim,

but instead precludes liability even if all of the elements of the plaintiff's claim are proven."

Barnes v. AT & T Pension Ben. Plan-Nonbargained Program, 718 F. Supp. 2d 1167, 1173-

74 (N.D. Cal. 2010) (citation omitted). Instead, an affirmative defense is one on which the

defendant bears the burden of proof. Kanne v. Connecticut General Life Ins. Co., 867 F.2d

489, 492 n. 4 (9th Cir.1988). See Order on Motion to Strike Affirmative Defenses (Order),

Case No. 3:20-cv-05991-SK, ECF No. 137 (N.D. Cal. Dec. 6, 2021).

Valve has failed to allege a plausible factual basis for any of their defenses, relying

instead on conclusory boilerplate language that, on its face, fails to meet the pleading

standard set forth in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal,

556 U.S. 662 (2009). Also See, Hernandez v. Dutch Goose, Inc., No. 13-cv-03537, 2013 WL

5781476, at *4 (N.D. Cal. Oct. 25, 2013) (noting the "widespread agreement" in the Northern

District of California that Twombly applies to affirmative defenses). Given the foregoing, Valve's

defenses should be stricken.

5.    **FIRST, SECOND, THIRD, FOURTH, FIFTH, SIXTH, SEVENTH AND
      EIGHTH DEFENSES**

Such Defenses are not actually affirmative defense as mentioned in Hernandez v. Dutch

Goose, Inc. "the court STRIKES them WITH PREJUDICE. See Polo, 2013 WL 1797671, at *3

("[L]ack of standing is not a true affirmative defense because [plaintiff] bears the burden of proof on

that issue."); Perez, 2012 WL 1029425, at *11 (striking defendant's affirmative defenses of failure

1  to state a claim and lack of standing because they are not affirmative defenses); J & J Sports Prods.,

2  Inc. v. Vizcarra, No. 11-1151 SC, 2011 WL 4501318, at *2 (N.D. Cal. Sept. 27, 2011) ("Because

3  a plaintiff must plead and ultimately prove standing, lack of standing is not an affirmative defense

4  under federal law.") (internal quotation marks and citation omitted); Barnes, 718 F. Supp. 2d at 1174

5      Furthermore, these defenses are simply stated in a conclusory manner which fails to

6  satisfy the pleading standards set forth in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007),

7  and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Such a discussion about these types of defenses has

8  been dealt with in Hernandez v. Dutch Goose, Inc whereby even if Defendants try to reason that

9  "the fair notice standard is low and does not require a detailed recitation of facts"...."This argument

10 fails under Iqbal and Twombly for reasons explained above. See O'Sullivan, 2012 WL 2912061,

11 at *8 ("Here, AMN asserts that it is not required to allege any specific facts because its affirmative

12 defenses 'readily put Plaintiff on notice of the defenses Defendant might pursue.' That is the not the

13 applicable standard.") (emphasis in original)"

14 Hernandez v. Dutch Goose, Inc., No. C 13-03537 LB, 10 (N.D. Cal. Oct. 25, 2013)

15     Additionally, these defenses are irrelevant and false because Baylis' works were first

16 published in Germany on 11th February 2012 which is also the date on Baylis' US Copyright

17 Office registration. The first publication date is important as that sets the clock for the term of

18 copyright. There is no requirement under U.S.C 17 §411 to register foreign works to instigate

19 legal action in the United States against Valve because the statute specifically relates only to

20 United States work wherein it states, "no civil action for infringement of the copyright in any

21 **United States work** shall be instituted until preregistration or registration of the copyright

22 claim has been made in accordance with this title" [Emphasis added](U.S.C 17 §411(a)). For

23 Baylis' Iron Sky works there is a "presumption of authorship rule" under Berne Convention

24 Article 15 in such circumstances due to Baylis' name being on the work,

MOTION TO STRIKE DEFENDANT VALVE CORPORATION'S
AFFIRMATIVE AND OTHER DEFENSES                                    Page 9
No. 2:23-cv-01653-RSM

Berne Con. Article 15(1) "In order that the author of a literary or artistic work protected by this Convention shall, in the absence of proof to the contrary, be regarded as such, and consequently be entitled to institute infringement proceedings in the countries of the Union, it shall be sufficient for his name to appear on the work in the usual manner." (https://www.law.cornell.edu/treaties/berne/15.html)

and in the metadata ("trev" SAC #Dkt. 25 pages 18 and 37) of Iron Sky original animation files that he is the authors of as confirmed by Judge Oskar Kulmala in Baylis v Troll VFX (see #Dkt. 46. Baylis Decl., Ex.C. at Baylis_11). Furthermore, whilst Valve cite some case law in their, Motion To Refer Copyright Registration Questions To The Register Of Copyrights And For Stay Of Proceedings, #Dkt. 43 page 9, That was for United States works as Logan is a US Photographer. Logan v. Meta Platforms, Inc., 636 F. Supp. 3d 1052, 1057, 1059-60 (N.D. Cal. 2022) ("Because Logan fails to plead the copyright registration of the photos at issue, the Court dismisses his direct copyright infringement claim.") Therefore, that case citation (Logan v. Meta Platforms) is irrelevant, and thus so is Valve's defense because they rely on that irrelevant case law for their own defense.

6.      **NINCH DEFENSE**

▪      **"Baylis' claims may be barred, in whole or in part, because the works alleged are not copyrightable for lack of originality."**

This defense needs particular attention because it is so wrong and has been addressed by Baylis in a previous pending Motion To Strike Defendant Valve Corporation's Ninth Defense To Plaintiff Trevor Kevin Baylis' Second Amended Complaint #Dkt. 56, and is incorporated by reference here.

7.      **FIRST AFFIRMATIVE DEFENSE**

This defenses demonstrate more willful blindness by Valve as previous litigation in Finland has demonstrated that the Iron Sky Producers do not actually have a valid Chain of Title to claim ownership of the film Iron Sky. See, #Dkt. 45 page 8 and #Dkt. 44, Decl., Ex. D,

MOTION TO STRIKE DEFENDANT VALVE CORPORATION'S
AFFIRMATIVE AND OTHER DEFENSES                                    Page 10
No. 2:23-cv-01653-RSM

at Valve_016, ¶108.  And that is the main reason for their subsequent bankruptcy and problems securing distribution deals. Valve have not grasped the basics of European, Droit d'auteur copyright traditions (Author's rights) which restrict corporate ownership of copyright especially in Germany where even economic rights are inalienable. See  Baylis' SAC #Dkt. 25 pages 8-9 and #Dkt. 45 page 7 (Ownership of Rights in Audiovisual Productions: A Comparative Study. Marjut Salokannel. 1997. P.148-9). Therefore, even "producers of the allegedly infringing video game." have no standing to seek "remedies or protections" in any court.

Baylis is a joint author of Iron Sky and has best standing to seek "remedies and protections" especially for the 3D models and animation works of Iron Sky due to him being the modeling supervisor an lead artist for such works on Iron Sky which is undisputed in previous litigation. See #Dkt. 45 page 6 and #Dkt. 44 Harrison Decl., Ex. D, at Valve_012, ¶¶55-57. Iron Sky Producers would have required Baylis' to be joined as an necessary and indispensable party to infringement actions! That's how badly Iron Sky Producers themselves have messed things up! Iron Sky producers even tried to sue Baylis and lost. See, #Dkt. 45 page 8 and #Dkt. 44 Harrison Decl., Ex. D, at Valve_016, ¶108.

## 8.     SECOND AFFIRMATIVE DEFENSE

This defense is actually two defenses and both are irrelevant and impertinent because Baylis' works are to this day in being displayed and distributed by Valve (e.g. https://store. steampowered.com/app/224900/Iron_Sky_Invasion/(Accessed 25th April 2024)) despite Valve's actual and "red flag" knowledge of infringement due to an absence of "adaptation rights" transfer contracts within Iron Sky Chain of Tile for which they should have performed their own due diligence checks when reviewing the game Iron Sky Invasion prior to it being displayed and distributed by Valve on their Steam Storefront Platform. Therefore, it is Valve who have failed to mitigate their own damages though their own willful blindness. Valve is

1    not eligible for DMCA Safeharbour provisions under U.S.C 17§512(C) because the DMCA

2    safe harbors shield online service providers from liability only if they do NOT have actual or

3    "red flag" knowledge of infringement, and that they NOT directly benefit from infringement

4    when the provider has control over the infringing activity. See Perfect 10, Inc. v. CCBill LLC,

5    488 F.3d 1102, 1113 (9th Cir. 2007)

6    **9.    THIRD, FORTH, FIFTH AND SIXTH AFFIRMATIVE**

7    **DEFENSES**

8         These defenses are boilerplate defenses which fails to meet the pleading standard set

9    forth in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662

10   (2009).  Also See, Hernandez v. Dutch Goose, Inc., No. 13-cv-03537, 2013 WL 5781476, at *4

11   (N.D. Cal. Oct. 25, 2013) (noting the "widespread agreement" in the Northern District of California

12   that Twombly applies to affirmative defenses).  Additionally, these defenses are evidence of

13   Valve's attempts to have Baylis' lawfully acquired property rights unlawfully expropriated

14   from him as they make reference to Valve's attempts to have his Copyright Registration

15   canceled based on Valve's own misleading interpretation of litigation that occurred in

16   Finland previously, and obfuscation of "country of origin" rules under Berne Convention

17   See #Dkts 43, 44, 44-1 and 52.

18   **10.    SEVENTH AFFIRMATIVE DEFENSE**

19        This is just reference to a statue without explanation as to why it may be applicable see in

20   Hernandez v. Dutch, " Without more, the mere citation of some statutory provisions is not enough;

21   there must be some factual allegation showing that those provisions relate to the action. See Miller

22   v. Ghirardelli, No. C12-04936 LB, 2013 WL 3153388, at *4 (N.D. Cal. June 19, 2013)

23   Hernandez v. Dutch Goose, Inc., No. C 13-03537 LB, 9 (N.D. Cal. Oct. 25, 2013)

24

1   **11.   EIGHTH AFFIRMATIVE DEFENSE**

2   Again in Hernandez v. Dutch  such "boiler plate defenses"  ("waiver, estoppel, ratification,

3   accord and satisfaction, unclean hands and/or other equitable doctrines" #Dkt. 54 page 8) are

4   insufficient because there is no notification to Baylis as why or what for, these things being

5   arbitrarily rattled of by Valve, relate to any behaviour by Baylis. "This is not sufficient. See, e.g.,

6   CTF Dev. Inc. v. Penta Hospitality, LLC, No. C 09-02429 WHA, 2009 WL 3517617, at *7

7   (N.D. Cal. Oct. 26, 2009) (striking defendant's affirmative defense of unclean hands because

8   "simply stating that a claim fails due to plaintiff's 'unclean hands' is not sufficient to notify

9   the plaintiff what behavior has allegedly given them 'unclean hands'").

10   Hernandez v. Dutch Goose, Inc., No. C 13-03537 LB, 9 (N.D. Cal. Oct. 25, 2013)

11   **12.   CONCLUSION**

12   Given the forgoing this court should grant this motion to strike because such defenses

13   from Valve are insufficient, impertinent, redundant and cannot succeed at trial. Valve's defenses

14   are by design based on their own unconstitutional actions to unlawfully expropriate valuable

15   property rights from Baylis for their own monetary gain and to coerce this Court as well as the

16   United States Copyright Office to provide weight to their unlawful actions.

17    This Case turns on a single question: "Do Valve Corporation have permission to distribute

18   Baylis' copyrighted works worldwide for their own monetary gain?"

19   The answer is "NO!"

20

21

22

23

24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

I certify that this memorandum contains

4098 words, in compliance with the Local

Civil Rules.

25th April 2024

Trevor Kevin Baylis

_Trevor Baylis_

Jankanraitti

Tampere 33560, FINLAND

trevor.baylis@gmail.com

+358417225899

Please note: Plaintiff is dyslexic. Thus written documents such as this may have minor accidental spelling and or grammatical errors. Such things should not be seen as cause to prejudice the author of this document.

1

2                    CERTIFICATE OF SERVICE FORM

3                     FOR ELECTRONIC FILINGS

4    I hereby certify that on 25th April 2024 I electronically filed the foregoing document

5                  with the United States District Court

6                Western District of Washington at Seattle by using the

7           CM/ECF system. I certify that the following parties or their counsel of

8              record are registered as ECF Filers and that they will be served by the

9                             CM/ECF system:

10                 Jeremy E Roller: jroller@aretelaw.com,

11                        jfischer@aretelaw.com,

12                       kgreenberg@aretelaw.com

13

14                 Jonah O. Harrison: jharrison@aretelaw.com,

15                        jfischer@aretelaw.com,

16                       kgreenberg@aretelaw.com

17

18                        Dated: 25th April 2024

19
                         _Trevor Baylis_ (signature)
20

21                        Trevor Kevin Baylis

22                             Jankanraitti

23                      Tampere 33560, FINLAND

24

MOTION TO STRIKE DEFENDANT VALVE CORPORATION'S
AFFIRMATIVE AND OTHER DEFENSES
No. 2:23-cv-01653-RSM