The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| TREVOR KEVIN BAYLIS,<br><br>               Plaintiff, *(pro se)*.<br><br>   v.<br><br>VALVE CORPORATION,<br><br>          Defendant. | Case No. 2:23-cv-01653-RSM<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>NOTED ON MOTION CALENDAR:<br>September 25, 2025 |

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
No. 2:23-cv-01653-RSM

# I. INTRODUCTION

Valve Corporation ("Valve") have moved for summary judgment ("Motion") asking the Court to dismiss Trevor Baylis' ("Baylis") remaining claims for direct and contributory copyright infringement asserting issues of comity and collateral estoppal. Valve falsely claim that Baylis cannot establish copyright ownership in *Iron Sky* or its 3D models because a Finnish court denied Baylis' his economic rights under sections 2, 6 and 46a of the Finnish Copyright Act ("FCA"). This is false because that Finnish court left "authorship issues" unresolved.

Valve's collateral estoppal requirements are not met because the case that Valve refer to ("MAO302/18") suffers from many errors, which Baylis has written extensively about before in, Plaintiff's Response To Valve's Motion To Refer Copyright Registration Questions To The Register Of Copyrights And For Stay Of Proceedings, Dkt 45, and which Baylis incorporates by reference here. MAO302/18 includes a "grave procedural error" in that the Work in question was "First published" in Germany, and therefore, Finnish Copyright law was from precluded from applying in that very case in terms of "point of attachment" of copyright based on "country of origin" rules (See Berne Convention articles 3-5) and thus precluded under Finland's own Copyright Act ("FCA") due to territoriality restrictions under the FCA section 63(2).[1]

Also see Plaintiff's Notice Of Objection On Defendant Valve Corporation's Notice Of Intent To Raise Foreign Law. Dkt. 79. Which Baylis incorporates by reference here.[2]

Additionally, Baylis *can* establish copyright ownership in *Iron Sky* and its 3D models and animated scenes ("Work") because there is no dispute from Valve or anyone else that Baylis is

---

[1] §63(2) of Finnish copyright act. "Chapter 8. Applicability of the Act. Territorial application (607/2015) The provisions of this Act relating to copyright shall apply: 2) to works first published in Finland or published in Finland within thirty days of having first been published in another country; 3) to a cinematographic work the producer of which has its headquarters or habitual residence in Finland;" https://www.finlex.fi/en/legislation/translations/1961/eng/404

[2] Iron Sky was first published in Germany. Producer Tero Kaukomaa's habitual residence was in Switzerland and Blind Spot Pictures was headquartered in Switzerland. Baylis wasn't employed by Blind Spot Pictures.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
No. 2:23-cv-01653-RSM                                                    Page 1

1  not the creator and originator of that Work, thus logically, the author of the Work jointly with others.

2      The Register of the United States Copyright office ("Register") confirms Baylis is a joint

3  author of the Work and entitled to be named claimant on Baylis' Registration - PA0002432422

4  because authorship is a question of "fact" not of law, and the author is the person who creates the

5  work, "Authorship is a question of fact." S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1086 (9th Cir.

6  1989) (citing Del Madera Props. v. Rhodes & Gardner, Inc., 820 F.2d 973, 980 (9th Cir. 1987)).

7  Copyright in a work "vests initially in the author or authors" of a work. 17 U.S.C. § 201(a). "As

8  a general rule, the author is the party who actually creates the work .…" Cmty. for Creative Non-

9  Violence v. Reid, 490 U.S. 730, 737 (1989). The Register noted that Baylis was not an employee

10  of the Work's producers. (See Footnote 6 on Page 3 of Response Of The Register Of Copyrights,

11  Dkt 66-1, and Baylis' Second Amended Complaint ("SAC"), Dkt 25, ¶¶ 40-41; 82-83).

12      Valve brings MAO302/18 into evidence which, in its dicta, actually confirms Baylis is

13  the creator, originator, and thus should be author of the Work generally under International law

14  because "Authorship is a question of fact." (S.O.S., Inc. v. Payday, Inc). (See generally, Dkt. 45 at

15  Page 6.)

16      Three months before MAO302/18, and involving two of the same judges, there was a film

17  copyright case ("MAO79/18") confirming that film as a "joint work". See Baylis Decl., Exs. E1

18  and F1 at BAYLIS_14-15. That case was where one "supervising" set designer failed to exclude

19  two "assistants" as authors to the film. MAO302/18 had similar issues but with "foreigners"

20  and then obfuscated "joint work" authorship issues which shows inconsistency especially as

21  MAO302/18 admits in it's dicta that there never was a dispute related to Section 3 ("Authorship")

22  of the FCA.

23      "No dispute has arisen concerning the so-called moral rights provided for in Article 3
of the Copyright Act." See, Dkt 44-4, Harrision Dec. ¶ 86, Ex. D at VALVE_14.

24

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
No. 2:23-cv-01653-RSM

Therefore, one could say MAO302/18 may fail to "confirm" who "owns" the Work but MAO302/18 does not "deny" that Baylis is the creator and originator of the Work. Therefore, MAO302/18 may unlawfully invoke an "orphan work" status on Baylis Work because Baylis' name is definitely on the Work (Baylis Dec., Ex. B1 - End Credits), and that is all that is required to claim authorship of the Work even under FCA section 7, and even if it's an orphan work.[3] Also, see Judge Oska Kulmala's dicta in Baylis v Troll VFX L 15/32468, where Baylis' demonstrated the same Work to him as in MAO302/18 and this case and demonstrated that the meta data of the relative Iron Sky 3D animation files contained Baylis first name "trev" within.

> "In relation to the aforementioned [Iron Sky film project ] animations, Baylis has shown, for example, regarding Maya files K21, K27 and K28, which are evidence, that numerous and numerous files and meta-files have his name, i.e. he was the author of the animations."Dkt 49-3, Baylis Dec. ¶ 86, Ex. D at BAYLIS_11.

Never the less, MAO302/18, attempts to unlawfully, judicially expropriate valuable "economic copyrights" from Baylis and others under FCA section 2 and does not itself follow the principles of comity by adhering to harmonized international laws or treaties, including United States copyright law related to motion pictures and audiovisual works - or even adhere to basic principles of the Berne Convention.

Valve claim that MAO302/18 adheres to principles of comity - it does not!

Valve attempt to apply a 4 factor test attempting to show why collateral estoppal should preclude Baylis from continued copyright protection of his Work world wide - That test fails

However, what Valve have really done instead of proving there is no issue of material fact, they have introduced MAO302/18 as direct evidence of the unlawfulness of MAO302/18 as "self evident judicial expropriation of Baylis' economic copyrights under Section 2 of the

---

[3] §7 of Finnish copyright act. "Assumed authorship (607/2015): The person whose name or generally known pseudonym or pen name is indicated in the usual manner on the copies of a work... shall be deemed to be the author, unless otherwise demonstrated.;"
https://www.finlex.fi/en/legislation/translations/1961/eng/404

Finnish Copyright Act". Furthermore, regardless of the unlawfulness and incoherence of MAO302/18, Baylis is entitled to seek protection of his Work under principles of comity based exclusively on the National Laws of all other 180 Berne Union Nations including the United States.[4]

Valve's comity and collateral estoppal argument falls apart and Valve's Motion irrevocably fails as a matter of law and should be denied with prejudice. Baylis' copyright "protection" related to his Work may be upheld in this case based exclusively on the United States Copyright Act as required by principles of comity to harmonized law (not MAO302/18 which is is disharmonized ruling) and the United States obligations to that comity through international treaties such as the Berne Convention.[5]

## II. ISSUE

Should the Court dismiss Baylis' remaining two claims against Valve for direct and contributory copyright infringement based on principles of comity and collateral estoppal. The answer is NO! As there is still a dispute of material fact with the issue of Baylis being the creator, originator and therefore logically, the author of his Work, and recognized as such under international laws and principles of comity. "Authorship is a question of fact." (S.O.S., Inc. v. Payday, Inc), and Baylis has been confirmed as author of his Work in Baylis v Troll VFX and by the Register of the United States Copyright Office. See Response of the Register of Copyrights. Dkt 66-1.

_____

[4] The Court may take judicial notice of the fact that United States and Germany have ratified the Berne Convention. See, e.g., United Nations Treaty Collection, https://treaties.un.org/Pages/showDetails. aspx?objid=0800000280115ec9 (listing all countries that have ratified the Berne Convention).

[5] 17 U.S.C. § 104; Berne Convention for the Protection of Literary and Artistic Works art. 5(1)–(2), Sept. 9, 1886,as revised July 24, 1971, and as amended Sept. 28, 1979, S. TREATY DOC . N O. 99-27 (1986) ("[T]he extent of protection, as well as the means of redress afforded to the author to protect his rights, shall be governed exclusively by the laws of the country where protection is claimed."); COMPENDIUM (THIRD) §§ 505.2, 506.4(A). See generally COMPENDIUM (THIRD) § 2002.2 ("U.S. law applies whenever a United States work or a foreign work is involved in a copyright infringement lawsuit in this country.").

1    Valve rely on MAO302/18 on for their Motion which, is evidence of an unlawful ruling

2    as it expropriates valuable economic rights under section 2 of FCA from Baylis and others, and

3    does not follow Finnish Law,  nor previous Finnish rulings on Film Copyright (see, MAO79/18.

4    Baylis Decl., Exs. E1 and F1 ), nor principles of comity related to United States copyright,

5    nor even Berne Convention rules. Valve cannot cite a single other case where <u>unemployed</u>

6    <u>animators</u> have lawfully been denied "authorship" of their 3D modeling and animation work.

7    This Court ordered an investigation by the Register (Order. Dkt 60) and the Register

8    confirmed to this Court that Baylis *is* a joint owner of the copyright to his Work. Therefore,

9    because Baylis created the Work, then he has a valid copyright to his Work under 17 U.S.C

10    § 201(a) and The U.S. Constitution and Copyright Act are the exclusive sources of copyright

11    protection in the United States. (See generally COMPENDIUM (THIRD) § 2002.2 ("U.S.

12    law applies whenever a United States work or a foreign work is involved in a copyright

13    infringement lawsuit in this country.").

14    This Court should adopt the Registers confirmation of Baylis' valid copyright

15    ownership of his Work because "Authorship is a question of fact."  (S.O.S., Inc. v. Payday, Inc).

16    ### III. EVIDENCE RELIED UPON

17    To support their Motion, Valve relies upon the Declarations of Patrik Lindfors, the

18    exhibits attached thereto, and the pleadings and other papers on file in this action. Lindorfs'

19    interpretation of MAO302/18 is summed up in, Declaration of Patrick Lindfors ("Lindfors

20    Decl.") Lindfors Decl., ¶12,

21    > "12 The Market Court found that Mr. Baylis mainly **worked on modeling and
22    > animating digital visual effects under close guidance from supervisors and
23    > concept art,** than as an independent creator of the film or it's key elements..."
> (Lindfors Decl., ¶12) [Emphasis added]

24

1    Lindfors Decl., which Valve rely on for their Motion, is not an accurate summary itself

2    in that MAO302/18 didn't "conclude" any issues of authorship. Nor could it as authorship is

3    a question of fact and not of law. "Authorship is a question of fact." (S.O.S., Inc. v. Payday, Inc),

4    and section 3 of the FCA (Authorship) is not mentioned in the operative part of MAO302/18.

5    As an expert in Finnish Law, Valve's Attorney Patrik Lindfors ("Lindfors") should know

6    perfectly well that authorship rights are inalienable rights under Finnish Law because it's

7    commonly known such as written on the Finnish Ministry for Education and Culture's English

8    Language Web Page (see below, yellow highlight,) and therefore not even a court can "deny"

9    such rights as that would be an unlawful judicial expropriation of copyright.



19    Just economic copyrights under FCA section 2 are mentioned in the operative part of

20    MAO302/18 and it is just genuine proof that MAO302/18 judicially expropriated valuable

21    economic copyrights under FCA section 2 from Baylis and other UK and US Nationals

22    because the reasoning given by MAO302/18 to deny *those* copyrights was that Baylis

23    was"supervised", and there was "concept work".  <u>These are NOT valid reasons to expropriate

24    valuable property rights from Baylis and other UK and US Nationals</u> especially as <u>Baylis

1    was unemployed during the time he created the work at issue Dkt 25, ¶¶ 40-41; 82-83.

2        The other UK and US National and joint authors of the Work (See, named authors

3    -Baylis' Registration - PA0002432422) did not have "work for hire" contracts either and it

4    should not be forgotten by this Court that those joint authors have an interest in this case too as

5    they have been treated just as unfairly as Baylis by the Finnish judiciary (See Barquin Dec., and

6    Myers Dec., in support of Baylis' opposition to Valve's Motion), and they too would still maintain

7    their lawfully acquired copyrights in all other 180 Berne Union countries. Furthermore, Baylis

8    was a modeling supervisor  (Dkt. 45 at Page 6) and led the Modeling team for most of their time

9    on the project.  Additionally, U.S. National Kelly Myers ("Myers") had his economic rights

10   expropriated and was also a supervisor for his team that used the 3D Software Lightwave.  (See,

11   named authors -Baylis' Registration - PA0002432422) Myers is an award winning artist known

12   for his work on the United States TV series Battlestar Galactica . Regardless of the above, an

13   artist being "supervised" or even referring to "concept work" are **NOT valid reasons to deny**

14   **copyright** or else no "supervised" person in the creative industry could create copyrighted

15   works! The "concept art" was often just reverse engineered based on the 3D work of Baylis in

16   any case and just for marketing purposes which Jussi Lehtiniemi admitted in MAO302/18.

17       Oddly, MAO302/18 found copyright in one 3D model ("Japanese Craft") because

18   it was not a "joint work" or a "derivative work" as it was created by a single artist and UK

19   National Seb Barquin ("Barquin") See, Dkt. 45 at Page 6. Dkt 44-4, Harrision Dec. ¶¶ 52, 53,

20   Ex. D at VALVE_12, and, ¶ 87, Ex. D at VALVE_14.

21       MAO302/18 also unlawfully expropriated copyright from Barquin related to his 3D

22   models the "Rheingold" which he created by himself "unsupervised" in the United Kingdom.

23       "...A [Seb Barquin] said that he initially worked on the Rheingold ship from the UK
         without payment because he wanted to work on the Iron Sky film.." Dkt 44-4, Harrision

24       Dec. ¶ 96, Ex. D at VALVE_15.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
No. 2:23-cv-01653-RSM                                                    Page 7

Finnish copyright law, in terms of "point of attachment" of copyright does not even apply to Myers, Barquin and Baylis, U.S. and UK Nationals who were <u>not</u> employees of the Work's Swiss producers Blind Spot Pictures! Valve are just wrong that Finnish law would apply because "point of attachment" of copyright is either based on a "personal criteria" related to Myers, Barquin and Baylis' Nationality, or where the Work is undoubtedly published, there is a "First publication" "geographical criteria" based on the Nation of "First publication" which was Germany.[7] Both these criteria preclude the Finnish Copyright Act from applying in terms of "point of attachment" of copyright to Baylis. (See Dkt 79) Then, under Article 5(2) of the Berne Convention, actual "protection" for Baylis' Work is based exclusively on the National Laws of where protection is sought. This means that even if one country failed to provide "protection" such as Finland, then it doesn't prevent Myers, Barquin and Baylis from seeking protection in another Berne Union Country under that countries National laws such as in the United States under the United States Copyright Act.[8]

However, when Baylis attempted to gain "protection" in Finland under Berne Convention articles 5(2) and (3) he was simply denied such protection and instead his economic rights in Finland under FCA section 2 were judicially expropriated from him.

Remarkably, Valve is claiming this "lack of protection" of Baylis' Work in Finland, and "unlawful judicial expropriation" of his economic rights under section 2 of FCA in MAO302/18

---

[7] ARTICLE 3 Conditions for Protection; Points of Attachment. Article 3, paragraph (1)
Nationality of the Author and Place of Publication of the Work. 3.3. In the first case, only the nationality of the author counts; in the second, one must consider where the work was published for the first time.
GUIDE to the BERNE CONVENTION for the Protection of Literary and Artistic Works (Paris Act, 1971). Page 26
https://www.wipo.int/edocs/pubdocs/en/copyright/615/wipo_pub_615.pdf

[8] ARTICLE 5 (2) The enjoyment and the exercise of these rights shall not be subject to any formality; such enjoyment and such exercise shall be independent of the existence of protection in the country of origin of the work. Consequently, apart from the provisions of this Convention, the extent of protection, as well as the means of redress afforded to the author to protect his rights, shall be governed exclusively by the laws of the country where protection is claimed.

(see, generally Dkt. 45) is a basis to ask this Court to also deny Baylis "protection" to Baylis' lawfully acquired copyrights. Remarkably, Valve want this Court to refer to MAO302/18 in this case, regardless of its incoherence, unlawfulness, and an obvious lack of comity, and a "grave procedural error" in that MAO302/18 is precluded by it's own territoriality restrictions under FCA section 63(2), (see, generally Dkt. 45) to coerce this Court into the same type of unlawful judicial expropriation of Baylis' copyrights, which would be unlawful under U.S.C 17 §201(e) involuntary transfer of copyrights, and a violation of the United States Constitution!

Baylis previously warned this Court of Valve's attempts at unlawful coercion of this Court to expropriate copyright in Baylis' Motion To Strike Defendant Valve Corporation's Affirmative And Other Defenses, Dkt. 58 at Page 2 which is incorporated by reference below.

> "Valve's are attempting to coerce a Judge in this case, The Honorable Ricardo S. Martinez,to the effect that he should also be compelled to do the same, so that Valve can continue to monetise Baylis' expropriated property. That is, to judicially expropriate valuable property rights for Valve's own benefit, from a British citizen which is unconstitutional under the United States Fifth Amendment (deprivation of property without due compensation), and also unlawful under U.S.C. 17§201(e) non-expropriation of copyright rules.

> This unconstitutional and unlawful action by Valve is further exemplified by Valve's attempts to coerce the United States Copyright Office into canceling Baylis' Copyright registration. See #Dkts 43, 44, 44-1 and 52, based on Valve's own misleading interpretation of litigation that occurred in Finland previously, and obfuscation of the fact that Iron Sky was published in Germany with the consent of all authors (Baylis SAC #Dkt. 25 pages, 8-9 and 11)" [Extract from Dkt 58 at Page 2]

Valve wants this Court to adopt MAO302/18 and repeat all the same incoherence, unlawfulness and procedural errors of MAO302/18 which, would include not even applying harmonized case law of United States to this case such as, Johannsen v. Brown, 797 F. Supp. 835 (D. Or. 1992) or  Community for Creative Non-Violence v. Reid, 490 U.S. 730 (1989).

As an example, if Baylis, a "UK National who lives in Finland" went to a Finnish library to use a Finnish computer to write his memoirs about being a UK National who lives

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
No. 2:23-cv-01653-RSM

in Finland - The copyright arises initially to Baylis based on his UK Nationality (personal criteria) NOT because he used a Finnish computer in a Finnish Library in Finland!

If Baylis then "First Published" his work in Germany "as a physical book" then it comes into existence in the world (and into the world of copyright law) as a German book "*physically in Germany"*, and requires German copyright law to be attached ("Point of attachment") for a German Publisher in Germany to have the certainty of "country of origin" rules under Berne Convention in case of disputes. It's the same for Baylis' animation works.

## IV. DISPUTE

### A.    The Parties.

Baylis is a United Kingdom citizen residing in Finland. See Baylis' Second Amended Complaint ("SAC") Dkt. #25, ¶ 3. Baylis is a professional animator Id., ¶¶ 33-35 who, provided high level award winning animation work for what began as an amateur film in Finland, (Baylis Decl., Ex. A), called Iron Sky Id., ¶¶ 37-40 for a production company Blind Spot Pictures with headquarters in Switzerland where producer Tero Kaukomaa ("Kaukomaa") is permanent resident.[9]

VFX Vendor Samuli Torssonen  of Energia Productions ("Torssonen") utilized Finnish work training agreements to obtain professional quality animation work from exploited foreign nationals (Baylis) without paying them, which is illegal in Finland. Id., ¶¶ 40-41; 82-83. (See also, Dkt. 58 at Pages 6-7 "... arguably a type of human trafficking...").

Defendant Valve is a video game developer and digital distributor, with headquarters in Bellevue, Washington. Id., ¶¶ 5-6. Valve operates a digital distribution platform for video games

[9] Tero Kaukomaa's Blind Spot Pictures (Iron sky producer) was headquartered in Zurich (Switzerland). Blind Spot Zürich GmbH in Liquidation. [Machine Translation] Blind Spot Zürich GmbH, in Zurich, CHE-110.542.326, limited liability company (SHAB No. 184 of September 22, 2010, p. 18, Publ. 5822300). New company name: Blind Spot Zürich GmbH in liquidation. The company was dissolved by resolution of the shareholders' meeting of November 26, 2020. New or changed registered persons: Kaukomaa, Tero, Finnish citizen, in Zurich, shareholder and managing director, liquidator, with sole signature, with 20 registered shares of CHF 1,000.00 each [previously: shareholder and managing director, with sole signature]. https://www.zefix.ch/de/search/entity/list/firm/738200 (Accessed 27th August 2025).

1   called Steam through which third-party game developers can sell and/or distribute video games.

2       **B.    The Work**.

3       The work at issue is a film named *Iron Sky*. The plot, in essence, is that before the end

4   of World War II, Germans fled Earth on spaceships, established a settlement on the dark side

5   of the Moon, and, in 2012, returned to Earth in spaceships. Id., ¶¶ 33-41.

6       **C.    Valve deliberately mis-characterize the operative part of MAO302/18.**

7       Valve infer MAO302/18 "denied" Baylis "the whole of his copyrights" under Section

8   1 of the FCA. See, Dkt 76, Motion, at Page 4. However, Valve's is wrong because <u>Section 1 of</u>

9   <u>the FCA is not mentioned in the "operative part" of MAO302/18.</u> Only sections, 2, 6 and 46(a)

10  are mentioned, See, Dkt 44-4, Harrision Dec. Ex D. "Summary of judgment." VALVE_17.

11  "Authorship rights" relate to section 3 and section 7 of the FCA and are inalienable rights which

12  means it would be an impossibility in any case for MAO302/18 to "deny" authorship rights

13  including under international principles of comity and under Berne Convention Article 6bis.[10]

14      **D. MAO302/18 Contains Numerous Fundamental Errors of Fact or Law:**

15      The dicta in MAO302/18 gives some remarkable analysis which is often wrong. For

16  instance it suggests that animators are not "typically comparable to that of the filmmakers."

17      "23. The Market Court notes that, as stated above, the number of persons who can be
    considered authors of a cinematographic work is not very large. For example, even

18  the main responsible director of a film cannot necessarily be considered the author of
    the film. The Market Court considers that the staff members have essentially played

19  different roles in assisting in the creation of digital visual effects for certain aspects

20  of the film, which in many respects can be likened to staging. It has not been shown

---

21  [10] The operative part of MAO302/18 does not mention Section 1 of the Finnish Copyright Act and limits the
    ruling to Sections 2, 6 and 46a. Furthermore, Sections 3 and 7 (authorship rights) are conspicuously absent and

22  shows that MAO302/18 abandons any substantial ruling on actual authorship in the operative part of the ruling.
    It should be noted that under Berne Convention rules, the author *always* maintains the right to claim authorship

23  under Aricle 6bis (1) "Independently of the author's economic rights, and even after the transfer of the said
    rights, the author shall have the right to claim authorship of the work..."
    https://www.law.cornell.edu/treaties/berne/6bis.html

24

1    that the role of the crew members is typically comparable to that of the
     filmmakers or even the main director."
2    Dkt 44-4, Harrision Dec. ¶ 23, Ex. D at VALVE_10.

3        This just isn't true because many film makers are animators such as Walt Disney and

4    Phil Tippet (stop motion animator for many films), and the Maya 3D animation software

5    Baylis uses is commonly known as the main industry standard software used in modern film

6    making. The main activity of an animator is to make images that when viewed in a sequence,

7    give the illusion of movement. Also known as "Motion pictures." Baylis has done exactly that

8    for the Work, which is a work subject to copyright in general. See subject matter of copyright -

9    17 U.S.C. § 101(6) and 17 U.S.C. § 101(Definition of "Audiovisual works" and "Motion

10   pictures"). "A work is considered a "joint work" if it is "prepared by two or more authors with

11   the intention that their contributions be merged into inseparable or interdependent parts of a

12   unitary whole." 17 U.S.C. § 101 (defining "joint work").

13       Baylis also had a supervisory role which was acknowledge by MAO302/18, see Dkt

14   44-4, Harrision Dec. ¶¶ 55-58, Ex. D at VALVE_12 as well as creating the models and using

15   them himself for the Work due to their complexity.

16       Additionally, the models themselves are joint works coordinated by Baylis who

17   became in charge of the whole Work's modeling team due to his better experience and

18   expertise which is also acknowledged by "The witness Puukko" ("Risto Puukko") in Baylis

19   v Troll VFX, see Dkt 49-3, Baylis Dec. Ex. D at BAYLIS_20-21, and also after examining the

20   Iron Sky 3D animation files, Judge Kulmala concludes that,

21       "one cannot come to any other conclusion than that Baylis had worked as an animator
         before his employment with Troll in the Iron Sky film project." Baylis v Troll VFX. Dkt
22       49-3, Baylis Dec. Ex. D at BAYLIS_26.

23       Furthermore, the Director and Producers were in Germany and Australia when

24   Baylis created significant 3D models and scenes for the Work SAC Dkt. 25 Page 38, and

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
No. 2:23-cv-01653-RSM                                                            Page 12

this demonstrates that Baylis has clearly worked "independent" of the film's Director ("Vuorensola"),Torssonen and Kaukomaa for the production of the Work.

Torssonen and Kaukomaa cannot be first authors of the Work and they must collect rights by contract from the actual creators of film.[11] Whereas, Baylis is a graphics designer and a 3D modeler and animator, (see Baylis Dec., Exs. F, G, H, I, J, K, L, M, N, O and P.)[12] and such people are genuinely authors of films as mentioned by Finnish Researcher Marjut Salokannel in her book *Ownership of Rights in Audiovisual Productions: A Comparative Study*. [13]

Another remarkable conclusory analysis in MAO302/18 is that despite it being admitted that the 3D animation work is central to the film, MAO302/18 then states they are somehow not of material importance to the assessment of copyright?!

> "22...the computer-generated visual effects in the film were in themselves central, and there are several scenes in the film created entirely in this way." (Dk 44-4. Harrison Decl., Ex. D, at Valve_010, ¶22),

> "...but narratively and temporally, they did not play a leading role in the film or define the film in such a way as to be of material importance in the copyright assessment of the author of the film work as a whole" (Dk 44-4. Harrison Decl., Ex. D, at Valve_010, ¶22).

---

[11] The persons who participate in the film in a financial or practical manner have no rights in the film that are based directly on the author's rights legislation....The most important person belonging to this group is the film producer."
(Ownership of Rights in Audiovisual Productions: A Comparative Study. Marjut Salokannel. 1997. P.148-9)

[12] All video exhibits cited in this motion are attached to the concurrently filed Declaration of Trevor Kevin Baylis in Support of Baylis's Plaintiff's Opposition To Defendant's Motion For Summary Judgment ("Baylis Dec."). Many of these exhibit materials are video evidence with accompanying written transcripts which have been mailed to the Court on two USB drives, and a, Notice Of Filing Paper Or Physical Materials With The Clerk Regarding Plaintiff's Opposition To Defendant's Motion For Summary Judgment ("Notice") to that material has been concurrently filed in CM/ECF in accordance with U.S. District Court, Western District Of Washington Electronic Filing Procedures For Civil And Criminal Cases Amended 3/26/2025, page 9 section J.

[13] "When judged in light of preparatory documents of Nordic laws, the persons who should be regarded as the joint authors of audiovisual works seem to be basically the same as in other civil law countries....**Today there is also no doubt that the graphic designer is regarded as one of the authors of an animated audiovisual work. [Emphasis added]**
(Ownership of Rights in Audiovisual Productions: A Comparative Study. Marjut Salokannel.1997. P.149)

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
No. 2:23-cv-01653-RSM

Firstly, it's not clear what "narratively and temporally" has got to do with copyright law. Not withstanding that the 3D animation work in question is certainly part of the Work's narrative (Spacecraft battle and invasion narrative) but there just isn't any "narrative" requirement in copyright law anywhere in the world in any case for copyright to arise on the creation of a work. "Authorship is a question of fact."  S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1086 (9th Cir. 1989). Baylis provides some comparison videos of the Work with and without the 3D animation work to compare and see how central to the film it really is, see Baylis Dec., Exs. R, S and T.

Furthermore, one can credibly compare Baylis with other artists working for first time on a science fiction film. For instance Swiss artist H.R. Giger's Xenomorph and Alien Spacecrafts are hardly seen at all in the film Alien (1979) but it's the main audience appeal of the film and became part of  billion dollar intellectual property.

Baylis' work is undoubtedly the work with the some of the most audience appeal in *Iron Sky,* see Baylis Dec., Ex. Q, and has significant commercial value itself. Others have been trying to unlawfully expropriate it from him as it can be used as equity for a funding an Iron Sky Franchise which benefits the Finnish State's reputation and political objectives on foreign co-production collaborations (see Baylis Dec. Ex. H1), and the models themselves can be used for other derivative productions such as video games, which benefits Valve in this case!



**Above, H.R. Giger with his first ever film work and Baylis with his first ever film work.**

It should also be noted in MAO302/18 the production companies filed a counter claim (MAO302/18 - File number: 2017/701) against Baylis and LOST <u>because they were unable to provide evidence of any copyright ownership to the Work!</u>

> "The production companies have not argued or presented any evidence to establish who, if anyone, has acquired the copyright in the vessel and whether the copyright in the vessel has been exclusively transferred to the production companies...". (Dkt. 44-4. Harrison Decl., Ex. D, at Valve_016, ¶108)

### E. Finnish state involvement with Iron Sky and Judicial misconduct.

In this case Valve's argument is that a Finnish court ruled against Baylis. However, MAO302/18 eventually admits in it's dicta that there was no real dispute about authorship under FCA section 3 and limits the operative part to just the economic rights under FCA section 2. This incoherence of MAO302/18, where authorship is not "denied" but expropriation of economic rights occurs may be explained by the Finnish judiciaries involvement in utilizing Baylis' Work. (1) The state of Finland itself became involved with Iron Sky as it was presented as a flagship film production to attract foreign co-productions via a Finnish tax rebate Production Incentive.[14]  (2) Turku Courts of Appeal in Finland was used as a venue to film part of a new Chinese co-produced 25 million euro budget Iron Sky production called *Iron Sky The Ark*. (3) Reportedly, €200,000 from the Finnish tax rebate Production Incentive was allocated for the shoot at the Turku Appeal Court owned Old Academy Buliding.[15, 16] (5) That Iron Sky film shoot was arranged around the same time an appeal from Troll VFX was heard in that very

---

[14] Finnish tax incentives attract Andy Garcia's vehicle Iron Sky: The Ark. https://nordiskfilmogtvfond.com/news/stories/andy-garcias-vehicle-iron-sky-the-ark-brings-200-000-to-finland

[15] An important scene of a Chinese-Finnish action movie was shot in Turku...Old Academy Building https://web.archive.org/web/20210922182506/https://www.turku.fi/en/news/2018-01-26_movie-iron-sky-ark-shot-turku-striving-chinese-market

[16] "The customer, i.e. the Turku Court of Appeal, was also involved to an unusual degree" (Tarja Hietamäki, Construction Project Manager at Senate Properties). https://web.archive.org/web/20250720101354/https://www.senaatti.fi/en/current-topics/articles/senate-helps-the-magnificent-old-academy-building-enter-the-digital-age/

1   Court with Torsonnen and Vuorensola giving evidence against Baylis for his role on *Iron Sky*,

2   and Baylis' damages award was reduced. See email exchange with Baylis' Lawyer for that case

3   (Anti Palo), Baylis Dec., Ex. I1, at BAYLIS_2, 3 and 4.

4   Later, in MAO302/18 judges ignored evidence when they decided not to examine

5   Baylis' training agreement (Dkt 25, ¶¶ 40-41; 82-83) because obviously that agreement proves

6   that Baylis, as unemployed, is still the actual copyright owner to the Work, and when Baylis

7   actually demonstrated his 3D animation to the Finnish Market Court whilst Torssonen and

8   others failed to prove any copyright ownership (see Baylis Decl., Exs. D1 and V) or to give

9   any such credible demonstrations of the Work themselves, then it had been shown to Judges in

10  at least three Finnish courtrooms, Pirkanmaa District Court, Turku Court of Appeal, and finally

11  the Finnish Market Court that Baylis was actually a professional animator with a significant

12  role in creating the Work enough to be considered an author of the whole film especially based

13  on the previous Finnish Market Court ruling - MAO79/18 (see Baylis Decl., Exs. E1 and F1.)

14  Given the involvement of the Finnish State and the Judiciary of Finland themselves

15  becoming involved in *Iron Sky* <u>for a Franchise worth around 50 million Euros</u>, and clear

16  evidence of a lack of Chain of Title, (see Dkt. 44-4. Harrison Decl., Ex. D, at Valve_016,

17  ¶108. And Dkt 25, ¶¶ 40-41; 82-83), and potential for the Turku Court of Appeal to be

18  charged with aiding in filming an unauthorized adaptation of Baylis Work for monetary

19  gain - one may understand why MAO302/18 was such an incoherent and error strewn ruling,

20  and why Baylis' contract evidence  Dkt 25, ¶¶ 40-41; 82-83, was ignored in MAO302/18,

21  because the dicta starts off saying it will examine a lack of written agreements.

22      "4. ..but in all cases, the employment and transfer of rights are not agreed in writing.
        The conditions under which the copyrights may have been transferred to
23      Tuotantoyhtiö Energia Oy and/or the right of use granted to the production companies
        may therefore also have to be assessed." [Emphasis added](Dk 44-4. Harrison Decl.,
24      Ex. D, at Valve_008, ¶4)

And then later in the dicta,

> "87. As stated above, Claim 1 must be rejected and Claim 2 must also be rejected, except if A must be considered as the author of the Japanese agents' vessel. Consequently, claim 3 only needs to be assessed in relation to the work mentioned by A."

MAO302/18 refused to "confirm" authorship for Baylis and the others apart from Barquin in order to specifically avoid having to examine "lack of written agreements," and then just examine Barquin's Finnish freelance agreement only. Therefore, "*not confirming*" Baylis' authorship was simply a strategic maneuver by the Finnish Market Court to avoid examination of work training agreements Dkt 25, ¶¶ 40-41; 82-83 because they proved Baylis was genuinely the Works (joint) copyright owner, and *that* work training agreement was at the foundation and the heart of all the frauds that followed including, the Turku Court of Appeal aiding in filming an unauthorized adaptation, and Torssonen selling Intellectual Property (Baylis' 3D works) - which, Torssonen didn't own! - To Iron Sky Universe Oy as indicated in Iron Sky Universe Oy's financial statements see Baylis Decl., Ex. W, at BAYLIS_8.

## V. ARGUMENT

### A.    Summary Judgment Standard.

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Torres v. City of Madera, 648 F.3d 1119, 1123 (9th Cir. 2011). Here, however Baylis' has shown previously in Dkt. 45 that there are multiple issues with the very Finnish ruling, MAO302/18, which is Valve's only supporting evidence in this case, and it is therefore not appropriate to grant Valve summary judgment because of the disputed issue Baylis brings up here and previously in the evidentiary record.

The case law that Valve cites such as Pony Express Records, Inc. v. Springsteen, 163

F. Supp. 2d 465, 476 (D.N.J. 2001) was a dispute where the "actual creator" was the author (Springsteen) and therefore the "author's rights" were being upheld under international principles of comity. In contrast MAO302/18 doesn't uphold the rights of the creators of the Work and expropriates valuable economic rights from them and thus itself doesn't adhere to the principles of comity of upholding the rights of actual authors under international copyright laws.

### B. MAO302/18 itself fails to adhere to principles of comity.

#### 1. United States courts need not recognize judgments rendered by foreign state.

As mentioned, MAO302/18 doesn't itself follow principles of comity towards international law and it is not in the interest of the United States own policy on copyright protection to unlawfully expropriate copyrights from foreign nationals. "It is well-established that United States courts are not obligated to recognize judgments rendered by a foreign state, but may choose to give res judicata effect to foreign judgments on the basis of comity." Films by Jove, Inc. v. Berov, 250 F. Supp. 2d 156, 176 (E.D.N.Y. 2003) (quoting Gordon Breach Sci. Publishers S.A. v. American Inst. of Physics, 905 F.Supp. 169, 178-79 (S.D.N.Y. 1995)). Comity "is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or other persons who are under the protection of its laws. Hilton v. Guyot, 159 U.S. 113, 144 (1895). Belize Telecom Ltd. v. Government of Belize, Case No. 05-20470-CIV-UNGARO-BENAGES, 21 (S.D. Fla. Jun. 6, 2005)

There is no harmonization of law when Baylis' economic rights have been judicially expropriated from him in MAO302/18 because that ruling is not consistent with United States Law, Finnish Law, previous Finnish Rulings (MAO79/18) and nor Finland's own obligations of comity in upholding copyright for creators of works who are not Finish Nationals.

MAO302/18 involves commissioned artists and is similar to the U.S. case Johannsen

v. Brown. In that case the artist, Johannsen was the owner of copyright despite being a commissioned artist and being supplied with concepts and ideas from the commissioning party. See Johannsen v. Brown, 797 F. Supp. 835, 842 (D. Or. 1992). Also see Dkt 45. Page 8.

Baylis was also commissioned, although no employment relationship existed but MAO302/18 expropriated rights from him regardless. It means that MAO302/18 is not harmonized with United States laws related to copyright arising in commissioned works.

### a.    Lack of competence and public trust in Finnish courts

Three months before MAO302/8 on 13 February 2018, in another film copyright case case involving a Ari Kaurismaki film, that ruling MAO79/18 found that set designers on that film were authors of the whole film due to the fact that their set designs constituted the images that go together to make a motion picture as a unitary whole, Baylis Decl., Ex. F1, at BAYLIS_14 -15, ¶¶ 40-44. Also, see U.S.C 17 §101(Definition of Motion Pictures)

Two of the same Market Court judges in MAO302/18 gave that MAO79/18 ruling. Judge Anne Ekblom-Wörlund, and Judge Pekka Savola.

Then, regarding MAO302/18 in a preliminary hearing 15th Feb 2018 with Judge Pekka Savola at the Market Court, Baylis' raised that MAO79/18 ruling, which Judge Savola himself was part of. Baylis had emailed his own lawyer about it a day previous to that preliminary hearing. See Baylis Decl., Ex. G1, at BAYLIS_1-2 and 4.

Never the less, it turned out that MAO302/18 avoids any mention of MAO79/18 at all as can be objectively seen by the conspicuous absence of any mention of MAO79/18 in MAO302/18. One would have expected Judge Savola to have remembered he ruled on a film copyright case just a few months earlier and participated in a preliminary hearing where that case MAO79/18 was specifically brought up in relation to the upcoming MAO302/18 case. Furthermore, it was known by the judges in MAO302/18 that Torssonen and Vuorensola were

in Australia and Germany at a time when Baylis was unemployed and unsupervised due to being unemployed and *Torssonen,Kaukoma and Vuorensola being in Australia*. Despite these salient facts MAO302/18 claims Baylis worked under "supervision!" This is just a lie and the Finnish judges must have known they were lying *due to Baylis being unemployed* and *Torssonen, Kaukomaa and Vuorensola being in Australia*. See Dkt. 25 at Page 38, ¶92.

Valve's *'competence of the Finnish courts and comity argument'* falls apart because Valve cannot credibly say that there is harmonization of law in MAO302/18 comparable to United States case law such as in Johannsen v. Brown, 797 F. Supp. 835, 842 (D. Or. 1992). Also, Valve's reference to Valjakka v. Netflix, Inc., 710 F. Supp. 3d 782, 792 (N.D. Cal. 2024) is inappropriate too as that concerned an "abstract idea" related to Patent law not fixed 3D animation work for a science fiction film that fits the description of a copyrighted work under U.S.C 17 §101.

MAO302/18 is itself proof of incompetence. Any other court could easily come to a different conclusion in evaluating the Work, which is evidenced by the fact the Register of the Copyright Office had no difficulty in confirming Baylis was a joint copyright holder of the Work.

**b.    MAO302/18 is territorially limited under it's own laws.**

Valve want to rely on Finnish law, Dkt. 78, but there are numerous practical and logical problems with that. For example, FAC section 63(2) bars Finnish Copyright law from applying to the Work in the first place due to it being a *German* Work. See Dkt. 79. MAO302/18 gives lip service to the fact the Work was "First published" in February but conspicuously fails to mention in which country which is a glaring error given FCA limits under section 63(2).

> "The film was released in February 2012"
> (Dk 44-4. Harrison Decl., Ex. D, at Valve_008, ¶3)

The work is without doubt a "published work" that fits the description of a Motion Picture (U.S.C. 17 § 102(6)) and has to be a copyrighted work (U.S.C. 17 § 106) in practical

terms for licensing distribution rights to distributors (U.S.C. 17 § 106(3)).

Valve are not authors of he Work, nor have exclusive rights to the Work under U.S.C. 17 § 106, and have no legal say as to where the work should be "First published" under U.S.C. 17 § 106 because those rights are the  exclusive right of the copyright owners under U.S.C. 17 § 106.

Germany was "specifically chosen" to be the "Country of Origin" by all of the Works copyright owners under Berne Convention Rules Articles 3 - 5 including 5(4)(a).

The Work's star cast are mainly German Actors' with Udo Kier, Tilo Prückner,  Julia Deitze and Götz Otto providing the star cast audience appeal. The theme of the film is  that Germans from the Second World War, had escaped too the Moon. A substantial part of the filming was undertaken in Germany and the Work was significantly financed by the German Film Fund. The Work was "First Published" on 11th February 2012. So even with an holistic that approach Valve want, the Work is a German Work. See Baylis Dec., Exs. A1, Y and Z.

     c.     **The Finnish action ignored evidence and material facts and MAO302/18 amounts to judicial expropriation of valuable copyrights.**

This Case has some similarities to the U.S. Case Films By Jove, Inc. v. Berov which also included an incoherent foreign ruling seeking to obfuscate ownership of valuable copyrights that could have benefited the State of Russia. In that Case Judge Trager found a Higher Russian Court ruling to be "incoherent" (Federal Arbitrazh Court for the District of Moscow) and adopted the previous lower courts ruling instead (Moscow Region Arbitrazh Court). MAO302/18 obfuscates authorship when Baylis already had his authorship confirmed by a genuinely competent Judge Oskar Kulmala in Baylis v Troll VFX. See Dkt 45 Page 10 and Dkt 49-3, Baylis Dec. Ex. C at BAYLIS_11 and BAYLIS_26

     d.     **The Finnish Decision was entered in a clear and formal record but is inconsistent with rulings and opinions in other formal records**.

MAO302/18 remains today as a clear and formal record of judicial expropriation of foreign

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
No. 2:23-cv-01653-RSM

nationals valuable economic rights. <u>This Court should find the actions of the Finnish judiciary unconscionable</u> because in another case just three months previous, MAO79/18 which, is also entered into a clear and formal record,  that case coherently upheld both authorship rights under Section 3 of FCA and economic rights under section 2 of FCA for Finnish Nationals who were "assistant set designers" confirming them as joint authors for that film at issue.

### e.    MAO302/18 does not properly apply Finnish Law

Not even Finnish Law was applied properly in MAO302/18 as demonstrated by the error of not acknowledging FCA section 63(2), and two contrasting outcomes of MAO79/18 and MAO302/18. Even in Finland authorship is fact based on the creation of the work.

### 2.    Collateral estoppel requires a valid judgment on the merits for the issue to be precluded in a subsequent case.

### a.    MAO302/18 is not a valid judgment

MAO302/18 is not a valid judgment because it is has numerous grave procedural errors previously on record and written about by Baylis. See, Dkt. 45 which Baylis incorporates by reference, and is clear evidence itself of judicial expropriation of valuable economic rights of UK and United States Nationals. Baylis' burden of proving authorship was already shown by his name being on the work (FCA section 7) signifying him as the creator of it in the meta data of the 3D animation files as confirmed by Judge Oskar Kulmala in his dicta in Baylis v Troll VFX. See Dkt 45 Page 10 and Dkt 49-3, Baylis Dec. Ex. C at BAYLIS_11 and BAYLIS_26

### b.    The Finnish action was not finally adjudicated on the merits.

The Finnish state and the Finnish judiciary sought to exploit *Iron Sky* intellectual property by allowing an *Iron Sky* adaptation to be filmed on judicial premises without consent from Baylis who has exclusive rights to authorize derivatives. MAO302/18 was an attempt mitigate judicial misconduct and not an attempt to rule on the merits. It is objectively clear  that if MAO302/18

had ruled on the merits then it would have reach the same conclusion of MAO79/18 and that Baylis

was a copyright owner especially as Baylis was not an employee, and had created the Work, and is

logically the author of his Work, "Authorship is a question of fact."  (S.O.S., Inc. v. Payday, Inc),

and as confirmed by the Register of the United States Copyright Office.

      **c.**    **Foreign nationals had rights judicially expropriated in MAO302/18 which**

        **is unlawful under Finland's international treaty obligations.**

      MAO302/18 denied economic rights under section 2 of FCA for UK and United  States

Nationals when under Berne Convention article 5, regardless of the disputes about "country of

origin," Finland never-the-less should have provided protection for Baylis under it's own laws

because, "when the author is not a national of the country of origin of the work for which he

is protected under this Convention, he shall enjoy in that country the same rights as national

authors." Berne Convention article 5(3).  However unlike in MAO79/18 which concerned just

Finnish Nationals - Baylis and other foreigners had their rights expropriated from them.  Barquin

["A" in  MAO302/18 ], for instance was treated very unfairly because he wasn't even in Finland in

2010 and MAO302/18 still expropriated his economic rights under FCA section 2.

> "47. A said that before coming to Finland, he had made three versions of the
> Rheingold model with JL in the UK."
> Dkt 44-4, Harrison Dec. ¶ 47, Ex. D at VALVE_12.

> "96. A said that he initially worked on the Rheingold ship from the UK without
> payment because he wanted to work on the Iron Sky film and that he kept saying that
> he wanted to be part of the project because it was his first film."
> Dkt 44-4, Harrison Dec. ¶ 96, Ex. D at VALVE_15.

      Barquin was told by a Finnish Judge that even though he worked at his own home in the

UK without a contract and without pay - somehow his work is devoid of economic copyrights

because of 'Finnish law that's limited by territory under section 63(2) of it's own act?!'

 Valve cannot credibly claim to this Court that MAO302/18 is anywhere near a fair ruling.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
No. 2:23-cv-01653-RSM

1  **d.    Baylis participation was in an unfair trial**

2  MAO302/18 was not a fair trial because it didn't apply to copyright law correctly nor rule on

3  the merits. Additionally, any authorship analysis regarding "point of attachment" of copyright

4  to UK and U.S. Nationals based on the FCA was actually barred by the FCA territorial

5  application rules under section 63(2) which the judges in MAO302/18 must have known about

6  but went ahead and invoked the FCA knowing that German Law should have applied under

7  Berne Convention rules. Additionally, then they ruled in an opposite way to a previous

8  case MAO79/18 which they also presided over and which had identical issue related to

9  authorship of films as joint works. Baylis was not given protection under Berne Convention

10  rules based on Finland's obligation to apply protection to non-finnish Nationals. The difference

11  between the two cases appear to be that in  MAO79/18 the rights of Finnish Nationals were

12  upheld but in MAO302/18 the copyrights of a U.S. and UK Nationals who had created

13  valuable copyrighted Work, worth millions of Euros were unlawfully expropriated from them.

14  **VI. CONCLUSION**

15  Baylis holds valid copyright in *Iron Sky* and its 3D models and animations worldwide

16  and his infringement claims hold as a matter of law. MAO302/18 has numerous errors, is

17  fundamentally unfair and does not even follow a previous ruling three months earlier in

18  the Ari Kaurismaki case MAO79/18 which ruled assistant set designers were copyright

19  owners of the whole film. There is also objective evidence of Finish state influence and

20  judicial corruption. Furthermore, the Work is a German work and FCA section 63(2) bars the

21  application of FCA to the work in terms of authorship assessment.

22  Valve's Motion should be denied with prejudice and Baylis reserves the right to file his

23  own Motion on Summary Judgment on copyright authorship, ownership and originality issues.

24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

I certify that this memorandum contains

8364 words, in compliance with the Local

Civil Rules.

15th September 2025

Trevor Kevin Baylis

*Trevor Bay* ﹀

Jankanraitti

Tampere 33560, FINLAND

Please note: Plaintiff is dyslexic. Thus written documents such as this may have minor accidental spelling and or grammatical errors. Such things should not be seen as cause to prejudice the author of this document.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
No. 2:23-cv-01653-RSM

1

2                       CERTIFICATE OF SERVICE FORM

3                         FOR ELECTRONIC FILINGS

4     I hereby certify that on 15th September 2025 I electronically filed the foregoing document

5                        with the United States District Court

6                     Western District of Washington at Seattle by using the

7                   CM/ECF system. I certify that the following parties or their counsel of

8                    record are registered as ECF Filers and that they will be served by the

9                                   CM/ECF system:

10                      Jeremy E Roller: jroller@aretelaw.com,

11                     Jonah O. Harrison: jharrison@aretelaw.com,

12                            jfischer@aretelaw.com,

13                          kgreenberg@aretelaw.com

14                                SCOTT BOLDEN

15         Director Intellectual Property Section Commercial Litigation Branch

16                   Civil Division U.S. Department of Justice

17                          Scott.Bolden@usdoj.gov

18                          Dated: 15th September 2025

19

20

21                          Trevor Kevin Baylis

22                               Jankanraitti

23                        Tampere 33560, FINLAND

24