The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| TREVOR KEVIN BAYLIS,<br><br>                Plaintiff, *(pro se)*.<br><br>   v.<br><br>VALVE CORPORATION,<br><br>                Defendant. | Case No. 2:23-cv-01653-RSM<br><br>**DECLARATION OF KELLY MYERS IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

I, Kelly Lee Myers, declare as follows:

1.    I am over the age of Eighteen, competent to be a witness herein, and make this declaration on the basis of my personal knowledge.

2.    I am a United States Citizen, currently residing in Las Vegas, Nevada. I was the CG (Computer Graphics) Supervisor for the Visual Effects team on the feature film "Iron Sky" and I submit this declaration in support of Mr. Trevor Baylis' Opposition to Valve Corporation's Motion for Summary Judgment on issue of comity and collateral estoppal, and with respect to copyright ownership of "Iron Sky" .

3.    I make this declaration based on my personal, first-hand knowledge and personal experience, combined with the facts concerning my own copyrights held and retained by me in regards to digital and other assets, IP, related to "Iron Sky", that I, if called upon to do so, would testify competently hereto.

4.    For the last 35 years (I started my career at the age of 15 in 1990), I have been a professional visual effects artist, CG Supervisor and VFX Supervisor working in the film and television industry.

5.    I have worked remotely and on site for major film studios, tv networks and game companies ranging from London, Los Angeles, Vancouver, Zurich, Amsterdam, Tampere (where I was for part of the time working on Iron Sky) and many more.

6.    I have won multiple awards for my work including the work I did on Iron Sky.

7.    I am currently working on pre-production in the virtual art and pre-visualization department on a pair of major feature film sequels set to release in 2027, from Lionsgate Studios, as a Senior Visual Effects Artist.

8.    Due to my experience in the film/tv industries as well is in other creative industries including musical performance and production, I have had to become incredibly well versed in the legalese and nature of contract and copyright law not only in the United States and Canada, but in other territories.

9.    Furthermore, concerning the suit brought about by Mr. Trevor Balyis who I directly supervised and had working with my primary 3D department team members on Iron Sky, against Valve Corporation, I have the following to say.

10.    None of the Visual Effects artists or supervisors on Iron Sky released any of their work to Blind Spot Pictures, Energia Productions, E-One Entertainment, or any other

entity in writing. Not even for use in the actual motion picture "print" itself. There were simply no contracts with any clauses assigning a transfer of rights in any form. And I don't mean just no contracts with such provisions. I mean NO CONTRACTS. None.

11.     I most certainly didn't do any of the art on Iron Sky under contract and at no time did I agree to or sign away my work to any other entities and, a recent court case also brought by Mr. Baylis against "Iron Sky Universe" through the market court in Finland, established this as FACT.

12.     As a result, I fully retain all of my works and have since their creation, during the time I spent producing artwork, supervising the production of artwork which I ultimately contributed to and thus claim partial or complete copyright to, including but not limited to all 3d models, texture images, scene files, revisions, pre-processed rendered images and post-processed rendered images generated through the use of 3D and 2D digital content creation software used by the artists which includes myself of course, and Mr. Baylis.

13.     While you may be aware of this case, and perhaps an article appearing in the Hollywood Reporter some years ago, that claims the case was lost by the plaintiff (Mr Baylis, supported by several of the artists from the VFX team); however this is simply not true. In fact its blatantly false. The reality is that "Iron Sky Universe", was never legally in possession of any works, including the final print of the time, scripts, IP rights, soundtrack or any other form of ancillary rights, whatsoever. Therefore in the bizarre determination of the Finnish Market Court, as no rights could be demonstrated having been transferred to it correctly by any standard of normal practice in any territory or country, by those who claimed they had the rights to transfer into that entity in the first place i.e, Blind Spot Pictures, Energia.

DECLARATION OF KELLY MYERS IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
No. 2:23-cv-01653-RSM                                                                                       Page 3

14. Finland, does not have a concept in its copyright law known more commonly as "work for hire" in other countries including the US, Canada, United Kingdom and dozens of others. Such a concept in the United States and Canada as you are well aware would automatically assign such copyright from an artist to a person or entity that hires said artist to produce a creative work. Yet there is just that. In what form?

15. While there may be a lose application of how the "work for hire" concepts would apply in a scenario where I, as an artist, am commissioned to produce a painting and then paid for the resulting painting. There is an understanding that that is a physical tangible work of art and possession being transferred on payment is obvious and expected as it is a 'one of'. For the painting only, the physical tangible work of art on canvas or whatever it may be. There is no concept of this in Finland. The artist retains what are known in their legal system as "moral" rights to their works and cannot be simply or automatically transferred in a "work for hire" scenario as we in the United States would know it, and from my understanding even further, not so simply "signed away" via contract either.

16. Since I personally didn't assign any of my work or transfer it or license any rights to it to Blind Spot or Energia, and thus they couldn't have assigned anything of that nature to "Iron Sky Universe", effectively the Finnish Market Court determined that Iron Sky Universe "won", because no rights existed to what was claimed to have been in its possession as an intellectual property. Really, no one, "won" as the Hollywood Reporter Article claimed. It' was in reality, a bought and paid for hit piece by the "producer" or Iron Sky, Tero [Kaukomaa], who needed to deflect from the issues concerning the rights to the property as they were illegally raising money to fund a sequel and filmed, and sold one, with no actually

1  legal rights in their possession to do so. The Finnish Court decision in that case is very poorly understood let alone translated into English.

17. While I am not a legal expert, in consultation with IP lawyers here in the United States and Canada, I will share my own personal situation finding. In the case outcome, it was established that no contract or record of even payment to me and many other artists in the VFX department could be provided as a demonstration of a "work for hire" by "Iron Sky Universe", Blind Spot Pictures or Energia either, could be produced. This is incredibly significant, because the defendants attempted to use "work for hire" as a reason for claiming ownership in the first.

18. There is simply no chain of title of any kind that would demonstrate this ownership and thus rights to the IP of Iron Sky being held by Iron Sky Universe or any other entity under Finnish Law. Finnish law, also absolves itself and its ands courts rulings from being used in any other application of law from outside Finland.

19. Since no one in Finland was transferred any rights either under the guise of work for hire, automatic or contractually transferred them along with any moral rights, nothing was transferable to begin with and thus could not be in existence to be transferred to anyone or anything else.

20. While this may come across as a bit of a loop, US persons in the course of creating a work of art as it is in many common law based nations, retain copyright to that work automatically on its creation. While we were making the movie, we were literally copyrighting it and everything we created along the way, as we were going, polygon for polygon, pixel for pixel frame for frame, shot for shot, as UK, Canadian or US nationals; regardless of where that work was 'created' and thus all the artists retain their respective copyrights to their work under the color of law if not in straight black and white text of US and Canadian Copyright Law.

DECLARATION OF KELLY MYERS IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
No. 2:23-cv-01653-RSM                                                                 Page 5

21. Now I bring up US and Canadian Copyright law specifically in reference to my situation as I am both a citizen of the United States and Canada, and my companies have been in existence in both countries over the course of my career and while I was living in Canada at the time I was creating visual effects for Iron Sky, prior to having been on sight in Tampere, Finland for nearly 8 months before returning to Canada where I completed several addition shots shown in the film print, as a US person, I believe US copyright reigns supreme.

22. As artists our names are in the credits of the feature film and DVD/Blue Ray release along with my (now defunct corporately) company Declaration Pictures Inc., and another entity Liberty3d.com (still in operation) as the creators of the Visual Effects and even some of the software tools I had developed in order to make those works, and thus the imagery found in the final film print.

23. This demonstrates our copyright claim, and then further demonstrates that any rights to our works, have been or were illegally transferred to other entities, who then claimed ownership over assets (the actually 3D models, 2D images, work up files, etc.,) used to make those images found in the film print, and then again transferred those actual assets, to others, without our permission or consent. Which brings us to VALVE.

24. <u>I didn't transfer the rights of my works to anyone. Period. As established by the Finnish Court ruling.</u>

23. <u>My copyrights to the works found in games on Steam, have been violated under US Law and likely other nations and territories.</u>

24 Trevor Baylis was/is a UK National and served as a senior Visual Effects Artist and Modeling Supervisor for the Maya team. He was not an 'intern'. Another 'legal'

DECLARATION OF KELLY MYERS IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
No. 2:23-cv-01653-RSM                                                                                              Page 6

classification that was used by the defendants in the Iron Sky Universe case, as if he was some how magically released of his copyrights or moral rights to his works under such status.

25. He was a top notch professional and **he didn't get paid for his time or his work on the film. Thus, he retains his rights to his works as well. We transferred nothing to no one any time in terms of copyrights under US, CANADA or UK Law. Which again, is the only law that can be applied or referred to as Finnish law, absolves itself from being referenced outside of Finland.**

26. Any attempt by Valve Corporation to deny this, using the Finnish Market Court Case in their Motion for Summary Judgment is appalling, or simply a set of poorly understood legal choices made by their legal team. If it wasn't so upsetting, it would be rather comical, but it is.

27. When I was made aware of the use of our intellectual property in the form of 3D assets, 2D textures, scenes and other files, including the blatant misuse of the rendered images taken directly from the feature film print of Iron Sky and used in promotional videos for a title on Valve's service, I was livid.

28. I am highly considering taking legal action against Valve Corporation and other entities involved in the violation of my copyrights, in all territories and countries where the violations have taken place.

29. <u>**I essentially directed all of the "space battles" and "aerial combat" sequences shown in the film Iron Sky**</u> (there is proof of this in public). Those same sequences are used in promotion videos and still image marketing on Steam, Valves Digital Distribution Service and Storefront <u>and are likely derived DIRECTLY</u> from the masters used

DECLARATION OF KELLY MYERS IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
No. 2:23-cv-01653-RSM                                              Page 7

to make the final feature film print that I and my team of artists including Mr Baylis created and again, retain our copyrights to since their creation.

30. This is only possible if someone, gave them that data, who didn't have the rights to do so. Because it certainly wasn't me, I know it wasn't Mr. Baylis or any of the other VFX artists in my department who created them. Further violation of our copyrights of course, in the derived use of the digital assets transferred into "game engine" form. I gave no such permission for anyone anywhere at any time, in any country or territory for that derived form of use, either.

31. So, in conclusion; here we have situation involving multiple forms of copyright violations under US Law. First, in the direct illegal copying or derived, unlicensed, illegal use of imagery found in and taken from the feature film print or masters used to produce that feature film print, and other sub masters then replicated to DVD, BluRay, digital streaming services as well as theatrical distribution. Then, the more distressing component is as follows.

32. This was and still is, highly offensive to me as an artist, and that is the blatant violations in the form of derived, unlicensed use of the 3D/2D digital assets that we created that couldn't be bothered to check with anyone about who had legal rights to them in the first place and that is the developers of the titles of the games found on Valve featuring our works. The results are insulting. They took our art, mangled it and smashed it into a commercially released video game titles, and distributed them through Valve's Steam platform. All done without our permission.

33. Should anyone attempt to deflect this using some excuse that due to the nature of the original assets complexities, 'technical requirements', along with a lot of 'artistic license' required high amounts of modification to the original 3d model and 2D texture image assets to get them into game engine "form", such mangling of the work was required to accommodate "real-time" game engine technology and computer power at the time. To that I say, that's completely false. First of all, we did that already while working when creating the assets originally so as to get them all into the computer system requirements needed to have dozens if not hundreds and even thousands of ships, aircraft, etc., used to render the images that ended up on screen in the feature film print. Further to that, I've taken some of those exact assets we created and transferred them myself into the same commercial game engine platforms such as Unity3D and Unreal Engine, as is, without having to "mangle or mush" them in order to do so.

34. We were all very proud of the art we created. I won the equivalent of an Australian Oscar (AACTA – Best Visual Effects, 2012) as result of my efforts. Sadly, the producer of the film couldn't be bothered to pick up the tab for the cost of the statuette and ship me one from the Australian Academy of Cinema Television Arts.

35. In the end they couldn't even send me home on a plane like they promised to either, causing me to over extend my visitors visa to Finland, as they didn't want to pay for a work visa, since I wasn't "working" while there.

36. When I did manage to leave, this situation caused me to be stopped by authorities in Amsterdam, flying through Schiphol International airport on my way back to Vancouver. I finally did make it back and finished the last (and some of the biggest shots in

the film) at home, which also featured Trevor's work in the form of an asset that was stolen and used in gaming titles released on Valve.

37. The works that we created were highly praised by many in the film VFX industry especially by those in our respective 3D content creation tool user communities for which one of, I am a product evangelist and leading trainer for in the world. We took pride in that accomplishment.

38. We were told by many it was impossible to do, and some in the production itself actually worked to sabotage our efforts and some of those same people are the ones responsible for violating our rights in this matter as it all traces back to the fact that we never gave ours up.

39. This has been a brutal and highly distressing situation to see the abuses of the artists continuing on, after 12 years, this time by a company that shouldn't even remotely be in proximity to our work let alone be violating our copyrights and then when caught, tries to use a legal decision made in Finland by a court that essentially verifies no rights existed in Iron Sky Universe to be transferred out to anyone else, because no one actually had any of the rights to our copyright works, to transfer into it, in the first place. Let alone anything else related to Iron Sky, including "Iron Sky". It's a hell of a judgment, but its use by Valve is, and I will put it bluntly, goofy. Again, Finnish law, absolves itself from being used in courts outside of Finland.

40. Therefore, I implore the court to weight these facts and clearly understand the issues that I have raised and here have added to Mr. Baylis' efforts, fighting against Valve in this matter. It is time to finally break this cycle of abuse of our copyrights by denying the

DECLARATION OF KELLY MYERS IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
No. 2:23-cv-01653-RSM                                             Page 10

Motion of Summary Judgment filing by Valve Corporation in response to Mr Baylis' suit against them, in the very least.

41. I believe there is a very solid argument for a case to be brought on my own, seeking compensation for irreparable harm and as such, a very sizable amount for each violation per copy sold, plus unlicensed, without permission ancillary use of my copyright works in their promotion for sale on Steam.

Sincerely,

Kelly Lee Myers

CG Supervisor, Visual Effects Artist - Iron Sky
Declaration Pictures
Liberty3d.com
1015 S. 3 rd Street, Unit 205
Las Vegas, NV. 89101
info@declarationpictures.co
Ph. 747-400-7425

Executed in Las Vegas, U.S. state of Nevada, on this 15th day of September, 2025.

Kelly Lee Myers

CERTIFICATE OF SERVICE FORM

FOR ELECTRONIC FILINGS

I hereby certify that on 15th September 2025 I electronically filed the foregoing document

with the United States District Court

Western District of Washington at Seattle by using the

CM/ECF system. I certify that the following parties or their counsel of

record are registered as ECF Filers and that they will be served by the

CM/ECF system:

Jeremy E Roller: jroller@aretelaw.com,

Jonah O. Harrison: jharrison@aretelaw.com,

jfischer@aretelaw.com,

kgreenberg@aretelaw.com

SCOTT BOLDEN

Director Intellectual Property Section Commercial Litigation Branch

Civil Division U.S. Department of Justice

Scott.Bolden@usdoj.gov

Dated: 15th September 2025

*(signature: Trevor Baylis)*

Trevor Kevin Baylis

Jankanraitti

Tampere 33560, FINLAND

DECLARATION OF KELLY MYERS IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
No. 2:23-cv-01653-RSM                                                                     Page 12