# EXHIBIT 1

**EXHIBIT 1[1]**

| Valve's Discovery Request | Baylis' Objections | Relevancy of Discovery Request |
|---|---|---|
| **INTERROGATORIES** | | |
| **Interrogatory No. 1 [Employment History]:**<br><br>Describe your complete employment history to date, including identifying each employer, job title, job description, dates of employment, location, supervisor or manager, salary or rate of pay, and reasons for leaving the employment. | Objection. Asks for irrelevant information unrelated to copyright law. | Interrogatory No. 1 is relevant to Baylis' allegations of copyright ownership in *Iron Sky*. In his Second Amended Complaint ("SAC"), Dkt. # 25, Baylis alleges that he is a "highly experienced animator who is a joint author of the film Iron Sky . . . ." Dkt. # 25, ¶ 33. He also alleges that "[a]n artist such as Baylis has complete mastery over the audio visual works they create." *Id.*, ¶ 35. He further alleges he was a "lead artist" (*Id.*, ¶52) and was a "team modeling supervisor" on the film. *Id.*, ¶54. To explore the truth of his allegations of being a "highly experienced animator" and the truth of Baylis' allegations as to the nature and extent of the artistic skills that he provided to the Animated Works in *Iron Sky* and whether those skills were offered independently or under close supervision, Valve is entitled to explore Baylis' employment history, which directly relates to his alleged experience and skills. Baylis' blanket objection as to relevancy fails and is insufficient to excuse him from answering this relevant interrogatory. |
| **Interrogatory No. 2 [Educational History]:** | Objection. Asks for irrelevant information unrelated to copyright law. | For the same reason that Valve is entitled to explore Baylis' employment history to determine the truth of Baylis' allegations of being a "highly skilled |

---

[1] For the Court's convenience, given the large number of discovery requests involved in this Motion, Valve has copied verbatim into this Exhibit each of the requests at issue and Baylis' corresponding objections, along with Valve's response to each objection. Also for the Court's convenience, because so many discovery requests are covered in this Motion, Valve has included bracketed summaries of each discovery request for ease of reference.

1

| | | |
|---|---|---|
| Provide a complete description of your educational history, including identifying all post-elementary school educational institutions attended, dates of attendance, whether you graduated, degrees obtained, if any, and any completed certified training programs. | | animator" who worked independently and as a skilled artist on the Animated Works of *Iron Sky*, Valve is entitled to explore Baylis' education background, which also speaks directly to Baylis' alleged skill level and experience. Baylis' blanket objection as to relevancy fails and is insufficient to excuse him from answering this relevant interrogatory. |
| **Interrogatory No. 3** [Other legal proceedings]:<br><br>Excluding this Lawsuit and the Finnish Market Court Matter, identify all legal proceedings in any country in which you have participated, including the nature and type of proceeding, the case name, case number, date, location, parties involved, your affiliation with the matter, and the resolution, if any, of the matter. | Objection. Asks for irrelevant information unrelated to copyright law. | Interrogatory No. 3 is relevant to this suit because it allows Valve to determine if Baylis has been involved in other copyright litigation that may relate to or even be determinative of the issues in this Lawsuit. For example, in his SAC, Baylis did not inform the Court that he had previously filed a copyright lawsuit in Finland seeking a determination of his copyrights in *Iron Sky* and its Animated Works (*i.e.*, the same issues that he now brings before this Court) and the Finnish court found against him, finding he holds no such copyrights. (Valve's Motion for Summary Judgment seeking to dismiss this case based on comity and collateral estoppel based on the Finnish court decision is currently pending before the Court. *See*, Dkt. # 76). Valve is entitled to discover whether Baylis has been involved in any other similar lawsuits involving his alleged copyrights in *Iron Sky* or its Animated Works. In addition to potentially revealing further grounds for asserting collateral estoppel, discovery into other lawsuits is also relevant because prior suits could include testimony or evidence that is inconsistent with Baylis' allegations in this matter, including, for example, Baylis' alleged experience as an animator, his alleged contribution to the Animated Works, his |

2

| | | |
|---|---|---|
| | | alleged citizenship, residency, and his general background. Prior litigation matters may also shed light on Baylis' credibility, such as, for example, if he has been found to have committed fraud or misrepresentation. Baylis' blanket objection as to relevancy is insufficient to excuse him from answering this relevant interrogatory. |
| **Interrogatory No. 4** [Assertions of copyright ownership in *Iron Sky*]:<br><br>Excluding this Lawsuit, the Finnish Market Court Matter, and your August 11, 2023 application with the United States Copyright Office, identify in detail all other attempts you have made to assert copyright ownership in the *Iron Sky* film or its Animated Works, including, without limitation, through copyright registration, lawsuits, or demand letters or emails to third parties. For each such attempt, identify the nature of the attempt, the dates, the parties involved, and the result, if any. | Objection. Asks for irrelevant information as there is a "no formalities rule" in European copyright law for copyright to arise and it is purely a question of fact. | Contrary to Baylis' conclusory objection, Interrogatory No. 4 is obviously highly relevant. Similar to the potential application of comity and collateral estoppel based on the Finnish court case holding that Baylis holds no copyrights in *Iron Sky* or its Animated Works (*see* Dkt. # 76), any previous denials to Baylis' assertion of copyright ownership in *Iron Sky* by other authorities, entities or individuals could be highly relevant or even determinative here. Similarly, if Baylis has made any other attempt to assert copyright ownership in *Iron Sky*, any inconsistent statements, testimony, or evidence regarding such assertions of copyright ownership made during such attempts could be directly relevant to his allegations of copyright ownership or infringement in this case. Baylis' conclusory objection as to relevancy is insufficient to excuse him from answering this relevant interrogatory. |
| **Interrogatory No. 5** [Supervision during *Iron Sky*]:<br><br>During the time you were involved in the *Iron Sky* film as described in your Complaint, identify each person to | Objection. Baylis was not employed by Blind Spot Pictures nor was he an employee of Energia Productions and therefore could not have been under any management or | Baylis' objection is evasive, nonresponsive and fails to offer a justification for failing to answer this interrogatory. The issue of whether Baylis worked independently or under supervision will be relevant to determining the nature and scope of his alleged contribution to the Animated Works in which he |

3

| | | |
|---|---|---|
| whom you reported or who supervised, managed, directed, oversaw, assisted, or guided your work or animation efforts and describe in detail each person's position, title, and role. | supervision as a mater [*sic*] of fact. | claims copyright ownership. Interrogatory No. 5 does not ask whether Baylis was formally employed. It asks more broadly for the identification of anyone who, *inter alia*, oversaw, guided, directed, or assisted his work. Baylis cannot avoid answering this highly relevant Interrogatory based on his legal conclusion that he was not formally employed. |
| **Interrogatory No. 6** [Others' involvement in the work]:<br><br>For each Animated Work in which you claim copyright ownership in this Lawsuit, identify each person who participated or was involved in the creation of the Animated Work in any manner, including, without limitation, conceptualizing, planning, designing, programming, animating, reviewing, revising or supervising the Animated Work, and describe in detail each person's involvement. | Objection. "Joint authorship" analysis in copyright law doesn't require such things and concepts and ideas are not subject to copyright. There is a presumption of authorship rule under Berne Convention article 15 and a persons [*sic*] name on the work is all that is required for protection under the Berne convention. Any author of a joint work may lay claim to a [*sic*] authorship of a work under Berne Convention article 6bis. Baylis' name is on the work at issue in this case. Authorship is a question of fact. | In this lawsuit, Baylis alleges that he worked with other artists on the Animated Works. *See, e.g.*, Dkt. 25, ¶¶ 52, 54. Thus, Baylis himself has raised factual issues as to who, exactly, was involved in the Animated Works for which he claims copyright ownership, and the nature and extent of their contributions compared to his. While Baylis will be free to make his legal arguments regarding joint authorship on summary judgment or in his trial brief, during discovery Valve is entitled to this highly relevant information as to who, exactly, was involved in creating the works for which Baylis claims copyright ownership. |
| **Interrogatory No. 7** [Original contributions]:<br><br>To the extent you are asserting you provided unique, original contributions to the film *Iron Sky* or the Animated Works, or the video | Objection. "Joint authorship" analysis in copyright law doesn't require such things and concepts and ideas are not subject to copyright. There is a presumption of authorship rule under Berne Convention article | Interrogatory No. 7 is highly relevant because it relates to the element of originality, which is a required element of copyright ownership under U.S. copyright law. *See, e.g.*, *N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992) (validity of a copyright may be challenged by showing |

| | | |
|---|---|---|
| game *Iron Sky: Invasion*, describe in detail the bases for that assertion | 15 and a persons [*sic*] name on the work is all that is required for protection under the Berne convention. Any author of a joint work may lay claim to a [*sic*] authorship of a work under Berne Convention article 6bis. Baylis' name is on the work at issue in this case. Authorship is a question of fact. | that the plaintiff's work is not original; "Originality is the indispensable prerequisite for copyrightability."). Because Baylis seeks copyright ownership in *Iron Sky* and some of its Animated Works, Valve is entitled to challenge the originality of the work and it is thus entitled to discovery into this core issue. Baylis' conclusory (and incorrect) legal conclusions do not excuse him from answering this highly relevant interrogatory. |
| **Interrogatory No. 8** [Joint author]: Describe in detail all facts upon which you base the allegation in your Complaint that you are a joint author of the film *Iron Sky*. | [Same objection as objection to Interrogatory No. 7] | Interrogatory No. 8 is obviously directly and highly relevant to this lawsuit as it simply asks for the factual basis that supports Baylis' assertion that he is a joint author of *Iron Sky*. Instead of answering, Baylis again offers only a conclusory (and incorrect) legal argument. Valve is entitled to an answer to this relevant interrogatory. |
| **INTERROGATORY NO. 9** [First publication]: Explain in detail all grounds upon which you base your allegation in the Complaint that the film Iron Sky was first published at the Berlin International Film Festival in Berlin, Germany on February 11, 2012, including, without limitation, a description of any alleged distribution of the film at the film festival. | Objection: It is a Judicially noticeable fact that Iron Sky was first published at the Berlin International Film Festival in Berlin, Germany on February 11, 2012 and offered for further distribution with consent from all authors involved, who had the exclusive right of "first publication" to choose where Iron Sky should be first published under Berne Convention "first publication" and "country of origin" rules | Baylis does not object to this Interrogatory on relevancy grounds, but instead argues that the issue of whether the display of *Iron Sky* at the Berlin International Film Festival constitutes first publication should be deemed a judicially noticeable fact. While Baylis is free to make such legal arguments on summary judgment or at trial, it does not excuse him from answering this Interrogatory, or, in the alternative, from verifying that he does not possess any information in response to this Interrogatory. |

5

| | | |
|---|---|---|
| | Articles 3 to 5 including Article 5(4(a). | |
| **Interrogatory No. 13** [Copyright registration]: Identify all individuals with knowledge of your copyright registration, including but not limited to any copyright registration you have obtained and any efforts to obtain a copyright registration you have made in the United States or any other jurisdiction. | Objection. Asks for irrelevant information as there is a "no formalities rule" in European copyright law for copyright to arise and it is purely a question of fact. | The identification of individuals who have knowledge of Baylis' efforts to obtain copyright registration in the U.S. or other jurisdictions is highly relevant as it may lead to witness' who are knowledgeable as to the underlying facts supporting or detracting from Baylis' alleged copyright ownership in *Iron Sky* or its Animated Works. Baylis' conclusory (and incorrect) legal conclusion regarding European copyright law does not excuse him from providing this highly relevant information. |
| **REQUESTS FOR PRODUCTION** | | |
| **Request for Production No. 1** [Work agreements] Produce all agreements and any related documents or correspondence regarding or relating to work you performed with respect to the film *Iron Sky* or any derivative work, including without limitation any and all "work training" agreements or "adult job training agreements" referred to in Paragraphs 40 and 82-84 of your Complaint. | Objection: Baylis objects to Valve's Request on the basis that Valve have already admitted such information is irrelevant, "seek[s] irrelevant information not reasonably calculated to lead to the discovery of admissible evidence" (Defendant Valve Corporation's Objections To Plaintiff's Request For "Chain Of Title Documents". May 29, 2025). Never the less [*sic*], for chain of title information see, pages 2, 3, 4 of this document above. | Baylis is incorrect that Valve has ever "admitted such information is irrelevant." It has not. To the contrary, documents relating to Baylis' employment relationship during his work on *Iron Sky* are highly relevant, even according to Baylis himself. In his SAC, Baylis presents the question as to whether his alleged copyrights in *Iron Sky* can be assigned pursuant to a foreign employment contract (Dkt. # 25, ¶ 16) and he alleges factual issues as to the contractual nature of his employment with *Iron Sky's* producers. *Id.*, ¶¶ 16, 17, 40, 41, and 43. Specifically, Baylis alleges he had no employment contract but instead was working on the film under a work training agreement. *Id.* Valve is entitled to discovery into the exact nature of Baylis' employment during the production of *Iron Sky*, including whether he was working under an |

6

| | | employment agreement that included the assignment of copyrights. |
|---|---|---|
| **Request for Production No. 2** [Communications relating to Baylis' work on *Iron Sky*] Excluding your communications with undersigned counsel or Defendant Valve Corporation, produce all communications to or from you and any third party discussing or relating to your work on the film *Iron Sky* or its Animated Works, or the video game *Iron Sky: Invasion*, from 2011 to the present. | Objection: Seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. | The relevancy of this document request should be self-evident. Baylis is suing Valve for copyright infringement of *Iron Sky* and its Animated Works. Thus, Baylis' communications with third parties regarding his work on *Iron Sky* or its Animated Works is highly relevant to many issues in this case, including, among many other things, the nature and extent of Baylis' employment relationship when he worked on *Iron Sky*, the originality of his contribution to the Animated Works, including, for example, the extent to which Baylis worked under close supervision in carrying out discrete tasks versus providing original, creative work, and whether Baylis assigned any copyrights he allegedly possessed. Baylis cannot escape his obligation to produce documents in response to this highly relevant request by simply making a vague, conclusory, and unfounded objection regarding relevancy. |
| **Request for Production No. 3** [Documents relating to attempts to assert copyright ownership] Produce all communications and documents referring or relating to your Answer to Interrogatory No. 4 [regarding all attempts to assert copyright ownership in *Iron Sky* or its Animated Parts] | Objection: Seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. | The relevancy of this document request is clear. The core issue in this case Baylis' assertion of copyright ownership in *Iron Sky* and its Animated Works. Valve is entitled to discover whether Baylis has previously been denied in any other attempts to assert copyright ownership in *Iron Sky* and to discover what other statements or assertions Baylis may have made in other contexts regarding such alleged copyright ownership. |

7

| | | |
|---|---|---|
| **Request for Production No. 4** [Documents relating to others who participated in the creation of the Animated Works] Produce all communications and documents that refer or relate to your Answer to Interrogatory No. 6 [other's involvement in the work], including any communications or documents that identify the nature, scope, or manner of each identified person's involvement with the Animated Works. | Objection: "Joint authorship" analysis in copyright law doesn't require such things and concepts and ideas are not subject to copyright. There is a presumption of authorship rule under Berne Convention article 15 and a persons [*sic*] name on the work is all that is required for protection under the Berne convention. Any author of a joint work may lay claim to a [*sic*] authorship of a work under Berne Convention article 6bis. Baylis' name is on the work at issue in this case. Authorship is a question of fact. | The relevancy of this document request is clear. Baylis is seeking copyright ownership in *Iron Sky* and its Animated Works. Valve is thus entitled to discovery into who created or assisted in creating the Animated Works at issue to determine the nature and extent of Baylis' alleged contribution to the Animated Works and whether his alleged contribution is significant and original enough to create copyright ownership. Baylis' objects with a (incorrect) legal argument regarding the nature of joint authorship under the Berne Convention. While Baylis is free to make his legal arguments on summary judgement or at trial, he cannot refuse to provide responsive, relevant documents based on his intended future legal arguments. |
| **Request for Production No. 5** [Documents relating to first publication] Produce all communications and documents that support, detract from, or relate to your allegation in the Complaint that the film *Iron Sky* was first published at the Berlin International Film Festival in Berlin, Germany on February 11, 2012, including, without limitation, any communications or documents related to any alleged distribution of the *Iron Sky* film at the film festival. | Objection: It is a Judicially noticeable fact that Iron Sky was first published at the Berlin International Film Festival in Berlin, Germany on February 11, 2012 and offered for further distribution with consent from all authors involved, who had the exclusive right of "first publication" to choose where Iron Sky should be first published under Berne Convention "first publication" and "country of origin" rules | Baylis does not object to this document request on relevancy grounds but instead argues that the issue of whether the display of *Iron Sky* at the Berlin International Film Festival constitutes first publication should be deemed a judicially noticeable fact. While Baylis is free to make such legal arguments on summary judgment or at trial, it does not excuse him from providing responsive documents to this relevant document request or, in the alternative, from verifying that he does not possess any responsive documents. |

8

| | Articles 3 to 5 including Article 5(4(a). | |
|---|---|---|
| **Request for Production No. 6** [Documents relating to originality]<br><br>To the extent you assert that you provided your own unique, creative and original work to the film *Iron Sky* or its Animated Works, or the video game *Iron Sky: Invasion*, produce all documents and communications that support, detract from, or relate to that assertion. | Objection: "Joint authorship" analysis in copyright law doesn't require such things and concepts and ideas are not subject to copyright. There is a presumption of authorship rule under Berne Convention article 15 and a persons [*sic*] name on the work is all that is required for protection under the Berne convention. Any author of a joint work may lay claim to a [*sic*] authorship of a work under Berne Convention article 6bis. Baylis' name is on the work at issue in this case. Authorship is a question of fact. | The relevancy of this document request is clear. Baylis is seeking copyright ownership in *Iron Sky* and its Animated Works and a core element of his copyright claim is originality. Valve is thus entitled to discovery into the originality element and documents that relate to whether Baylis provided unique, creative, original contributions to the Animated Works. Baylis' objects with a (incorrect) legal argument regarding the nature of joint authorship under the Berne Convention. While Baylis is free to make his legal arguments on summary judgement or at trial, he cannot refuse to provide responsive, relevant documents to this highly relevant document request based on his intended future legal arguments. |
| **Request for Production No. 7** [Damages]<br><br>Produce all communications and documents that support, detract from, or relate to your alleged damages and the calculation of those damages. | Objection: Requires further discovery. | Baylis is subject to Rule 34(b)(2)'s obligation to timely respond to these requests. To the extent Baylis seeks additional time to provide responsive documents to this Request, he is required to seek a stipulation or obtain an order from the Court, neither of which he has done. |
| **Request for Production No. 8** [Drafts of the Animated Works] | Objection: Seeks irrelevant information not reasonably calculated to lead to the | Baylis is alleging copyright ownership in the Animated Works. Thus, it is indisputable that drafts of those Animated Works are extremely relevant to this action. Among other things, the drafts could provide |

9

| | | |
|---|---|---|
| Produce all drafts of the Animated Works. | discovery of admissible evidence. | information about the nature and extent of Baylis' alleged contribution to those Works and the nature and extent of others' contributions to the Works. |
| **Request for Production No. 9** [Complete copies of the Animated Works]<br><br>Produce complete copies of the Animated Works | Objection: Seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence, or can be obtained by Valve from Topware Interactive. | Baylis has brought suit against Valve asserting copyright ownership in the Animated Works and thus the Animated Works are the very core of this case. It is hard to imagine more relevant documents than copies of those Animated Works. Baylis' assertion that copies of the Animated Works are irrelevant lacks good faith. He must be compelled to respond. |
| **Request for Production No. 10** [Documents relating to all persons involved in creating Animated Works]<br><br>Produce documents sufficient to show all persons who participated in the conception, development, and creation of the Animated Works. | [No objection or response provided.] | Baylis did not object to this Request or provide any response. He should be required to timely produce all responsive documents to this relevant document request. |
| **Request for Production No. 11** [Documents relating to alleged similarities]<br><br>Produce all communications and documents referring or relating to your Answer to Interrogatory No. 11 [Rog. 11 seeks identification of all alleged similarities between the Animated Works and the *Iron Sky: Invasion* video game] | Objection: Nonsensical. Seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. | Baylis has asserted a copyright infringement claim against Valve based on the allegations that the video game *Iron Sky: Invasion*, which is hosted on Valve's Steam platform, infringes on Baylis' alleged copyrights in the Animated Works. Thus, a core issue in this case is the similarities between the Animated Works and the allegedly infringing video game. There can be no dispute that documents relating to those alleged similarities are highly relevant. Baylis' objection that such documents are not relevant is not in good faith and he should be required to respond. |

10

| **Request for Production No. 12** [Documents relating to other lawsuits] Produce all documents and pleadings you have submitted or have in your control or possession in any matter other than this lawsuit, including without limitation all exhibits, transcripts, pleadings and communications arising from or related to the litigation matters you participated in in Finland regarding *Iron Sky* or the copyrights and works at issue in this lawsuit. | Objection: Seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence Never the less [*sic*], for chain of title information see, pages 2, 3, 4 of this document above. | Documents relating to other lawsuits or legal actions relating to *Iron Sky* or the copyrights at issue in this lawsuit are highly relevant. Such prior proceedings, including Baylis' prior lawsuit in Finland in which the Finnish court found he holds no copyright ownership in *Iron Sky* or its Animated Works (a lawsuit that Baylis did not disclose when he filed this Lawsuit asking this Court to hold the opposite of the Finnish court decision), could be determinative of issues in this suit. *See, e.g.,* Valve's Motion for Summary Judgment seeking dismissal based on comity and collateral estoppel. Dkt. # 76. Valve is entitled to discover whether Baylis has been involved in any other similar lawsuits involving his alleged copyrights in *Iron Sky* or its Animated Works. In addition to potentially revealing further grounds for asserting collateral estoppel, discovery into other lawsuits is also relevant because prior suits could also provide information directly relating to key issues in this matter, including, for example the nature and extent of Baylis' alleged contributions to the Animated Works or the assignment of any alleged copyrights. Baylis' objection that such documents are irrelevant is not made in good faith and Baylis must produce any responsive documents in his possession or control. |