The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| TREVOR KEVIN BAYLIS,<br><br>          Plaintiff, *(pro se)*.<br><br>v.<br><br>VALVE CORPORATION,<br><br>          Defendant. | Case No. 2:23-cv-01653-RSM<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT VALVE CORPORATIONS' MOTION TO COMPEL RESPONSES TO VALVE'S FIRST DISCOVERY REQUESTS**<br><br>ORAL ARGUMENT REQUESTED<br><br>16th October 2025 |

## 1. INTRODUCTION

Defendant's ("Valve") "Defendant Valve Corporations' Motion To Compel Responses To Valve's First Discovery Requests ("MTC"), is not just frivolous but it is also farcical because it is direct evidence that Valve have not done their own "Chain of Title" due diligence as normally required by major distributors of audio visual works.[1,2]

Valve's MTC is a clear and unequivocal admission that Valve do not have a license via any "Chain of Title" from copyright owners of Iron Sky such as from the Plaintiff in this case ("Baylis") to distribute images from the Iron Sky film ("Work") or any other material including adaptations of the Work such as video games based on the Work. See Baylis' Second Amended Complaint ("SAC") Dkt. 25, ¶¶ 23, 43, 69, 73, 78, 81, 82, 83, 85, 110, 114 and 132.

Valve's counsel (Harrison") then has the audacity to ask this court to award them attorneys fees from bringing this frivolous and farcical MTC!

## 2. BAYLIS HAS PROVIDED VALVE WITH REQUESTED INFORMATION

**A. Baylis Has Already Provided Valve With Information Requested.**

**Valve's Interrogatory No. 1, 2, 3**, **and Request for Production No. 1. and 12**

See generally SAC Dkt 25. In particular Dkt 25, ¶¶ 40-41; 82-83 which demonstrates Baylis was not in an employment relationship and therefore was NOT "supervised" by any

---

[1] Entertainment Law Resources - CHAIN OF TITLE. 10/6/2015. "In examining chain of title, one has to determine exactly which rights are being granted and which are reserved. The grant of rights to adapt a book into a movie could be to make a single movie or it could be for an unlimited number of movies. It could include the right to make a television series based on the book, or not. Authors, who grant movie adaptation rights to their books, often reserve radio rights, live television rights, and dramatic rights, which is the right to turn the book into a play. They also may reserve author-written sequel rights, which would allow the author to write subsequent books using the same characters as the original book."
https://www.marklitwak.com/blog/chain-of-title

[2] Importance of Chain of Title - https://www.youtube.com/watch?v=Jp3YvOQ_VVs

employer such as Blind Spot Pictures ("Producers") nor by Samuli Torssonen of Energia Productions ("Torssonen").

Furthermore, attached to Baylis' Plaintiff's Opposition To Defendant's Motion For Summary Judgment, Dkt 84 and 85 are video exhibits (Dkt 85. Baylis Dec., Exs. F, G, H, I, J, K, L, M, N, O and P) of Baylis demonstrating his skills as a high level 3D animator using the 3D software Maya at his home. Valve even complained to this court about those files (Dkt 83).

Additionally, see Judge Oskar Kulmala's dicta in Baylis v Troll VFX. Dkt 49-3, Baylis Dec. Ex. D at BAYLIS_26. "one cannot come to any other conclusion than that Baylis had worked as an animator before his employment with Troll in the Iron Sky film project." (Judge Oskar Kulmala). And also See Dkt 45 Page 10 "The plaintiff Baylis has said that he studied animation at the London Metropolitan University between 2002 and 2005. He was the best in his class and graduated with very good grades. At the university, he had used the Maya program" (Judge Oskar Kulmala) - and Dkt 49-3, Baylis Dec. Ex. C at BAYLIS_11, "In relation to the aforementioned animations, Baylis has shown, for example, regarding Maya files K21, K27 and K28, which are evidence, that numerous and numerous files and meta-files have his name, i.e. he was the author of the animation" (Judge Oskar Kulmala) - and BAYLIS_26, "Baylis has unquestionably rigged the Iron Sky project, which he has exemplarily demonstrated with Maya in court... Puukko, who in the same project was responsible for the technical implementation of the film, has said that Baylis also did his work involving animation independently and that Baylis had been given more responsibility as the project progressed, as he was responsible for the modeling and animation of the entire Götterdämmerung, among other things, and no one else had even started from that beginning other than Baylis" (Judge Oskar Kulmala).

Baylis has provided Valve with the Address of Pirkanmaa District Court in Tampere Finland (see Dkt 96-1 Ex. B at Page 18 of 45) where they can obtain all public record documents relating to Baylis v Troll VFX, which include Baylis CV at the time, and University Grades (see Dkt 49-3, Baylis Dec. Ex. C at BAYLIS_8 -9), as well as voice recordings of the whole trial.

**Valve's Interrogatory No. 4 and Request for Production No. 3.** See Berne Convention Article 5(2) "The enjoyment and the exercise of these rights shall not be subject to any formality". Additionally see Dkt 68-2 Ex. B pages 5-6 of 8 especially where Baylis make reference to Cong v Valve and the Judges comments about there being a "no formalities rule" for copyright protection of foreign works.

> "Valve are aware of this fact too because they have been informed themselves directly as party to another action in this court, Cong v. Zhao (2:21-cv-01703) District Court, W.D. Washington (#Dkt 51. Page 6), wherein the judge states, For any United States work, Section 411 of the Act requires that "[e]xcept for an action brought for a violation of the rights of the author under Section 106A(a)4 . . . no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). However, foreign works are exempt from the rule requiring registration of a work prior to the filing of a lawsuit. **"Congress removed foreign works from Section 411(a)'s dominion in order to comply with the Berne Convention for the Protection of Literary and Artistic Works' bar on copyright formalities for such works." Fourth Est., 586 U.S. at 306–07 (citation omitted).** Cong v. Zhao, 2:21-cv-01703, (W.D. Wash. Jun 21, 2024) ECF No. 51. Page 6. (Dkt 68-2 Ex. B pages 5-6 of 8) [Emphasis added].

**Interrogatory No. 5** Baylis worked "unsupervised". Baylis was the oldest member of the Iron Sky team and was NOT an employee of the Producers nor of Torssonen (who were in Australia or Germany at times). This meant Baylis could walk out of the door at any time and had no contractual obligation to ensure the completion of the film. Baylis had the most skills with Maya 3D software in the team and is literally the only person who could even open up some of the more complex files and ensure they opened up correctly, and also demonstrate how the animations work! It's ludicrous and delusional to suggest Baylis was being

"supervised." Baylis simply worked independently as a team member and is the only person to have actually demonstrated the animation files in all previous court cases (Baylis v Troll and MAO302/18) because he is the only one with the competence to be able to do so. To put it another way, no defendant in any of those cases has even attempted to demonstrate the 3D animation files directly from the Maya software interface. Those 3D animation files are extremely complex and custom made 3D animation files that require a significant amount of skill and computer power to even work with. Also, as well as, *not being in the country, (Finland) for large parts of the 3D animation production* Torssonen was an amateur and had no physical or cognitive ability to supervise Baylis in using Maya software as Torssonen hardly knew how to use it himself. Valve's counsel would be equally inept at using the files.

**Interrogatory No. 6, 13 and Request for Production No. 4 and No. 10** There has never been a dispute from the Producers that Baylis is not responsible for the work he created. There is also a film credit list at the end of the film (Dkt 85. Baylis_Dec_Ex_B1) which Valve can refer to and also Baylis' United States Copyright Registration.

**Interrogatory No. 7, 8 and Request for Production No. 6** Originality *is* a question of fact. Whether a work involves sufficient creativity is a question of fact, see Dezendorf v. Twentieth Century-Fox Film Corp., 99 F.2d 850, 851 (9th Cir. 1938) (holding that "question of originality" is "one of fact, not of law"); Paul Goldstein, Goldstein on Copyright,§ 2.2.1 (3d ed. 2023) ("Courts have historically characterized originality as a question of fact."). Because "[o]riginality in this context means little more than a prohibition of actual copying," N. Coast Indus., 972 F.2d at 1033 (citation omitted),"a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying," Feist, 499 U.S. at 345.

The threshold of originality is an extremely low threshold to exceed and under EU law the minimum level of originality can be as low as an eleven word sentence, see Infopaq C-5/08.[3]

There has never been a dispute that Baylis' work hasn't "originated from him" and even just simple "polygon arrangement" of a 3D model is enough to reach such a low threshold as mentioned in Glass Egg Digital Media v. Gameloft where there was originality in 3D polygon models that resembled real world cars that were adapted for use in a game engine.

"Assuming the polygon arrangements can be separated from the shape and appearance of the cars, the above allegations are sufficient to show such arrangements are the product of expressive choices made at the discretion of Glass Egg's employees, and thus to show the Works were "independently created" by those employees and "possess[] at least some minimal degree of creativity." See Feist, 499 U.S. at 348; see also, e.g., Phantomalert, Inc. v. Google Inc., No. 15-CV-03986, 2016 WL 879758, at *1 (N.D. Cal. Mar. 8, 2016) (holding "information shown on a map is not subject to copyright protection," but "the arrangement of the facts depicted on the map is protectable where it shows some originality"; finding placement of traffic-related information on map protectable where based on "judgment calls") (emphasis in original). (3:17-cv-04165-MMC Glass Egg Digital Media v. Gameloft, Inc. et al Dkt 141 at Pages 8 and 9). Also see video exhibits (Dkt 85. Baylis Dec., Exs. F, G, H, I, J, K, L, M, N, O and P) of Baylis demonstrating his skills as a high level 3D animator using the 3D software Maya at his home.

---

[3] C-5/08 - Infopaq International. Judgment of the Court (Fourth Chamber) of 16 July 2009. Infopaq International A/S v Danske Dagblades Forening. https://curia.europa.eu/juris/liste.jsf?num=C-5/08

PLAINTIFF'S RESPONSE TO DEFENDANT VALVE CORPORATIONS' MOTION TO
COMPEL RESPONSES TO VALVE'S FIRST DISCOVERY REQUESTS
No. 2:23-cv-01653-RSM                                                                                                   Page 5

**Interrogatory No. 9 and Request for Production No. 5.** *It is* a Judicially noticeable fact that Iron Sky was first published at the Berlin International Film Festival in Berlin, Germany on February 11, 2012 and offered for further distribution,[4, 5] with consent from all authors involved, who had the exclusive right of "first publication" to choose where Iron Sky should be first published under Berne Convention "first publication"and "country of origin" rules Articles 3 to 5 including Article 5(4)(a).

**Request for Production No. 2.** This is simply a vague request and doesn't identify any specific communications with any specific person. Valve elaborate that they are seeking "the nature and extent of Baylis' employment relationship" (Dkt 95-1 Ex. 1 page 7) with Iron Sky producers but there wasn't any employment relationship. Certainly there wasn't any kind of "work for hire" arrangement. In any case Valve may seek such information from Iron Sky Universe Bankruptcy Estate which Baylis has previously directed them to for "Chain of Title" documentation see Dkt 96-1 Ex. B at Page 17 of 45. Valve should also have done this type of due diligence themselves before distributing Baylis' Work on their Steam Platform. Valve cannot escape their obligation to do their own due diligence into Iron Sky Chain of Title anymore than a second hand car dealership should avoid checking whether the cars they are selling were acquired legally.

**Request for Production No. 7.** This request requires further discovery to answer with specific precise accuracy which is not a requirement at this stage in proceeding but insofar as it is possible to calculate damages then see, Complaint For A Civil Case Dkt. 1-1 page 5.

---

[4] "Iron Sky has closed further deals for Stealth Media in Berlin, led by a North American deal with Entertainment One. For Israel, the film has now sold to Shoval." https://www.screendaily.com/distribution/iron-sky-confirms-us-israel-deals/5038145.article

[5] "Distribution in countries including Germany, the United Kingdom, China, France, Japan and Taiwan, has been secured, and negotiations for a U.S. deal are underway." https://www.latimes.com/archives/blogs/24-frames/story/2012-02-15/berlin-film-festival-with-iron-sky-nazis-land-on-moon

1  **Request for Production No. 8.**  Baylis hasn't worked from "drafts" of any previous

2  works as such. That's simply not how the 3D models and scenes came about because it would

3  be too time consuming to work in such ways given the small team working on the film.

4  Often Baylis just made stuff up on the fly and iterated models and scenes over time

5  as the storyboards from the film often just said the words "Full CGI" (Computer Generated

6  Imagery). See Dkt 44-2 Ex B at page 5 of 18. And see also, Dkt 85. Baylis Dec., Exs O, R, S and T.

7  Furthermore, Art director Jussi Lehtineimi ("Lehtineimi" )confirms that he was

8  NOT fully responsible for the final 3D models or other VFX and animation and that he

9  reverse engineered his concept work based on models created by Baylis and other members

10  of the Iron Sky team. Lehtineimi's main role was to provide reference material and 'mood

11  boards' (Dkt 85. Baylis Dec., Ex D1) for the modeling team to create their own stuff with.

12  If any "concept work" looks like the final models in the film then it is because they ARE

13  final 3D models and not "concept work at all". Lehtiniemi admitted to the courts that he

14  had reverse engineered his own 2D "concept work" based on images supplied to him from

15  the 3D modelers. He said it was "part of the process". (see Jussi Lehtiniemi's recorded

16  testimony from the Finnish Market Court Case MAO302/18 - https://www.youtube.com/

17  watch?v=FLAV56vBnVs&t=650s).

18  The voice recordings of Lehtineimi in Finnish Market Court, MAO302/18, whilst

19  publicly available on the above Youtube link, can also be obtained by Valve from the

20  information Baylis has already provided to them (Dkt 96-1 Ex. B page 19 of 45).

21  **Request for Production No. 9.** Again, Baylis has provided Valve with contact details

22  to obtain these files, see Dkt 96-1 Ex. B page 17-19 of 45. Additionally, Valve have a business

23  relationship with Topware Interactive and can easily obtain the 3D animation files from them.

24  Baylis has demonstrated the files in three previous court venues in Finland and those files are

obtainable from those court records. Furthermore, given that Valve's counsel will not have the actual competence of being able to open up and investigate the files himself due to him NOT being a 3D animation specialist then Baylis has provided video demonstrations of the files which are part of the evidentary record. See video exhibits (Dkt 85. Baylis Dec., Exs. F, G, H, I, J, K, L, M, N, O and P) of Baylis demonstrating his skills as a high level 3D animator using the 3D software Maya at his home.

**Request for Production No. 11**. There is no dispute that Topware Interactive have not received Baylis' Iron Sky work and created numerous derivative works based upon his work and there is no dispute from Valve that they are not distributing Iron Sky works on their Steam platform which Valve have obtained directly from Topware Interactive. The work Valve are distributing contains "multiple actual scenes" from the film Iron Sky which Baylis owns a copyright interest in and it has been adequately pled and demonstrated in Baylis, SAC Dkt. 25, pages 11-33, and 39-40, that the works at issues are "verbatim copies" of images in the film Iron Sky which also exist in the game play in many instances, and for the games' 3D models they are substantially similar abridged derivative works of Baylis' own works. Valve can obtain such files and "Chain of Title" documents they request from Topware Interactive or from the Iron Sky Universe Bankruptcy estate. Valve should have conducted their "Chain of Title" due diligence themselves before distributing Baylis works on their Steam Platform.

### 3. BAYLIS IS NOT ATTEMPTING TO PREVENT DISCOVERY

Under Fed. R. Civ. P. 26(b)(1), discovery is permitted regarding any non-privileged matter relevant to a party's claim or defense and proportional to the needs of the case.

Baylis has provided Valve with the contact details of the Iron Sky Bankruptcy Estate as

well as the Finnish court addresses regarding previous actions and where any person from the public can obtain case file information. The Iron Sky Bankruptcy Estate exist because <u>Iron Sky producers went bankrupt due to a lack of "Chain of Title"</u> and therefore a failure to demonstrate to distributors (NBC Universal) and investors in the Iron Sky Franchise that they actually "owned" the film Iron Sky. The Producers are just con men committing fraud.

In the Finnish Case that Valve rely on ("MAO302/18") there was a counterclaim by the Producers against Baylis to prevent him from using his own Iron Sky 3D animation works in the future. The Producers LOST that part of the MAO302/18 because they could NOT prove any ownership of the film Iron Sky thus proving the Producers are con men.

Valve have not grasped that if the Producers could not provide evidence of ownership of Iron Sky through written transfer of copyrights to the Finnish Market Court then that's because NONE exist. It's also the reason why the Producers themselves never registered "the film" Iron Sky at the United States Copyright Office ("USCO") because USCO requires "complete and accurate authorship information."  Which the Producers obviously could not provide, and nor could they provide any "work for hire" agreements to claim ownership of the film themselves (see, Dkt. 44-4. Harrison Decl., Ex. D, at Valve_016, ¶108).

Given that Valve are relying on MAO302/18 and that the Producers LOST their counterclaim against Baylis because the Producers don't have actual ownership of any of the Work (see, Dkt. 44-4. Harrison Decl., Ex. D, at Valve_016, ¶108) then logically Valve need to turn to the person most likely to have information  about authors of the 3D animation works - such as the Modeling Supervisor "Trevor Kevin Baylis!"

The person with the most direct knowledge of such things is Baylis! Valve don't seem to understand that Baylis really is the author of the work in question. He is the only person who has ever demonstrated to Work in previous court cases. Baylis has no problem with Valve obtaining previous court case records because all they do is demonstrate <u>that Baylis really is the author of the work in question!</u>

### 4. VALVE ARE ESTOPPED FROM RELITIGATING ISSUES IN PREVIOUS CASES

It appears that Valve's MTC is related to their Motion For Summary Judgement on Comity and Colateral Estoppel (Dkt 76) but Baylis has already provided Valve with the information they are requesting. Some of which is in the evidentiary record of this very case such as the Baylis v Troll VFX case (Dkt 49-3 Ex C) which examined Baylis' work and education history as well as confirmed him as being an animator on Iron Sky and author of the Iron Sky 3D animation files - in which his name appears in the metadata (Dkt 49-3 Ex C at BAYLIS_11).

Surely Valve should be estopped themselves from relitigating such issues as in Baylis v Troll VFX under the same collateral estoppel principle they invoke themselves because Baylis demonstrated Iron Sky 3D files to Judge Oskar Kulmala in that case and he confirmed Baylis was an animator and author of those works. What more do Valve want?

The fact that Baylis v Troll VFX existed before the Finnish Market Court Case MAO302/18 wherein that court unlawfully expropriated Baylis' economic rights under section 2 of the copyright act - A human rights violation[6] - whilst his authorship and status as an animator had been confirmed in a prior case Baylis v Troll VFX, is itself evidence of (one of many) grave procedural errors in MAO302/18. (See Dkts 45, 84, 85, 86 and 88).

---

[6] CASE OF SAFAROV v. AZERBAIJAN - State's failure to protect his intellectual property interests. https://hudoc.echr.coe.int/eng#{%22itemid%22:[%22001-218927%22]}

Even under Finnish Law such a ruling as MAO302/18 which is manifestly based on the misapplication of law can be set aside.[7]

Valve invocations of collateral estoppal also apply to Valve in that they should be prevented from relitigation of the same issues as in Baylis v Troll VFX such as Baylis' competence as an animator and whether he created the Work. Valve are genuinely being somewhat foolish here.

Valve are estopped themselves from relitigating Baylis v Troll VFX (As were the Finnish Market courts in MAO302/18). Valve can find the answers and information they need including documents and computer files from Baylis v Troll VFX which is public record, as well as from the Iron Sky Universe Bankruptcy estate, Topware Entertainment, previous court records from addresses Baylis has supplied to them, their own servers for their Steam Platform and even the evidentiary record in this case such as the supporting documents sent to USCO for Baylis' Registration (Dkt 44_2 Ex B).

In regards to determining authorship of Iron Sky Valve should seriously start to take note of the USCO determination <u>that Baylis is the author of his own Work</u>.

> "Thus, in determining whether a work is copyrightable, a joint work, or a work made for hire, the Office applies U.S. copyright law, even if the work was created in a foreign country, first published in a foreign country, or created by a citizen, domiciliary, or habitual resident of a foreign country.
>
> B. Identifying the Author
>
> The Supreme Court has explained that, unless the work is a work made for hire, "the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." [Citations ommited] (Dkt 66-1, P. 5-6.)

---

[7] "Reversal of a final judgment. Section 7 (109/1960). (1) A final judgment in a civil case may be reversed: (4) if the judgment is manifestly based on misapplication of the law. [Official Finnish version - https://www.wipo.int/wipolex/en/legislation/details/17978]

### 3. CONCLUSION

Valve's MTC is not just frivolous but it is also <u>farcical</u> because it is direct evidence that Valve have not done their own "Chain of Title" due diligence as normally required by major distributors of audio visual work. Valve have been given all the relevant information they need to determine that Iron Sky Producers NEVER "owned" Iron Sky and due to a lack of "Chain of Title" never could have granted adaptation rights to Topware Entertainment to develop video games which Valve are distributing on their Steam Platform for monetary gain.

Valve have no proof of Iron Sky copyright ownership and are no better than Iron Sky Producers who NEVER had any adaptation rights to Baylis' Work. Additionally, events surrounding, and leading up to Baylis v Troll VFX including the result of that case negates any "implied licensing" of Baylis work to anyone. This salient fact is one of the reasons the producers have attacked Baylis' professional record in Baylis v Troll VFX and calling Baylis an "intern" (also see Myers Dec. Dkt 76, ¶ 24 and 25) because he was unfairly sacked from Troll VFX (See Baylis v Troll VFX).

Valve's counsel (Harrison") then has the audacity to ask this court to award them attorneys fees for bringing this frivolous and farcical MTC! Especially as Valve are estopped themselves from relitigating issues already resolved in Baylis v Troll VFX. Harrison is wasting the Courts time in bringing such a frivolous motion when all the information Valve require that is **"relevant to a party's claim or defense and proportional to the needs of the case"** can be obtained from the information that Baylis has already provided (1) on the evidentiary record of this case; (2) Iron Sky Universe Bankruptcy Estate, (3) Pirkanmaa District Court records of Baylis v Troll VFX, (4) Finnish Market Court records related to MAO302/18, (5) Topware Entertainment, (6) Valve's own servers related to the Steam distribution platforms.

PLAINTIFF'S RESPONSE TO DEFENDANT VALVE CORPORATIONS' MOTION TO COMPEL RESPONSES TO VALVE'S FIRST DISCOVERY REQUESTS
No. 2:23-cv-01653-RSM                                                                    Page 12

   The real issue of Baylis' "right to claim authorship of his work" and subsequent "claim to authorship of his work" is in fact related to Berne Convention rules Article 6bis because his work was "First published" in Germany related to "country of origin rules" under Berne Convention Article 5(4)(a) and Finland's own Copyright Act precluded any authorship analysis in MAO302/18 under it's own Copyright Act §63(2) due to territoriality restrictions.

   Furthermore, Baylis and this Court can <u>simply ignore</u> MAO302/18 because Finnish copyright law is irrelevant to UK Citizens in terms of authorship criteria (Personal criteria), and *Iron Sky* was "First published" in Germany (Geographic criteria), Baylis' SAC #Dkt 25 pages 8-9. This court should simply adopt USCO's finding in Dkt 66-1 that Baylis is the author of the Work jointly with others listed in his USCO registration.

   For reasons set out above, Baylis respectfully request that Valve's MTC be denied.

PLAINTIFF'S RESPONSE TO DEFENDANT VALVE CORPORATIONS' MOTION TO
COMPEL RESPONSES TO VALVE'S FIRST DISCOVERY REQUESTS
No. 2:23-cv-01653-RSM                                 Page 13

I certify that this memorandum contains 4184 words, in compliance with the Local Civil Rules.

16th October 2025

Trevor Kevin Baylis

*[signature]*

Jankanraitti

Tampere 33560, FINLAND

Please note: Plaintiff is dyslexic. Thus written documents such as this may have minor accidental spelling and or grammatical errors. Such things should not be seen as cause to prejudice the author of this document.

CERTIFICATE OF SERVICE FORM

FOR ELECTRONIC FILINGS

I hereby certify that on 16th October 2025 I electronically filed the foregoing document

with the United States District Court

Western District of Washington at Seattle by using the

CM/ECF system. I certify that the following parties or their counsel of

record are registered as ECF Filers and that they will be served by the

CM/ECF system:

Jeremy E Roller: jroller@aretelaw.com,

Jonah O. Harrison: jharrison@aretelaw.com,

jfischer@aretelaw.com,

kgreenberg@aretelaw.com

SCOTT BOLDEN

Director Intellectual Property Section Commercial Litigation Branch

Civil Division U.S. Department of Justice

Scott.Bolden@usdoj.gov

Dated: 16th October 2025

Trevor Kevin Baylis

Jankanraitti

Tampere 33560, FINLAND