UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TREVOR KEVIN BAYLIS,<br><br>                Plaintiff,<br><br>    v.<br><br>VALVE CORPORATION,<br><br>                Defendant. | Case No. 2:23-cv-01653-RSM<br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |

## I.  INTRODUCTION

This matter comes before the Court on Defendant Valve Corporation ("Valve")'s Motion for Summary Judgment, Dkt. #76.  Valve does not address the legal merits of the claims, instead arguing that, as a matter of law, Plaintiff Baylis "cannot establish copyright ownership in *Iron Sky* or its 3D models and animation because a Finnish court – in an action Baylis brought as plaintiff – has already ruled on these exact copyright ownership issues and found, after a full evidentiary hearing in which Baylis participated, that he does *not* own the copyrights." *Id*. at 1 (emphasis in original). The Court has reviewed Plaintiff's Response, Dkt. #84, and Valve's Reply, Dkt. #92.  Neither party has requested oral argument.  For the reasons below, the Court GRANTS this Motion and dismisses Plaintiff's claims.

## II.  BACKGROUND

The following facts are not in dispute.  This is a copyright infringement action.  Plaintiff Baylis is a United Kingdom citizen residing in Finland.  Defendant Valve is a video game distributor in Bellevue, Washington that operates a digital storefront and gaming platform called "Steam."

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 1

Game developers upload games to Steam pursuant to certain Terms of Service. Valve receives monetary benefits from selling, displaying, and distributing these games.

Mr. Baylis alleges that Valve willfully continues to sell, display, and distribute video games and images derived from Baylis's copyrighted works from the film *Iron Sky*, which he is an author of and for which he has a registered copyright. *See* Dkt. #25. He sent a takedown request to Valve Customer Support on August 7, 2023. He alleges that Valve has failed in its duty to expeditiously disable the infringing material under the Digital Millennium Copyright Act (17 U.S.C. § 512). *Id.*

This case clearly relates to an earlier dispute between Mr. Baylis and his former employer, the company that produced the film *Iron Sky*, which has then gone on to produce a video game based on the film. *See id.* at 45–46.

Plaintiff Baylis alleges the following causes of action: "direct copyright infringement under U.S.C. 17 §501," "vicarious copyright infringement under U.S.C. 17 § 501," "material misrepresentation under U.S.C. 17 § 512 (f)," and "willful blindness under U.S.C. 17 § 512 and U.S.C. 17 § 106." *Id.* at 42–45.

Given the nature of the instant Motion, the Court will focus only on the facts related to the issue of ownership and what happened in the Finnish legal system.

In 2017, five years after the film's release, Baylis, along with a few other members of the amateur animation team, brought a copyright lawsuit in Finland seeking a declaration that they were joint authors of *Iron Sky* and asserting they owned the copyright to the entire film. *See* Dkt. #77 ("Lindfors Decl."), ¶11; Dkt. #77-3 ("Finnish Court Decision") at 3. Baylis, identified in the Finnish action as "B," also asserted copyright ownership in certain 3D models and animations in *Iron Sky*:

- an animated spaceship called the Götterdämmerung, including its interior;
- a spaceship called the George W. Bush;

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 2

- a spaceship called the Valkyrie;
- a Moon Base, including its interior;
- a Landing Module; and
- a space vessel for Australian representatives.

*Id*. (collectively, the "Models and Animation"). Baylis was represented during the lawsuit by a Finnish intellectual property rights attorney. *See* Lindfors Decl. at ¶ 13. The Finnish "Market Court" received 47 exhibits from plaintiffs, including documents, photos, model images, and video recordings. *Id*. at ¶17; Dkt. #77-3 at 8. The court also considered evidence from the Finnish production companies in the form of 24 exhibits of emails, Twitter messages, screenshots, video recordings, employment contracts, and other documents. *Id*. The court heard testimony from all the parties. *Id*. After an evidentiary hearing, on May 31, 2018, the Finnish Market Court issued a written opinion with a record of the evidence and arguments it considered. *See* Dkt. #77-3. In that decision, the court ruled that neither Baylis nor any of the other members of the animation team could be considered authors of the film *Iron Sky*, thus they held no copyright to the film. *Id*. at 11 and 18. The Finnish Market Court also held that Baylis did not have copyrights to the Models and Animation. *Id*. at 12 and 18. Baylis appealed the judgment, and it appears through the research of Defendant's legal expert that Baylis lost that appeal and that the Finnish Court decision above is final. *See* Lindfors Decl. at ¶ 18.

On August 11, 2023, five years after the Finnish Court Decision, Baylis filed an application for copyright registration for *Iron Sky* with the U.S. Copyright Office as a joint author with copyright ownership of the film and the Models and Animation. *See* Dkt. #44, ¶¶ 2-3; 44-1; 44-2. He then filed this action against Valve on October 30, 2023. Dkts. #5 and #25.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 3

Earlier in this action, Valve sought review of Baylis' Copyright Registration pursuant to 17 U.S.C. § 411(b)(2) to determine whether inaccurate information Baylis supplied to the Copyright Office, if known, would have caused the Register of Copyrights to refuse registration. Dkt. #43. The Court granted Valve's motion and referred this question to the Copyright Office. Dkt. #60. The Copyright Office determined that knowledge of the Finnish Court Decision would not have affected the issuance of a copyright registration because it accepts representations of claimants about the validity of authorship in reviewing applications, and Baylis expressly represented that he was a joint author. *See* Dkt. #66-1 at 9.

### III.    DISCUSSION

**A. Legal Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential

element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### B. Analysis

Baylis's previous litigation in Finland necessarily raises the issue of comity.

As the Ninth Circuit recognized in *Wilson v. Marchington*, 127 F.3d 805, 808 (9th Cir.1997), *Hilton v. Guyot*, 159 U.S. 113, 163, 16 S. Ct. 139, 40 L. Ed. 95 (1895) provides the guiding principles of comity for a case such as this:

> [W]here there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect, the merits of the case should not, in an action brought in this country upon the judgment, be tried afresh, as on a new trial or an appeal, upon the mere assertion of the party that the judgment was erroneous in law or in fact.

*Hilton*, 159 U.S. at 202-03.

In determining the effect to give to a foreign judgment, the Court considers whether the judgment satisfies: (1) the *Hilton* requirements for recognition of a foreign judgment; and (2) the requirements for collateral estoppel. *See Sluimer v. Verity, Inc.*, 628 F.Supp.2d 1099, 1111 (9th Cir. 2010) (decision of a foreign court may have preclusive effect in federal court where issue is identical to the one alleged in the prior litigation). "[T]o foreclose relitigation of an issue under the doctrine of collateral estoppel, three elements must be met: (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated [by the party against whom preclusion is asserted] in the prior litigation; and (3) the determination of the issue in the prior

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 5

litigation must have been a critical and necessary part of the judgment in the earlier action." *Town of N. Bonneville v. Callaway*, 10 F.3d 1505, 1508 (9th Cir. 1993) (citation omitted).

Under the first element, the Court must determine whether the Finnish Market Court decided issues identical to the issues here. In doing so, the Court considers the following:

> (1) is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first?
>
> (2) does the new evidence or argument involve the application of the same rule of law as that involved in the prior proceeding?
>
> (3) could pretrial preparation and discovery related to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second?
>
> (4) how closely related are the claims involved in the two proceedings?

*See Kamilche Co. v. United States*, 53 F.3d 1059, 1062 (9th Cir. 1995) (citation omitted).

The Court will first review the *Hilton* requirements for recognition of a foreign judgment. Valve argues that Finnish courts are "competent" generally. Dkt. #76 at 8 (citing, *inter alia*, *Valjakka v. Netflix, Inc.*, 710 F. Supp. 3d 782, 792 (N.D. Cal. 2024)). This Court has no hesitation agreeing with this. Baylis offers no valid argument to the contrary, instead arguing that the Finnish Market Court's ruling against him was inconsistent with a different case where the Court found authorship for designers of a different film. *See* Dkt. #84 at 20–21. A court ruling in favor of some plaintiffs and against others on different facts does not alone reveal incompetence.

Valve asserts that the Finnish Court in question had both subject matter and personal jurisdiction over Baylis's claims. This makes sense, and Baylis cannot reasonably argue otherwise as he was the plaintiff in that case. This Court is satisfied that the Finnish decision was based on a

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 6

review of substantial evidence and testimony, including testimony from Baylis himself. The Finnish decision was entered in a clear and formal record.

Baylis does not really argue with any of this. Instead, he repeatedly attacks the factual and legal findings of the Finnish Market Court. The Court declines to have a new trial here on the same issues as those heard in a foreign court "upon the mere assertion of the party that the judgment was erroneous in law or in fact." *See Hilton*, 159 U.S. at 202-03.

Baylis also asserts that the Finnish Market Court (and the Finnish courts of appeal) were biased against him and that there was judicial misconduct. This is certainly a relevant concern under *Hilton*, *supra*.

Baylis alleges that the Finnish Market Court's ruling against him "may be explained by the Finnish judiciaries involvement in utilizing Baylis' Work." Dkt. #84 at 16. Baylis claims that the Finnish court system itself has a financial interest in the *Iron Sky* film. *See id.* (arguing that "(1) The state of Finland itself became involved with *Iron Sky* as it was presented as a flagship film production to attract foreign co-productions via a Finnish tax rebate Production Incentive. (2) Turku Courts of Appeal in Finland was used as a venue to film part of a new Chinese co-produced 25 million euro budget *Iron Sky* production called *Iron Sky The Ark*. (3) Reportedly, €200,000 from the Finnish tax rebate Production Incentive was allocated for the shoot at the Turku Appeal Court owned Old Academy Buliding [sic]"). Baylis then states that this "*Iron Sky* film shoot was arranged around the same time an appeal… was heard in that very Court…" *Id* (citing email exchange with Baylis's lawyer).

The problem with these arguments is not a lack of relevance but a lack of evidence. Baylis's allegations of bias have no evidence other than citations to news articles and an email between Baylis and his lawyer. These are serious allegations and not easily believed without more. There is also a

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 7

lack of logic. The timing is off—it appears that the alleged financial interest occurred years after the Finnish Court Decision. Baylis also grossly conflates an allegation of filming inside the building that houses the Finnish Court with "the Judiciary of Finland themselves becoming involved in *Iron Sky*." *See* Dkt. #84 at 17–18. Altogether, the Court does not find these accusations of bias to be sufficiently demonstrated even under the summary judgment standard favoring a non-moving party.

Given the above, the Court finds that the *Hilton* requirements for recognition of a foreign judgment are met.

Under the doctrine of collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction (including judgments that have been granted comity), that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. *San Remo Hotel, L.P. v. City & Cty. of S.F.*, 545 U.S. 323, 336 n.16 (2005); *see also, e.g., Pony Express Records, Inc. v. Springsteen*, 163 F. Supp. 2d 465, 476 (D.N.J. 2001) (dismissing, *inter alia*, plaintiffs' copyright infringement claims on summary judgment based on principles of comity and collateral estoppel where a court in the UK had already determined that the plaintiffs did not hold copyright in the works at issue). So long as a party has been given a "full and fair opportunity to litigate" a matter, he or she is precluded from further litigation of the same issue. *Pony Express*, 163 F. Supp. 2d at 473-74 (citing *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)).

In the Finnish action, Baylis asked the court to find that he owned a copyright in the film *Iron Sky* as a joint author and also that he owned copyrights in various 3D models of vessels on which he worked. In the Finnish Decision, the court ruled that Baylis did not possess copyrights to either the entire film or to the Models and Animation. Now, Baylis asks this Court to re-decide these

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 8

exact issues in order to pursue claims of infringement against Valve. *See* Dkt. #25 at ¶¶ 63-81, 109, 113, 117, 125. These are the same issues.

The Finnish decision was final, Baylis was a party to that action, and he had a full opportunity to participate. He is thus properly estopped here from pursuing copyright infringement claims that require copyright ownership in the underlying material. *See Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991) ("To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.").

The Court agrees with Valve that the U.S. Copyright Office's ruling, sought in the course of this case, has no bearing on the ruling here because that Office took Baylis at his word without any of the above analysis. *See* Dkt. #92 at 3.

Given all of the above, the Court will grant summary judgment dismissal of Plaintiff Baylis's claims as a matter of law.

## IV. CONCLUSION

Having considered the briefing and the remainder of the record, the Court hereby finds and ORDERS that Defendant's Motion for Summary Judgment, Dkt. #76, is GRANTED. Plaintiff's claims are DISMISSED. All pending Motions are STRICKEN. This case is CLOSED.

DATED this 29th day of October, 2025.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 9