The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

TREVOR KEVIN BAYLIS,

                Plaintiff, *(pro se)*.

     v.

VALVE CORPORATION,

           Defendant.

Case No. 2:23-cv-01653-RSM

**PLAINTIFF'S
RULE 59 MOTION TO AMENDED
THE JUDGMENT**

**ORAL ARGUMENT REQUESTED**

Note on Motion Calendar: 27th
November 2025

1    PLEASE NOTE:

2    Plaintiff ("Baylis") filed in error a Notice of Intention to Move for a New Trial or

3    in alternative to Amend the Judgment (Rule 59(e)) (Dkt. 100) ("Notice") which he has

4    expediently withdrawn once realizing his error (Dkt. 103).

5    Baylis is dyslexic and has problems with reading and writing especially in context

6    of extrapolating information about new and complex procedures such as following

7    procedural rules of courts in the United States. Baylis' previously filed documents in this

8    case have a disclaimer attached at the bottom of the last page of each document requesting

9    that he not be prejudiced against for his dyslexia.  Attached as, Ex. A, is Baylis' Dyslexia

10    Diagnosis conducted by a Chartered Psychologist at his time at University. Again, Baylis

11    apologizes for the confusion. Baylis mistakenly thought he had to file a Notice first as part

12    of legal procedures before filing his main Motion and it is why on the CM/ECF system he

13    chose to file it as a Notice and not a Motion. That Notice was not Baylis' Rule 59 motion,

14    *this new filing*, PLAINTIFF'S RULE 59 MOTION TO AMENDED THE JUDGMENT, is

15    Baylis' Rule 59 Motion.

16                                    **INTRODUCTION**

17    The legal reasoning of the Court's Order (Dkt. 98) is manifestly in error  regarding

18    the requirements for recognition of a foreign judgment under Hilton v. Guyot, 159 U.S. 113,

19    163, 16 S. Ct. 139, 40 L. Ed. 95 (1895). In particular the Finnish Market Court <u>DID NOT</u>

20    <u>have subject matter jurisdiction to determine initial ownership rights</u> of the film Iron Sky

21    and it's 3D models and animations related to it ("Work"). Defendants, through their Counsel

22    ("Valve") have mislead this Court on points of the law which is a breach of bar association

23    rules (Rpc 4.1 Truthfulness In Statements To Others) and ultimately this has led to an unfair

24    ruling because it is a judicial noticeable fact that the Work was NOT "First Published"

PLAINTIFF'S RULE 59 MOTION TO AMENDED THE JUDGMENT

in Finland, AND Section 1 of the Finnish Copyright Act ("FCA"), which pertains to the

"subject matter" of copyright arising to a person[1], is clearly NOT part of the Finnish Ruling

(MAO302/18) and is NOT in the operative part of the ruling at all see, Dkt. 44-4, Harrison

Decl., Ex. D, at "Summary of judgment," VALVE_017 ("...not hold a copyright under section

2, section 6 or section 46a of the Copyright Act").

   Sections 3 and 7 (authorship rights)[2] are conspicuously absent too, and shows that

MAO302/18 abandons any substantial ruling on actual authorship in the operative part of the

ruling. It should be noted that under Berne Convention rules, the author *always* maintains the

right to claim authorship under Article 6bis (1).

   Additionally, The Finnish Market Courts did NOT have subject matter jurisdiction due to

territoriality restrictions under Finland's own Copyright Act ("FCA") §63(2) which clearly states

that the FCA is territoriality restricted to works "First Published" in Finland. (See generally, Baylis'

Plaintiff's Notice Of Objection On Defendant Valve Corporation's Notice Of Intent To Raise

Foreign Law. Dkt. 79 ("Objection")

   Substantial justice has not been done and these legal proceeding have been unfair.

A fundamentally just outcome was not reached, which may be attributed to due lawyer

misconduct on the part of Valve, and a verdict has been reached that is contrary to the

preponderance of evidence in this case.

---

[1] Chapter 1: Subject Matter and Scope of Copyright: Section 1: Subject matter of copyright (607/2015)
A person who has created a literary or artistic work shall have copyright therein, whether it be a fictional
or descriptive representation in writing or speech, a musical or dramatic work, a cinematographic work, a
photographic work or other work of fine art, a product of architecture, artistic handicraft, industrial art, or
expressed in some other manner. (446/1995) Maps and other descriptive drawings or graphically or three-
dimensionally executed works and computer programs shall also be considered literary works. (34/1991)
https://www.wipo.int/wipolex/en/legislation/details/22374

[2] Finnish Copyright Act - https://www.wipo.int/wipolex/en/legislation/details/22374

PLAINTIFF'S RULE 59 MOTION TO AMENDED THE JUDGMENT
No. 2:23-cv-01653-RSM

1

**MANIFEST ERROR OF LAW**

2

3

**"Given the nature of the instant Motion, the Court will focus only on the facts related to the issue of ownership and what happened in the Finnish legal system". (The Honourable Judge Martinez, Dkt.98 Page 2 at 17)**

4

5

6

With this assertion, *"The Court will focus on the facts related to the issue of*

7

*ownership and what happened in the Finnish legal system"* it demonstrates that The

8

Honourable Judge Martinez has made a manifest error of law - because, not this Court, nor

9

Valve nor anyone else in the world can reasonably argue that the film Iron Sky ("Work") was

10

"First Published" in Finland or that the operative part of MAO302/18 refers to the **"subject**

11

**matter"** under FCA §1. MAO302/18 was just supposed to be about how the Producers could

12

not provide evidence themselves of copyright ownership to Iron Sky because they were

13

amateurs and did not know they needed copyright transfer agreements, see Second Amended

14

Complaint ("SAC"), Dkt. 25 at ¶¶ 36-43; 40-41; 82-83. Also see Dkt. 44-4. Harrison Decl.,

15

Ex. D, at Valve_016, ¶108 ("The production companies have not argued or presented any

16

evidence to establish who, if anyone, has acquired the copyright in the vessel and whether the

17

copyright in the vessel has been exclusively transferred to the production companies...").

18

MAO302/18 is likewise a manifest error of law because the Finnish Market Court

19

had no subject matter jurisdiction to *"focus on the facts related to the issue of ownership"*

20

regarding the Work even though in the dicta an attempt was made, and the Japanese Ship was

21

confirmed to have copyright (more about that later), and Baylis does not understand why The

22

Honourable Judge Martinez wants to make the same error and is ignoring the operative part of

23

MAO302/18 which doesn't mention FCA§1 or why he is ignoring FCA §63(2) which limits

24

"subject matter" to only works that are "First Published" in Finland. (See Dk. 79 Objection)

1    Furthermore, this Court and Valve ignore the holding of ITAR-TASS Russian News

2    Agency v. Russian Kurier, Inc. which held that the "country of origin" determines the initial

3    ownership of a copyright. In that case the works at issue were "First Published" in Russia

4    (Geographical criteria) and that's why Russian Law applied for issues of ownership.

5    Finland is NOT the "country of origin" for the Work under National or Geographical

6    "points of attachment" criteria for copyright related to Baylis because he is a UK National

7    (Personal criteria) and his Work was "First Published" in Germany (Geographical criteria),

8    and not this Court nor Valve nor anyone else in the world can reasonably argue against

9    Baylis being a UK National nor Germany being the actual "country of origin" of the Work

10   due to the Work being "First Published" on 11th February 2012 in Berlin, Germany to a

11   paying audience and offered up for further distribution[3,4] which can be judicially noticed

12   and discovered by the preponderance of evidence on the evidentiary record see, SAC, Dkt.

13   25 at ¶ 57 and also, Plaintiff's Opposition To Defendant's Motion For Summary Judgment

14   ("ODMSJ"), Dkt. 84 at Page 20 :18-24, Page 21 :1-12. And Dkt 85, Baylis Dec., Exs. A1, Y

15   and Z. Also see the United States Copyright Office Guidance from 2017 COMPENDIUM (THIRD

16   on what constitutes Publication.[5] And also 17 U.S.C. § 101 (defining "publication").

---

17   [3] "Iron Sky has closed further deals for Stealth Media in Berlin, led by a North American deal with

18   Entertainment One. For Israel, the film has now sold to Shoval." https://www.screendaily.com/distribution/iron-sky-confirms-us-israel-deals/5038145.article

19   [4] "Distribution in countries including Germany, the United Kingdom, China, France, Japan and Taiwan, has been

20   secured, and negotiations for a U.S. deal are underway." https://www.latimes.com/archives/blogs/24-frames/story/2012-02-15/berlin-film-festival-with-iron-sky-nazis-land-on-moon

21   [5] 2017 COMPENDIUM (THIRD) § 1905.1; see also H.R. R EP . NO. 94-1476, at 138 (1976), reprinted in

22   1976 U.S.C.C.A.N. 5659, 5754. "distributing copies of a motion picture through a retail service constitutes publication of that work." (2017 COMPENDIUM (THIRD) § 1905.1.) "Specifically, publication occurs when

23   one or more copies or phonorecords are offered to wholesalers, retailers, broadcasters, aggregators, or similar intermediaries for the purpose of distributing the work to the public or for the purpose of publicly performing or publicly displaying the work." (2017 C OMPENDIUM (THIRD) § 1906.1.)

24

1    This Court has made a manifest error of law and must amend it's judgment as a

2    matter of law and for the sake of justice. This court cannot apply comity to Finnish Laws

3    because there was no subject matter jurisdiction any analysis of authorship or initial

4    ownership of copyright for the Work which is a salient point for recognition of a foreign

5    judgment under Hilton v. Guyot, 159 U.S. 113, 163, 16 S. Ct. 139, 40 L. Ed. 95 (1895).

6    Baylis also does not understand why this Court itself doesn't refer to Finland's

7    own Copyright Act §63(2) (see Dkt. 79, Objection) which specifically excludes the Finnish

8    Copyright Act from applying to Iron Sky *on the facts related to the issue of ownership*

9    (The Honourable Judge Martinez, Dkt.98 Page 2 at 17) because of territoriality restrictions.

10    Baylis has attempted to make this clear in multiple previous filings (see Dkt. 79,

11    Objection and Dkt. 84, Page 1, Footnote 1, and at Page 9: 5 and Page 20:17 ). It shows that this

12    Court is ignoring the very law that Valve wants to it to refer to. This is remarkable!

### COMITY AND LACK OF SUBJECT MATTER JURISDICTION

14    Under Hilton v. Guyot, the U.S. Supreme Court established that recognizing and

15    enforcing a foreign court judgment in the U.S. depends on the principle of "comity," **which**

16    **is a reciprocity-based system where a judgment is enforced if the foreign country would**

17    **enforce a similar U.S. judgment.** For a foreign judgment to be considered for enforcement,

18    the foreign court must have had **subject matter jurisdiction** and jurisdiction over the parties.

19    A finding that the foreign court lacked jurisdiction over the subject matter is a reason to refuse

20    enforcement. See Restatement (Fourth) Foreign Relations Law § 483 (2018) ("A court in the

21    United States will not recognize a judgment of a court of a foreign state if … the court that

22    rendered the judgment did not have personal or **subject-matter** jurisdiction.")

23    [Emphasis added]

24

# ARGUMENT

## 1.     Copyright Duality of Jurisdiction in Cross-Border Disputes

The "copyright duality of jurisdiction" in cross-border disputes refers to a complex situation where multiple national courts may have jurisdiction, creating a potential conflict of laws and jurisdiction. See ITAR-TASS Russian News Agency v. Russian Kurier, Inc. which held that the country of origin determines the initial ownership of a copyright (Authorship), while infringement and remedies are governed by the laws of the country where the infringement occurs such as the United States in that case. Also see Berne Convention Article 5(2).

The Itar-tass case highlighted this problem, where the court applied lex loci delicti ("law of the place of the wrong") in a US context, but also acknowledged the importance of the lex loci protectionis ("law of the country for which protection is sought") for the initial right. This duality, also known as a "split of authority," arises because copyright is territorial, meaning its protection is granted on a country-by-country basis. The  lex loci protectionis principle is embedded in Berne Convention Article 5(2).

A key issue in the Itar-Tass case was whether a U.S. court could apply Russian copyright law. U.S. courts generally have subject-matter jurisdiction over claims that arise under U.S. laws, but this case explored the limits of that jurisdiction when it came to international intellectual property disputes.

The case highlighted the complexity of "choice-of-law" issues, where a court must decide which country's laws to apply. In that situation, the court had to decide between U.S. and Russian law to determine copyright ownership. This then raises the question of how that is done - and that question is answered by determining the "point of attachment" of copyright to the author which, is usually first based on their Nationality (Personal Criteria) and then for "Published Works" the place of "First Publication" is the crucial factor (Geographical

PLAINTIFF'S RULE 59 MOTION TO AMENDED THE JUDGMENT
No. 2:23-cv-01653-RSM

Criteria) as this sets the "country of origin" for the national copyright laws of that origin country to apply in terms of ownership of copyright. That's why in this case, Baylis v Valve, Germany is the "country of origin" for the Work - Not Finland.

In Itar-Tass, the "country of origin" was easy enough to determine as Russia because for both "point of attachment" criteria (Nationality and First publication) the authors were Russian Nationals and the works were First Published in Russia. However when it comes to a film work such as Iron Sky or any other film work which has multiple authors and thus multiple nationalities. The obvious practical solution is to look at the place of "First Publication" as the crucial factor (Geographical Criteria) and for the Work in this case the "country of origin" is most certainly Germany, which suits all authors as each author would have the exclusive right of first publication and by agreeing for the film to be "First Published" in Germany then all authors are happy to accept Germany as the "country of origin" of the Work (See Dkts. 84 -85, Baylis Dec., Exs. A1, Y and Z).

Baylis' Work is clearly a "Berne Convention Work" which is not disputed. The *GUIDE to the BERNE CONVENTION for the Protection of Literary and Artistic Works (Paris Act, 1971)*[6] is a comprehensive document that explains the history, principles, and provisions of the Berne Convention for the Protection of Literary and Artistic Works.  Details key concepts like national treatment (granting foreign works the same protection as domestic ones), the minimum rights authors are guaranteed (such as the right to translate, reproduce, and publicly perform works), and the automatic nature of protection without any formalities. Within this publication it clarifies that "First Publication" overrides National and Habitual residence point of attachment issues.

---

[6] GUIDE to the BERNE CONVENTION for the Protection of Literary and Artistic Works (Paris Act, 1971). https://www.wipo.int/edocs/pubdocs/en/copyright/615/wipo_pub_615.pdf

PLAINTIFF'S RULE 59 MOTION TO AMENDED THE JUDGMENT
No. 2:23-cv-01653-RSM

"5.13. (a)        works protected by the Convention by virtue of the geographical criterion (place of first publication) and published only within the Union: country of origin is the country of the Union where the work was first published. **Place of publication (geographical criterion) prevails over the nationality or the habitual residence (personal criteria):** a Belgian author or one habitually resident in Belgium first publishes his work in the German Federal Republic; the country of origin is the latter country." [Emphasis Added]
(WIPO — Guide to the Berne Convention. Page 36)

5.14. Paragraph (4)(c) lays down two exceptions to the normal rules applicable to unpublished works or those first published outside the Union.

5.14.(i) The first deals with cinematographic works and is the logical corollary to the new point of attachment introduced in the Stockholm Act (1967). The country of origin is determined by the headquarters or habitual residence of the maker; this general formula prevails over the other personal criterion, nationality or habitual residence of the author. The reason is that films by their nature are often works in which several authors collaborate ; the use of a personal criterion would produce confusion if these had different nationalities or residence, as is often the case.

Note, however, this only applies to unpublished works or those first published outside the Union. **If the work is first, or simultaneously, published in a Union country the general rules of paragraphs (4)(a) and (b) apply.** This exception merely recognises that films are often unpublished and, if the country of origin were to depend on the nationality of the many co-authors, this would give rise to legal confusion whereas basing this on the maker (as in the points of attachment) makes for much more clarity. [Emphasis Added]
(WIPO — Guide to the Berne Convention. Page 37)

**2.        First Publication of a Work Sets the "Point of Attachment" of copyright under "Country of Origin" rules.**

"First Publication" of any work <u>is crucial in any court assessment of copyright ownership to that work</u>, and this Court, as well as Valve, and indeed the Finnish Market Courts, or anyone else in the world for that matter, cannot reasonably argue that Finland was the place of "First Publication" of the Work. It follows that the legal reasoning of the Court's Order (Dkt. 98) is manifestly in error which has led to an unfair ruling because the Finnish Market Court could NEVER have had <u>subject matter jurisdiction on the determination of copyright ownership for the Work</u>. Baylis requests that the Courts ruling (Dkt. 98) be amended

accordingly for the sake of justice to say that the Finnish Market Court could never have had "subject matter jurisdiction on <u>the determination of copyright ownership</u> for the Work", even though Courts in the country where the infringement is alleged to have occurred may have jurisdiction to <u>grant protection to the foreign work</u> based on the principle of "national treatment". <u>Determination of copyright ownership and protection to the foreign work are treated separately</u>. See Berne Convntion Article 5. Unfortunately, MAO302/18 failed itself to adhere to obligation under the Berne Convention Article 5 which also amounts to a human rights violation under, Protocol 1 Art.1 of the European Convention on Human Rights - Right to peaceful enjoyment of property. See CASE OF SAFAROV v. AZERBAIJAN - State's failure to protect his intellectual property interests.[7]

Baylis was reasonably expecting the Finnish Market Court to acknowledge that Iron Sky was a German work under "country of origin rules" especially as Finland is territorially restricted under §63(2) and that subject matter jurisdiction regarding determination of copyright ownership would be based on German Law because that is where the Work was "First Published". Finland has to implement minimum principles of the Berne Convention at a National level and The Finnish Copyright Act is territoriality restricted, so of course it does NOT have subject matter jurisdiction over a German Work first Published in Germany and that also explains why section §63(2) is included in the Finnish Copyright Act! Regardless of that, under Berne Convention Article 5(2) the lex loci protectionis ("law of the country for which protection is sought") relates to Finland <u>ONLY in terms of "protection" not "authorship"</u> whereby Finland must and should have ensured protection of Foreign

---

[7] CASE OF SAFAROV v. AZERBAIJAN - State's failure to protect his intellectual property interests. https://hudoc.echr.coe.int/eng#{%22itemid%22:[%22001-218927%22]}

Nationals copyrights (Berne Convention Article 5 (2)).  Baylis is a foreign National and was simply seeking protection of his "German" Work (which he created without a employment relationship) in Finland because the Producers had an office in Finland at that time. That is the real reason why Baylis was Plaintiff in the case. Baylis does not understand why this Court should be looking to Finland for determination of initial copyright ownership when neither this Court nor Valve can credibly claim that Finland was the place of "First Publication" of the Work especially as MOA302/18 makes specific reference to the fact that the Work was "First Published" in February (Dk 44-4. Harrison Decl., Ex. D, at Valve_008, ¶3) - and the ONLY place that the Works publication occurred "in February" was in  GERMANY on 11th February 2012 which is a judicially noticeable fact backed up by the significant weight of the evidence on record. (See Dkts. 84 -85, Baylis Dec., Exs. A1, Y and Z)

### 4.    Finnish Market Court Lack of Subject Matter Jurisdiction

The Honorable Judge Martinez has also stumbled into the rabbit hole of "who owns Iron Sky?" because he attempts to look at *"facts related to the issue of ownership"* in regards to MAO302/18. However according to MAO302/18 - Not even the principle director can considered an author of the Work (Dk 44-4. Harrison Decl., Ex. D, at Valve_010, ¶ 23)

.    Furthermore, Baylis' Counterclaim victory in the case, (Dk 44-4. Harrison Decl., Ex. D, at Valve_015-16, ¶¶ 99-108 and "Summary of Judgment," Valve_017 "The Market Court dismisses the remainder of the application, counterclaim, and claims for reimbursement of legal and other costs") proves that the Producers have no copyright ownership of Iron Sky. Therefore, according to what anyone can make of MAO302/18, Iron Sky may be an "orphan work" as it doesn't resolve who owns the copyright of Iron Sky (execption to the Japanese Ship). This Court and Valve have no idea themselves who the owner of Iron Sky actually is. Under German copyright law a script writer is not even considered to be the author of a

film which is regarded as an authorized derivative work without prejudice to the script writer.

See Baylis' SAC where Baylis cites German law (Dkt. 25 at ¶¶ 48-51).

### A.    Authorship and Ownership of copyright can be two separate issues.

**- Authorship.**

Finland doesn't have subject matter jurisdiction for assessing authorship of Iron Sky (Itar-tass-) and section 1 of the copyright act is NOT mentioned in the operation part of MAO302/18, but for the sake of argument, Section 1 of the Finnish Copyright act states the following.

> **Section 1**
> **Subject matter** of copyright (607/2015)
> **A person who has created a literary or artistic work shall have copyright therein**, whether it be a fictional or descriptive representation in writing or speech, a musical or dramatic work, **a cinematographic work**, a photographic work or other work of fine art, a product of architecture, artistic handicraft, industrial art, or expressed in some other manner. (446/1995)
> Maps and other descriptive drawings or graphically or **three-dimensionally executed works** and computer programs shall also be considered literary works. (34/1991)
> [Empasis added]

Therefore even if this Court were to give comity to the Finnish Copyright Act Baylis doesn't understand why he, "as a person that has created a Literary AND  Artistic work which is obviously a cinematic work including three-dimensionally executed works" would not have copyright therein to that work.

It appears the judges in MAO302/18  deliberately excluded mentioning this section 1 "subject matter" part of the Finnish Copyright Act in the operative part of their judgement on purpose as the Finnish Market Court likely knew very well they did not have subject matter jurisdiction on issues of authorship because they were also judicially aware that Iron Sky was NOT "First Published" in Finland (Dk 44-4. Harrison Decl., Ex. D, at Valve_008, ¶3). That is then why MAO302/18 avoids the "subject matter" under Section 1 of the Copyright Act because of §63(2) territoriality restrictions.

- **Ownership.**

In both Finland and Germany, the United States "work for hire" doctrine or something similar simply does not exist. In any case many of the 3D animators on Iron Sky were not employees of the Producers. Baylis was NOT in an employment of service relationship with the Producers Dkt 25, ¶¶ 40-41; 82-83. Barquin and Myers were not even in Finland for parts of the work. Myers had no copyright transfer agreement to the Producers. (See Dkts 86 and 88)

In the Nordics and much of the Europe in including Germany, under the Droit d'auteur (Authors rights) tradition of copyright a Producers cannot be an author of a film work and has to acquire ownership of the film by written conveyance.[8] This is known in the industry as "chain of title". The Producers could not show any ownership or any chain of title related to Iron Sky in MAO302/18 and that is why they could not sue Baylis for using his own work to create his own adaptations of his Work. This Court should remember that Iron Sky was an amateur project. Baylis has first hand knowledge of the Producers lack of contracts, which is why he has continued to use his own work for other projects as mentioned in MAO302/18. (Dk 44-4. Harrison Decl., Ex. D, at Valve_016, ¶¶ 105-107).

This court cannot reasonably argue that the Producers own Iron Sky. The Producers went bankrupt as part of the outcome of MAO302/18 because NBC Universal pulled their funding and distribution deals. The Chinese/Finnish Iron Sky co production Iron Sky the Ark (film partly at the Turku Appeals Cout) was never released.

There are also no foreclosure of copyright rules in Finland which means creditors cannot obtain any copyright ownership of Iron Sky even if there was a chain of title to claim.

---

[8] The persons who participate in the film in a financial or practical manner have no rights in the film that are based directly on the author's rights legislation....The most important person belonging to this group is the film producer."
(Ownership of Rights in Audiovisual Productions: A Comparative Study. Marjut Salokannel. 1997. P.148-9)

PLAINTIFF'S RULE 59 MOTION TO AMENDED THE JUDGMENT
No. 2:23-cv-01653-RSM

1    Valve had not demonstrated any chain of title in this case either and have had to resort to

2    asking Baylis for such things or else face sanctions by this court which is utterly farcical

3    (See Dkt. 95).

4    If the Honorable Judge Martinez wants to find out who the authors of the Work are,

5    and thus copyright owners of Iron Sky - then he would have to ask Baylis for that information

6    which is what The United State Copyright Office had to do as well (See Dkt. 66-1) because

7    Baylis was the Modeling Supervisor and Lead 3D Maya Artist on the project who has worked

8    longer on the project than any other of the other 3D animators. This Court cannot reasonable

9    argue that there is a better person to ask about authorship of the Work. Baylis is the only

10    person in the world who has demonstrated the 3D Maya files to all the previous judges and

11    this Court has video demonstrations of Baylis himself showing the Work on the evidentiary

12    record of this case. See Dkt 85, Baylis Dec., Exs. F, G, H, I, J, K, L, M, N, O and P. Baylis is

13    the author of those video too and they are protected by copyright based on his UK Nationality

14    regardless of creating them at his home in Finland.

15    **4.    Valve's Mischaracterization of law**

16    **RPC 4.1 TRUTHFULNESS IN STATEMENTS TO OTHERS**

17    **In the course of representing a client a lawyer shall not knowingly:**

18    **(a) make a false statement of material fact or law to a third person**

19    Valve's characterization of MAO302/18 is so wrong that it would appear on the face

20    of it, that Valve might have well of taken their holding of MAO302/18 from a Hollywood

21    Reporter Article, see Harrison Dec. Dkt. 44-7 Ex. G at Page 4 ("Aritcle") rather from actually

22    study of MAO302/18 as Valve continue to ignore the fact that the section 1 **"subject matter"**

23    of the Finnish Copyright Act is entirely absent from the operative part of MAO302/18,

24    which this Court should also regard as a judicially noticeable fact! In that Article the reporter

1    himself admits he has not seen the judgment because it is in Finnish. Valve would not have

2    been able to read MAO302/18 properly either and later got it translated.

3        "**The Ruling is currently only available in Finnish**, but the Hollywood Reporter
     has seen **a translated version provided by the producers of *Iron Sky***. It Reads,

4        in part, that the court found that the plaintiffs "have no copyright to the film(s)
     *Iron Sky* or the upcoming sequel *Iron Sky the Coming Race* or to any material they

5        have made to those movies." (Emphasis added)

6        Valve have then perhaps formed some cognitive bias in believing that erroneous

7    Article, and that MAO302/18 denied ALL copyright to Baylis under Section 1 of the Finnish

8    Copyright Act which is objectively not true when one sees that Section 1 is not mentioned

9    in the operative part. Valve appear to have then misled this Court about the outcome of

10   MAO302/18 case based on that Article and are Misleading this Court to think that the

11   Finnish Court had "subject matter" jurisdiction when it does not. Valve's mantra in this case

12   is "the court found that the plaintiffs "have no copyright to the film(s) *Iron Sky* ... or to any

13   material they have made to those movies." which appears to be based on that Article rather

14   that the operative part of MAO302/18. The actual operative part of MAO302/18 does NOT

15   mention Section 1 of the Finnish Copyright Act nor Section 3 (authorship rights) and this

16   fact alone indicates Baylis still has copyrights to his work even in Finland including the right

17   to make adaptations of the work under Article 4 of the FCA. It is the Producers that "have

18   no copyright to the film(s) *Iron Sky* ... or to any material Baylis has made to those movies."

19   This is because the Producers LOST their Counterclaim against Baylis, and it is actually the

20   Producers who have no proof of any copyright ownership, and nor can they prevent Baylis

21   from making adaptations of the film Iron Sky. Valve are misleading the Court into thinking

22   Baylis has no copyright at all but that ignores the operative part of MAO302/18 which

23   indicates that Baylis has not been totally deprived of copyrights under FCA §1 as Finland

24   does not have "subject matter" related to questions of initial ownership of Iron Sky. The

PLAINTIFF'S RULE 59 MOTION TO AMENDED THE JUDGMENT
No. 2:23-cv-01653-RSM

non-binding dicta of MAO302/18 is NOT the operative part and MOA302/18 eventually

abandons the authorship aspects of the case which makes sense as there never was a dispute

in the first place about Baylis creating the work. See, Dkt 44-4, Harrision Dec. ¶ 86, Ex. D

at VALVE_14 ("No dispute has arisen concerning the so-called moral rights provided for in

Article 3 of the Copyright Act.")

> **5.** **Reality of Finnish Market Court Outcome in MAO302/18**

All that happened in reality was that the Court could not work out who the authors

actually were and this created uncertainty for the judges which they were unable to address

leading to an "orphan work" status but even orphan works and anonymous works are can still

be copyright protected. <u>MAO302/18 appeared to apply a "beyond reasonable doubt" standard

of assessment</u> rather than a preponderance of evidence standard which seems how the judges

confused themselves. For instance they found copyright in the Japanese Ship because only

one person was responsible for crating it which is thus "beyond reasonable doubt". However

the other works had multiple authors some of which were not party to the action which

created doubts about who "exactly" the authors of the works were. The works obviously

meet a low threshold of originality standard and are obviously copyrighted works and no

reasonable person could argue against that.



Japanese ship. One author - Barquin ("A" in MAO302/18) was "beyond reasonable doubt" the author.



Gotterdammerung. Multiple authors. Authorship status unresolved in MAO302/18

PLAINTIFF'S RULE 59 MOTION TO AMENDED THE JUDGMENT
No: 2:23-cv-01653-RSM

1    However, even this Court would have uncertainties about who the actual authors

2    are which raises the question how one should solve such a dichotomy? Never the less, as

3    mentioned, if the work is deemed an orphan work or an anonymous work in Finland, it is still

4    a work protected by copyright. There is no "beyond reasonable doubt" standard of assessment

5    in the United States for Civil cases concerning copyright. Baylis doesn't understand why

6    this Court wants to give comity to the Finnish standard of "beyond reasonable doubt" to

7    determine authorship of joint works given the obvious confusion that creates. **Comity is a**

8    **reciprocity-based system where a judgment is enforced if the foreign country would**

9    **enforce a similar U.S. judgment.  There is no "orphan work" defense in the United**

10   **States.** See United States v. Gordon,11. No. 21-1023 (1st Cir. June 23, 2022). In that case

11   Gorden ("believed that his sales were permitted based on the DVDs'status as orphan works

12   and on the fair use doctrine.  As to orphan works, Mr. Gordon testified that he believed that

13   if the owner of content no longer existed, he was free to reproduce it.") Unfortunately Mr

14   Gorden failed with that defense.

15        **6.    Conflict in Copyright Threshold of Originality Standard.**

16        It seems clear that MAO302/18 applied a "beyond reasonable doubt" assessment

17   to question of authorship under Finland's "Independent Originality" requirements in

18   MAO302/18, which is not a reciprocal courtesy to apply comity to because it conflicts

19   with United States law where the standard is a "Preponderance of the evidence" requiring

20   a party to prove that their claim is more likely than not true with at least 50.1% certainty,

21   compared to the opposing side's evidence. In Bridgeman Art Library, Ltd. v. Corel Corp.

22   (1998) a US court decided that it must apply the US threshold of originality (decided in Feist

23   v. Rural) rather than the British "sweat of the brow" standard invoked by the plaintiff. That

24   case demonstrates that where there is a "threshold of originality issue" then US threshold of

1     originality prevails.

2        Finland's "Independent Originality" standard is clearly incompatible with the US

3     threshold of originality "modicum of creativity" standard. Even just simple "polygon

4     arrangement" of a 3D model is enough to reach such a low threshold as mentioned in

5     Glass Egg Digital Media v. Gameloft where there was originality in 3D polygon models

6     that resembled real world cars that were adapted for use in a game engine. "Assuming the

7     polygon arrangements can be separated from the shape and appearance of the cars, the

8     above allegations are sufficient to show such arrangements are the product of expressive

9     choices made at the discretion of Glass Egg's employees, and thus to show the Works were

10    "independently created" by those employees and "possess[] at least some minimal degree of

11    creativity." See Feist, 499 U.S. at 348; see also, e.g., Phantomalert, Inc. v. Google Inc., No.

12    15-CV-03986, 2016 WL 879758, at *1 (N.D. Cal. Mar. 8, 2016) (holding "information shown

13    on a map is not subject to copyright protection," but "the arrangement of the facts depicted on

14    the map is protectable where it shows some originality"; finding placement of traffic-related

15    information on map protectable where based on "judgment calls") (emphasis in original).

16    (3:17-cv-04165-MMC Glass Egg Digital Media v. Gameloft, Inc. et al.

17        **7.**     **Producers False Claims of "Work for Hire" contracts.**

18        In MOA302/18 the Producers did not even dispute Baylis created the work. The

19    Producers claim was they had acquired Baylis' copyright through some sort of "work for

20    hire" agreement (Dkt 46-1 Baylis Dec. Ex. A at BAYLIS_1) but none exist and the Producers

21    lost their counterclaim because they could not produce any such chain of title documentation.

22    Neither can Valve produce such documents.

23        "As the defendants we argued that while they did the work on the film, they were
         working on a work-for-hire basis under a signed contract"

24       (Defendants in MAO302/18) Also see Dkt. 44-4. Harrison Decl., Ex. D, at
         Valve_016, ¶108. And Dkt 25, ¶¶ 40-41; 82-83.

1

2      Baylis does not understand why, if the Producers did not dispute Baylis was the

3  creator and thus "author" of his work, and there are no "work for hire" agreements on the

4  evidentiary record then why under the "Preponderance of the evidence" in this case does

5  this Court and Valve somehow think Baylis is not the author and copyright owner of his own

6  work especially as the Copyright Office confirmed that Baylis would be the copyright owner

7  regardless of any foreign ruling to the contrary because the Office assesses the Work based

8  on United States Law and Baylis is protected exclusively by United States Copyright Act,

9  and under Berne Convention Article 5(2) lex loci protectionis ("law of the country for which

10  protection is sought").

11        **8.      Preponderance of the Evidence**

12      **A.**      There is no evidence or reasonable inference from the evidence to justify the

13  Courts Ruling (Dkt. 98). Including the fact that MAO302/18 doesn't have subject matter

14  jurisdiction, it is also unfair for this Court to adopt Finland's "beyond reasonable doubt"

15  standard of evidence assessment in MAO302/18 as a basis for comity, because that it is

16  contrary to United States Law, **"Preponderance of the Evidence"** and  adopting a "beyond

17  reasonable doubt" standard of evidence assessment leads to an unfair ruling. Baylis has

18  provided video evidence to this court (See Dkts. 84 -85, Baylis Dec., Exs. F, G, H, I, J, K, L,

19  M, N, O and P ). No one else has ever presented such evidence to anyone other than Baylis

20  because the files are too complex for others to use. Baylis presented the same evidence in

21  Baylis v Troll VFX and Judge Oskar Kulmala was happy to declare in his own dicta that

22  Baylis was the author of those works (See Dkt 45 Page 10 and Dkt 49-3, Baylis Dec. Ex. C

23  at BAYLIS_11 and BAYLIS_26). Baylis doesn't understand why the "preponderance of this

24  evidence" including the fact his name is in the metadata of the files would not favour Baylis

1   claims of authorship to his own Work as demonstrated in those videos (See Dkts. 84 -85,

2   Baylis Dec., Exs. F, G, H, I, J, K, L, M, N, O and P ) which are evidence on file in his case.

3   Even those videos demonstrate a "modicum of creativity" (Feist v. Rural) to be copyrighted

4   works on their own.

5        Baylis does not know why this Court nor Valve lacks common decency to

6   acknowledge Baylis as the author of his own work when the weight of he evidence

7   clearly demonstrates that Baylis is the author of his own Work on the "preponderance of

8   evidence." This case is NOT a Criminal law case. It's a Civil Law case.

9        **B.      Berne Convention for the Protection of Literary and Artistic Works' bar**

10           **on copyright formalities.**

11       Baylis cited a previous civil law case in Finland ("MAO79/18) to demonstrate

12  that "on the preponderance of evidence" films in Finland *are* joint works and that even set

13  designers hold copyright to the whole film. There should no be controversy in finding Baylis

14  as author to his Work especially as there has never been a dispute as to whether Baylis created

15  the work. Baylis' name is on the film credits and in the meta data of the 3D animation files

16  and his Work easily surpasses the very low threshold of originality to be copyrighted (see

17  Feist v Rural ), and Baylis' Work fits the description of works protected by copyright under

18  USC17 §101 AND there are no formalities rules under the Berne Convention for Baylis

19  to be protected by that Convention which the United Sates is a signatory of. See, Cong v.

20  Zhao (2:21-cv-01703) District Court, W.D. Washington (#Dkt 51. Page 6) ("foreign works

21  are exempt from the rule requiring registration of a work prior to the filing of a lawsuit.

22  "Congress removed foreign works from Section 411(a)'s dominion in order to comply with

23  the Berne Convention for the Protection of Literary and Artistic Works' bar on copyright

24  formalities for such works." Fourth Est., 586 U.S. at 306–07 (citation omitted)"

PLAINTIFF'S RULE 59 MOTION TO AMENDED THE JUDGMENT
No. 2:23-cv-01653-RSM

1    Baylis even has numerous copyright council opinions from a Finnish Government

2    appointed body which has confirmed that Baylis creates copyright in his other works such as

3    his Trevi Tyger Cartoons. See Dkt. 57-3 and 57-4, Baylis Dec. Ex. C and Ex. D.

4    **C.**    Baylis further does not understand why this Court or Valve would even think

5    Finland would be the "country of origin" even based on the National criteria for "point

6    of attachment" because as the Court notes, it is undisputed that Baylis is a UK National

7    (Dkt.98). Finnish Law doesn't apply to Baylis even now for new copyright works he

8    produces at his own home in Finland. Baylis is not a refugee from a country outside of the

9    Berne Union and has no need to adopt any Finnish National Copyright Law due to NOT

10   being a stateless person.

11   The "preponderance of evidence" on this matter favours Baylis because Baylis has

12   shown that his Work was "First Published" in Germany and not in Finland. The Work was

13   "First Published" on 11th February 2012. The Work is a German Work.  (See Dkts. 84 -85,

14   Baylis Dec., Exs. A1, Y and Z). This Court must amend it's ruling to confirm Germany as

15   "country of origin" based on the preponderance of evince including that it is a judicially

16   noticeable fact! Even MAO302/18 alludes to Germany being the place of First Publication

17   as there was no other publication in February 2012 other than in Germany. "The film was

18   released in February 2012" (Dk 44-4. Harrison Decl., Ex. D, at Valve_008, ¶3) The work is

19   without doubt a "published work" that fits the description of a Motion Picture (U.S.C. 17 §

20   102(6)) and has to be a copyrighted work (U.S.C. 17 § 106).

21   **D.    Baylis Objected to Valve's Reliance on Finnish Law**

22   Furthermore, Valve did not complain that the Nation of First Publication as Germany

23   was knowingly incorrect information supplied to the United States Copyright Office. It raises

24   the salient question as to how this Court came to the conclusion that Finland would be the

PLAINTIFF'S RULE 59 MOTION TO AMENDED THE JUDGMENT
No. 2:23-cv-01653-RSM

Nation of First Publication instead of Germany or even why Germany has to be rejected

as the Nation of First Publication by this Court, and then to claim Finland had "subject

matter jurisdiction" even though the Finnish Copyright Act §63(2) clearly indicates it does

NOT have "subject matter jurisdiction" to determine ownership issues of Works that are

NOT "First Published" in Finland.  Clearly this Court has been misled by Valve to conclude

erroneously that Finnish Law applies, which is a breach of bar association rules as Valve may

not mislead this Court or Baylis on issues of law.  This Court reliance on Valve's deception

has led to an unfair ruling especially as mentioned, the preponderance of evidence in this case

favours Baylis.

### 9.    This Courts Mischaracterisation of the Dispute in MAO302/18

     **A.**    The dispute in MAO302/18 was NOT a dispute with Baylis' "former

employers" as this Court has mischaracterised it (Dkt. 98). Baylis was NOT employed by the

Iron Sky Producers and had NOT signed over ownership of his Work to them. This Court has

started on the false premise that Baylis was employed by the Producers. Such a false premise

obviously leads to faulty conclusions by this Court and an unfair ruling (Dkt 98) has emerged

from that false premise. This Court should at least have the courtesy of recognizing Baylis'

unemployed status whilst he created the Work as indicated by the weight of the evidence

in this case. Valve have not even claimed that Baylis is not the creator of the Work nor

demonstrated any transfer of copyright "ownership" away form Baylis to any third party.

     **B.**    The most salient outcome of MAO302/18 was that the Producers

LOST their Counterclaim to prevent Baylis from using his work in the future for other

Iron Sky projects. Therefore, it is the Producers that don't own copyrights to Iron Sky. The

Producers were unable to demonstrate to the Finnish Market Courts any written transfer of

copyright ownership to them from any of the authors of Iron Sky. The Iron Sky producers

PLAINTIFF'S RULE 59 MOTION TO AMENDED THE JUDGMENT
No. 2:23-cv-01653-RSM

needed to know themselves who were the authors of Iron Sky in order to obtain license agreements from them. That means it was rather foolish in the first place for the Producers to attempt to obfuscate authorship of Iron Sky which, unwittingly lead to an orphan work status in Finland, whilst at the same time the Producers need to designate who the authors were in order to obtain license agreements from them and to be legally able to obtain funding and distribution for future works. Catch 22. (I told you they were amateurs!)

It is the Producers who are estopped from re-suing Baylis in the future. This Court has made a huge error if it believes Baylis has no copyright in his Work based on MAO302/18 when in fact it is the Producers who have no copyright (except for their Japanese Ship).

This Court and Valve should at least acknowledge that the Producers were unsuccessful in their Counterclaim in MAO302/18 because they could NOT prove any copyright ownership to Iron Sky and that was the most salient outcome of MAO302/18.

Valve have not even demonstrated or shown the slightest piece of evidence that the Producers had any transfer of copyright to them from Baylis or from any other 3D animator working on the project. Valve have not even made an affirmative defense based on any license agreement dispute arising in MAO302/18 whereby Baylis might have signed away his copyrights by written contract. Baylis was not employed by the Producers!

**C.**    This raises another important question. What is it that this Court thinks it is applying comity to within MAO302/18 exactly? ***A Hollywood Reporter Article?***

For instance, MAO302/18 never had subject matter jurisdiction on questions of initial copyright ownership and even according to the operative part of MAO302/18 Baylis would still maintain copyrights to his work under section 1, 3 and 4 of the Finnish Copyright Act because these sections are not mentioned by the Finnish Court as being denied to Baylis. Then, there was no contract analysis related to Baylis in MAO302/18 for this Court to look

PLAINTIFF'S RULE 59 MOTION TO AMENDED THE JUDGMENT
No. 2:23-cv-01653-RSM

1    at either for any transfer of economic rights under FCA §2 to the Producers who were found

2    NOT to own Iron Sky due to failing to show any proof of ownership in their Counterclaim,

3    and Finnish Market Court dismissed the Producers claim leaving Baylis to continue to make

4    further adaptations of Iron Sky himself even under section 4 of FCA such as Video Games,

5    rendered imagery from the 3D models and 3D printing of the Iron Sky space crafts. See Dkt.

6    44-4 Harrison Dec. Ex. D, ¶ 108  at VALVE_016

7          "108...the production companies have not argued or presented any evidence to
      establish who, if anyone, has acquired the copyright in the vessel and whether

8          the copyright  in the vessel has been exclusively transferred to the production
      companies, or any other arguments as to how the conduct of B and D has infringed

9          their copyright. The Market Court considers that this infringement of copyright has
      not been proven and that there is no need to make a further statement on the

10         procedure. Consequently, the conditions for the imposition of the requested
      prohibition and cessation of the infringement are not met, and claim 4 must be

11         rejected."

12   Therefore the comity that this Court might apply, would be to prevent the Iron Sky

13   Producers from taking legal action against Baylis to prevent him continuing to produce his

14   own Iron Sky works because according to MAO302/18, the Producers have no ability to take

15   legal action against him.

16        **D.**     The other question is what exactly did MAO302/18 deny Baylis

17   because the only copyright that MAO302/18 actually confirmed was for the Japanese ship

18   created by Seb Barquin (Plaintiff "A").

19   It means that the denial of copyright under FCA §2, 6 and 46a can only relate to that

20   work – the Japanese ship-  because those economic rights under FCA §2 can be the only

21   **transferable rights** by contract that could legally transfer to any third party!

22   MAO302/18 could not confirm who the authors were for any other parts of the

23   film because there was more than one author for all the other works, and the Judges could not

24   identify who did what, and on which part of each work any authors specifically worked on.

PLAINTIFF'S RULE 59 MOTION TO AMENDED THE JUDGMENT
No. 2:23-cv-01653-RSM

In Contrast the Japanese Ship only had one author rather than several so the Judges could easily identify Seb Barquin as that single author.

As confusing as this outcome might be *it is the legitimate outcome of the Judges analysis* because the Judges complain about the lack of specify in showing what particular details each person modeled on each craft, such as at, Dkt. 44-4 Harrison Dec. Ex. D, ¶ 73  at VALVE_013.

> "73. The Market Court notes that **it has not been further specified what copyright-relevant creative work D would have done** for Götterdämmerung, Zeppelin, and George W. Bush ships. The Market Court considers that it has not been proven that D should be considered the author of the vessels in question." Emphasis added.

None of this denies any authorship rights for the Plaintiffs in MAO302/18 it just shows that the Judges could not determine who has created the work when there is more than one author. One wonders how anyone could ever overcome this peculiar dichotomy.

Therefore all that can be confirmed is that Baylis doesn't own copyright in the Japanese Ship under sections 2, 6 and 46a. However, Baylis is not claiming that he created the Japanese ship and has NOT claimed to the United State Copyright Office that he did.

It means that if Valve are saying anything different, such as "Baylis has no copyright at all for any of his work", then that is a misrepresentation of the actual outcome of MAO302/18 which has led this Court to an unfair ruling because Valve are misleading both Baylis and this Court by claiming that MAO302/18 has ruled that Baylis has no copyright to the Work at all, when §2,6 and 46a denials in MAO302/18 can logically only pertain to the Japanese Ship which, was the only work where any copyright was confirmed  to have any transferable economic rights under section 2, 6 and 46a of FCA. Valve are not allowed to mislead Baylis or the Court on matters of law. It is a breach of bar association rules and has led to an unfair ruling.

1

## CONCLUSION

2       (1) Defendants Valve Corporation ("Valve") mislead the Court by mis-categorizing the

3  holdings of rulings in previous cases and basically lying about MAO302/18 having subject

4  matter jurisdiction because they obviously knew that FCA§1 (Subject matter) was absent

5  from the operative part of MAO302/18, and then obfuscating facts about "country of origin"

6  rules related to determination of copyright ownership (authorship). See ITAR-TASS Russian

7  News Agency v. Russian Kurier, Inc. which held that the country of origin determines the

8  initial ownership of a copyright, while infringement and remedies are governed by the laws of

9  the country where the infringement occurs. Valve have mislead this court to applying comity

10  to the laws of Finland (Dkt. 76) which, does not have subject matter jurisdiction, rather than

11  to Germany and German Copyright Law which *does have subject matter jurisdiction* because

12  thats where the "First publication" of the Work at issue in this case took place which is a

13  judicially noticeable fact. This mischaracterization of law by Valve leads to an unfair ruling

14  (Dkt. 98). (2) As a result of Valve Actions the Court Order (Dkt. 98) amounts to a breach of

15  obligations of the United States toward adhering to international treaties such as the Berne

16  Convention. (3) As a result of Valve Actions the Court Order (Dkt. 98) is a breach of Baylis'

17  human rights. See CASE OF SAFAROV v. AZERBAIJAN - State's failure to protect his

18  intellectual property interests.

19  https://hudoc.echr.coe.int/eng#{%22itemid%22:[%22001-218927%22]}

20       There were numerous errors in law occurring in the Court Order (Dkt. 98). The legal

21  reasoning of the Court's Order (Dkt. 98) is manifestly in error  regarding the requirements for

22  recognition of a foreign judgment under Hilton v. Guyot, 159 U.S. 113, 163, 16 S. Ct. 139, 40

23  L. Ed. 95 (1895). In particular the Finnish Market Court <u>DID NOT have subject matter</u>

24

PLAINTIFF'S RULE 59 MOTION TO AMENDED THE JUDGMENT
No. 2:23-cv-01653-RSM

1   jurisdiction to determine initial ownership rights of the film Iron Sky and it's 3D models and

2   animations related to it ("Work").

3        This Court has not given proper consideration to the preponderance of evidence in this

4   case which clearly favours Baylis as the author of his own work especially has he was NOT

5   employed at the time he created it. It is unfair for this Court to not recognize Germany as the

6   "County of Origin" of the work in question, and looking to German law to apply the correct

7   principle of comity toward, which is a salient material fact crucial to this case because comity

8   should have applied to German Copyright Law and NOT Finnish Law on questions that

9   determine the initial ownership of a copyright.

10       See, *WIPO Guide to the Berne Convention*.

11       "5. 13. (a) works protected by the Convention by virtue of the geographical criterion

12   (place of first publication) and published only within the Union: country of origin is the

13   country of the Union where the work was first published. Place of publication (geographical

14   criterion) prevails over the nationality or the habitual residence (personal criteria): **a Belgian**

15   **author or one habitually resident in Belgium first publishes his work in the German**

16   **Federal Republic; the country of origin is the latter country**." Emphasis added.

17   https://www.wipo.int/edocs/pubdocs/en/copyright/615/wipo_pub_615.pdf

18       Substantial justice has not been done and these legal proceeding have been unfair.

19   A fundamentally just outcome was not reached, which may be attributed to due lawyer

20   misconduct on the part of Valve, and a verdict has been reached that is contrary to the

21   preponderance of evidence in this case. This Court should acknowledge that the Finnish

22   Market Court did not have subject mater jurisdiction to rule on issues of initial ownership of

23   the Work and amend it's ruling accordingly for the sake of justice.

24

30th October 2025

Trevor Kevin Baylis

*Trevor Bay*

Jankanraitti

Tampere 33560, FINLAND

Please note: Plaintiff is dyslexic. Thus written documents such as this may have minor accidental spelling and or grammatical errors. Such things should not be seen as cause to prejudice the author of this document.

PLAINTIFF'S RULE 59 MOTION TO AMENDED THE JUDGMENT
No. 2:23-cv-01653-RSM

1

2                          CERTIFICATE OF SERVICE FORM

3                            FOR ELECTRONIC FILINGS

4    I hereby certify that on 3rd November 2025 I electronically filed the foregoing document

5                          with the United States District Court

6                     Western District of Washington at Seattle by using the

7                   CM/ECF system. I certify that the following parties or their counsel of

8                   record are registered as ECF Filers and that they will be served by the

9                                 CM/ECF system:

10                        Jeremy E Roller: jroller@aretelaw.com,

11                       Jonah O. Harrison: jharrison@aretelaw.com,

12                             jfischer@aretelaw.com,

13                           kgreenberg@aretelaw.com

14                                 SCOTT BOLDEN

15           Director Intellectual Property Section Commercial Litigation Branch

16                     Civil Division U.S. Department of Justice

17                           Scott.Bolden@usdoj.gov

18                             Dated: 3rd November 2025

19

20

21                             Trevor Kevin Baylis

22                                 Jankanraitti

23                           Tampere 33560, FINLAND

24

PLAINTIFF'S RULE 59 MOTION TO AMENDED THE JUDGMENT
No. 2:23-cv-01653-RSM