# EXHIBIT H

## REFERENCES ON THE RECORD INDICATING

## THE FINNISH MARKET COURTS

## LACK OF SUBJECT MATTER JURISDICTION OVER

## IRON SKY AUTHORSHIP ISSUES.

The "choice of law" and "country of origin" issue that shows that Finland NEVER had Subject matter jurisdiction over the German work Iron Sky has been a recurring theme brought up by Baylis ubiquitously within the evidentory record. See,

Dkt 17. Page 5: 14-24.

Dkt 19. Page 3: 1-9.

*id* Pages 4 – 11 ("German Copyright Law").

Dkt 25 Page 4: 23-24

*id* Page 7: 3.

*id* Page 8: 23-24.

*id* Page 9: 1-23.

*id* Page 11: 1-10.

Dkt 28, Pages 2 and 3, "Request for Admissions", 2, 4, 5 and 7(sic).

Dkt 30 Page 2: 8.

Dkt 32 ("Request for Judicial Notice") Page 2: 4-17

Dkt 36 Page 1: 20-22.

*id* Page 2: 4-11.

Dkt 43 Generally and in particular, Page 1: 6-23.

("MAO302/18 suffers from a "Grave procedural error" in that it doesn't acknowledge German authorship laws under Berne Convention article 5 (4) (a) where the film was "first published" (alluded to in at paragraph 3, Harrison Decl., Ex. D "The

film was released in February 2012"). Moral rights are inalienable and there are "no
foreclosures rules" FCA §42 regarding copyright in Finland")

     *id* Page 2: 15.

     ("Iron Sky which was first published in Germany 2012. (¶¶ 3-4, 33-35, 89-91.)")

     *id* Page 4: 1-2.

     ("Additionally, in Harrison Decl., Ex. D, at Valve _017, "Summary of Judgment",
there is no mention of Section 1 of the FCA which is the whole scope of the FCA.")

     *id* Page 6: 19-24 and 7: 1-4, 21-24

     ("In other respects, MAO302/18 suffers from a "Grave procedural error" in that it's
authorship analysis is based on Finnish law rather than German law where the film was
first published under Berne Convention article 5 (4) (a), SAC, Dkt. #25 at Pages 8 and 9,"

     "3. Incoherence of MAO302/18 and lack of comity with regards to Finland's own
copyright laws as well as International copyright law. MAO302/18 ruling is incoherent,
contains multiple errors and is inconclusive regards...to authorship as it is based on the
wrong "country of origin" laws under Berne Convention
article 5(4)(a). "(4) The country of origin shall be considered to be (a) in the case of works
first published in a country of the Union, that country"
https://www.law.cornell.edu/treaties/berne/5.htm"

     "It is incoherent to have a ruling such as MAO302/18, which is based on the wrong
countries authorship laws (Should have been German law), where Moral rights under
section 3 of the FCA for Plaintiffs in MAO302/18 were not disputed...")

     Dkt 53. Page 1-3: 18-23, 1-4, 9-12.

     ("Baylis' "right to claim authorship of his work" and subsequent "claim to
authorship of his work" is in fact related to Berne Convention rules Article 6bis because
his work was published under "country of origin rules" under Berne Convention Article 5

(4) (a) and nothing to do with VARA at all. See, Itar-Tass Russian News v. Russian Kurier, "Holding that "the law of the country of origin determines ownership of a work ...first published in Russia" [Emphasis added]. Iron Sky was first published in Germany, Baylis' SAC #Dkt 25 pages 8-9."

""In terms of the United States Copyrights Act and its reference to the Berne Convention, Russia is the "country of origin" of these works, see 17 U.S.C. § 101 (definition of "country of origin" of Berne Convention work)" Itar-Tass Russian News v. Russian Kurier, 153 F.3d 82, 90 (2d Cir. 1998)"

"Baylis' "right to claim authorship of his work" and subsequent "claim to authorship of his work" is in fact related to Berne Convention rules Article 6bis because his work was published under "country of origin rules" under Berne Convention Article 5(4)(a) and nothing to do with VARA at all! Iron Sky was first published in Germany, Baylis' SAC #Dkt 25 pages 8-9")

Dkt 56. Page 1: 12.

Dkt 58 Pages 2-3: 17-24, 1-5.

*id* Page 4: 7, 22-23.

Dkt 68-2 Ex. B, Page 2: 6-15

("Baylis is a U.K. Citizen and Iron Sky was First Published in Germany. Under Berne Convention "country of origin" rules, Article 3 and Article 5 (4) (a). This indicates that Finland is NOT the "country of origin" and NOT the nation with the closest "point of attachment" to authors of Iron Sky (#Dkt 25, ¶ 45). This is also relevant to a grave procedural error in the Finnish court case ("MAO302/18")(#Dkt 44 - 4 - Harrison Decl., Ex. D ) as Finland's copyright act is territorial in scope and is thus limited to works "First Published in Finland" (Finnish copyright act Article 63 (2). To put it another way. In MAO302/18 The Finnish Court has applied the wrong nations laws to questions of

authorship regarding Iron Sky because German Law applies NOT Finnish law which is territorial in scope. (#Dkt 25, ¶¶ 47 -52)").

 *id* Page 3: 13-19

 ("The United States Courts must also look to German law for questions of authorship and then provide protection to Baylis based exclusively on United States laws as mentioned by the Register in their report. (#Dkt 66-1, Page 2) Furthermore, as Iron Sky is a Berne convention work there is a "no formalities" rule Berne Convention Article 5 (2) and it is not necessary for Baylis to even have a U.S. Copyright Office registration to instigate proceedings in the The United States Courts to uphold his rights. (#Dkt 25, ¶¶ 45, 46)")

 Dkt 74 Page 1: 15-17

 ("...(2) Finnish copyright law is limited to 'published works' that were "First Published" in Finland (see, §63(2) of Finnish copyright act) (Iron Sky is a published work "First Published" in Germany)").

 *id* Page 2: 7-9

 *id* Page 4: 10-19

 ("Baylis therefore has "First publication" rights to designate Germany as the Nation of First Publication and this sets the "point of attachment" of German Copyright Law to the film Iron Sky which, amongst other reasons, is essential when it comes to making deals with distributors as there should be no ambiguity about which laws apply in case of disputes. "First Publication" sets the clock ticking for the terms of copyright protection. This Court must apply German Law in terms of copyright existing for published works [Footnote 2] and then U.S. Copyright Law exclusively for protection in the United States (U.S.C.17§104(b)(2). This means that there are no questions of fact in dispute, and that any questions of law are clear and not in dispute (namely Finnish law is irrelevant and

Baylis owns his work and copyright to it), and therefore, under no set of circumstances could Valves' defenses succeed.")

*id* Page 4 Footnote 2.

("2 Section 104(b)(2) of the Copyright Act affords protection to all works that are first published in (i) the United States or (ii) a foreign nation that, on the date of the first publication, is a treaty party. In other words, regardless of the nationality or domicile of the author(s), a work may be eligible for protection under the Copyright Act if it is first published in the United States or in any nation that has a relevant treaty with the United States at the time of the first publication.")

*id* Page 7: 4-10.

("f. Valve's sixth and eight affirmative defense should be stricken These defenses also incorporates by reference failed arguments in multiple other pleadings (incorporating Dkt. Nos. 43, 44, 44-1 through 44-9, and 52) and it identifies the ruling in Finland which is itself immaterial, impertinent and redundant. These frivolous motions (Dkt. Nos. 43, 44 and 52) have already caused prejudice to Baylis and delayed this case for almost a year, and it is equally hard to imagine a more frivolous impertinent and redundant affirmative defense from Valve especially as they make reference directly to an irrelevant court ruling from Finland.")

Dkt 79, See Generally, PLAINTIFF'S NOTICE OF OBJECTION ON DEFENDANT VALVE CORPORATION'S NOTICE OF INTENT TO RAISE FOREIGN LAW

*id* Page 1: 4-10

("Finnish Copyright Law by it's own Copyright Act is territorially restricted in Section 63(2) of that very Finnish Copyright Act.1 Therefore, the Finnish Copyright Act cannot be relied on in this case because it bars itself under its own Act!

*§63(2) of Finnish copyright act.*

*"Chapter 8. Applicability of the Act. Territorial application (607/2015) The provisions of this Act relating to copyright shall apply: 2) to works first published in Finland or published in Finland within thirty days of having first been published in another country; 3) to a cinematographic work the producer of which has its headquarters or habitual residence in Finland;")*

*id* Page 1: Footnote 3.

("3 Blind Spot Zürich GmbH in Liquidation. [Machine Translation] Blind Spot Zürich GmbH, in Zurich, CHE110.542.326, limited liability company (SHAB No. 184 of September 22, 2010, p. 18, Publ. 5822300)")

*id* Page 2: 20-23.

Dkt 84. Page 1: 7-24 (Including Footnotes 1 and 2).

*id* Page 2: 21-24.

*id* Page 3: 12-16.

*id* Page 4: 5-10.

*id* Page 7: 21-24.

(""...A [Seb Barquin] said that he initially worked on the Rheingold ship from the UK without payment because he wanted to work on the Iron Sky film.." Dkt 44-4, Harrision Dec. ¶ 96, Ex. D at VALVE_15.")

*id* Page 8: 1-8.

("Finnish copyright law, in terms of "point of attachment" of copyright does not even apply to Myers, Barquin and Baylis, U.S. and UK Nationals who were not employees of the Work's Swiss producers Blind Spot Pictures! Valve are just wrong that Finnish law would apply because "point of attachment" of copyright is either based on a "personal criteria" related to Myers, Barquin and Baylis' Nationality, or where the Work

is undoubtedly published, there is a "First publication" "geographical criteria" based on the Nation of "First publication" which was Germany.7 Both these criteria preclude the Finnish Copyright Act from applying in terms of "point of attachment" of copyright to Baylis. (See Dkt 79)")

    *id* Page 9: 4-7.

    *id* Page 11: 6-10.

    ("C. Valve deliberately mis-characterize the operative part of MAO302/18. Valve infer MAO302/18 "denied" Baylis "the whole of his copyrights" under Section 1 of the FCA. See, Dkt 76, Motion, at Page 4. However, Valve's is wrong because Section 1 of the FCA is not mentioned in the "operative part" of MAO302/18. Only sections, 2, 6 and 46(a) are mentioned, See, Dkt 44-4, Harrision Dec. Ex D. "Summary of judgment." VALVE_17.")

    *id* Page 12: 8-9

    *id* Page 15: 7-12

    *id* Page 17: 20-21

    *id* Page 20: 15-24

    ("b. MAO302/18 is territorially limited under it's own laws. Valve want to rely on Finnish law, Dkt. 78, but there are numerous practical and logical problems with that. For example, FAC section 63(2) bars Finnish Copyright law from applying to the Work in the first place due to it being a German Work. See Dkt. 79. MAO302/18 gives lip service to the fact the Work was "First published" in February but conspicuously fails to mention in which country which is a glaring error given FCA limits under section 63(2). "The film was released in February 2012"(Dk 44-4. Harrison Decl., Ex. D, at Valve_008, ¶3) The work is without doubt a "published work" that fits the description of a Motion Picture (U.S.C. 17 § 102(6)) and has to be a copyrighted work (U.S.C. 17 § 106)")

*id* Page 21: 5-12.

("Germany was "specifically chosen" to be the "Country of Origin" by all of the Works copyright owners under Berne Convention Rules Articles 3 - 5 including 5(4)(a)... The Work was "First Published" on 11th February 2012. So even with an holistic that approach Valve want, the Work is a German Work. See Baylis Dec., Exs. A1, Y and Z.")

*id* Page 22: 6-15.

("Not even Finnish Law was applied properly in MAO302/18 as demonstrated by the error of not acknowledging FCA section 63(2)...a. MAO302/18 is not a valid judgment")

*id* Page 23: 13-24.

*id* Page 24: 3-7.

("any authorship analysis regarding "point of attachment" of copyright to UK and U.S. Nationals based on the FCA was actually barred by the FCA territorial application rules under section 63(2) which the judges in MAO302/18 must have known about but went ahead and invoked the FCA knowing that German Law should have applied under Berne Convention rules. ")

*id* Page 24: 20-21.

("the Work is a German work and FCA section 63(2) bars the application of FCA to the work in terms of authorship assessment.")